## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CALL CENTER TECHNOLOGIES, | : | CIVIL ACTION NO. 3:03CV1036 (DJS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GRAND ADVENTURES TOUR & | : | |
| TRAVEL PUBLISHING CORPORATION, | : | |
| INTERLINE TRAVEL & TOUR, INC. | : | |
| Defendants. | : | JANUARY 4, 2006 |

### MEMORANDUM OF LAW
### IN SUPPORT OF DEFENDANT INTERLINE TRAVEL & TOUR INC.'S
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Interline Travel & Tour, Inc. ("Interline"), a defendant in the above-captioned matter, moves for summary judgment on all claims directed against it in the plaintiff's Second Amended Complaint dated July 29, 2003 for the reasons set forth below.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

## I.    PRELIMINARY STATEMENT

Plaintiff Call Center Technologies ("CCT"), seeks to hold Interline liable for an alleged contractual debt owed to CCT by co-defendant, Grand Adventures Travel & Tour Publishing Corporation ("GATT").

CCT makes this claim even though there is no legal or factual basis to support it. Interline was _not_ a party to the contract that forms the basis of this lawsuit. Interline never ratified or otherwise assumed the obligations of GATT. Although Interline purchased GATT's assets, including equipment, via a foreclosure sale held in Austin, Texas, well-established law shows that this fact alone does not provide a reason to make Interline liable to CCT. Finally, even though Plaintiff seeks to hold Interline liable under the theory that Interline is the successor of GATT, the contract that forms the basis of CCT's claim does not even involve GATT as a party, thus making irrelevant any theory of succession between GATT and Interline.

The facts and evidence in this case also show that Interline has no relevant contacts with the state of Connecticut to warrant personal jurisdiction over Interline in this case. Summary judgment is therefore proper as CCT cannot establish that this Court has personal jurisdiction over Interline, a Texas corporation, in this matter.

For the reasons set forth herein, all of plaintiff's claims must be dismissed as a matter of law.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

2

## II.  STATEMENT OF FACTS

### A.  Plaintiff's Claims

This is a purported breach of contract and successor liability case brought by the plaintiff, Call Center Technologies ("CCT"), against Grand Adventures Tour & Travel Publishing Corporation ("GATT") and Interline.  The plaintiff's Second Amended Complaint dated July 29, 2003 contains two counts.  The First Count is directed to defendant GATT.  The plaintiff alleges that pursuant to a written document called "Customer Agreement" dated June 16, 1998, GATT purchased "certain goods called an Aspect Call Center". *Second Amended Complaint dated July 28, 2003, First Count,* ¶ 1 attached hereto as **Exhibit A**.  GATT is not a party to the Customer Agreement, but another incorporated entity with a similar name, Grand Adventures Tour & Travel, Inc. (GATTInc."), is. *See Customer Agreement* attached hereto as **Exhibit B**.  Plaintiff purports to bridge the gap between the two entities by alleging that GATT was "doing business as" GATTInc., although the plaintiff has not presented evidence to support this allegation. *Second Amended Complaint, First Count,* ¶ 1.

CCT claims that GATT ordered "additional parts" for the phone system in 1999 and CCT supplied said parts. *Id.* at ¶ 11.  CCT alleges that, in February 1999, GATT requested the temporary use of "Intertel equipment" and that the equipment was provided to GATT with the expectation that it be returned "within a reasonable time". *Id.* at ¶ 12.  CCT claims that GATT did not return the Intertel equipment or pay for it. *Id.*  CCT alleges that the value of the Aspect Call Center, the additional parts

Law Offices of Laura Flynn Baldini, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

3

and the Intertel equipment is $130,090.00, $30,000.00 and $30,000.00, respectively. *Id.* at ¶¶ 13-15. The plaintiff claims that although demand for payment has been made, GATT has paid the sum of $35,000.00 but has refused to pay the balance. *Id.* at ¶ 16.

The Second Count is directed to Interline.  CCT incorporates by reference the allegations of the First Count against GATT (*Id.* at ¶¶ 1-16) and claims that Interline is the successor of GATT and therefore liable for GATT's alleged debt under the Customer Agreement. *Id.* at ¶¶ 17-29.

Interline denied the substantive allegations of the plaintiff's Second Amended Complaint and asserted certain affirmative defenses, including lack of personal jurisdiction and setoff and recoupment. *Seconded Amended Answer and Affirmative Defenses dated April 19, 2004* attached hereto as **Exhibit C**.

**B.    The Undisputed Facts**

**1.    *CCT's Customer Agreement With GATTInc.***

On June 16, 1998, CCT and Grand Adventures Tour & Travel, Inc. ("GATTInc.") entered into a Customer Agreement ("Agreement") for the sale and purchase of, among other things, an "Aspect Call Center" ("Equipment"). *See Customer Agreement* at Exhibit B.  The purchase price for the Equipment was $130,090 and any costs to install the Equipment would be in addition to the purchase price. *Id.* at ¶¶ 1-2.  The Agreement provides that GATTInc. granted to CCT a security interest in the Equipment to secure payment in the purchase price, installation charges, freight and

Law Offices of Laura Flynn Baldini, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

4

taxes related to the Equipment. *Id.* at ¶ 13. GATTInc. agreed to execute "such documents as CCT shall reasonably require protecting its security interest." *Id.* CCT, however, took no steps to secure a security interest in the Equipment. *Deposition of Dean Vlahos ("Vlahos Dep.") dated March 29, 2005* at pp. 83:18-20; 136:15-20 attached as **Exhibit D**.

CCT warranted, among other things, that for a period of 24 months from the date of delivery, that the Equipment would be free from material defects under normal conditions and use. *Customer Agreement* at ¶ 14(a). CCT also promised to replace any Equipment suspected of defect within 24 hours of being notified of the defect. *Id.* CCT also promised that it would "maintain the Equipment [provided to GATTInc.] under the Agreement for year 2000 compliance" and agreed to hold GATTInc. "harmless of and from any loss incurred by [GATTInc.] as a result of any failure of the Equipment to maintain year 2000 compliance." *Id.* at ¶ 14(b). CCT further agreed that it would reimburse GATTInc. for any cost actually incurred by GATTInc. in shipping, installing and replacing any of the Equipment determined to be defective. *Id.* at ¶ 14(c).

Although the plaintiff purports to make both GATT and Interline liable for the obligations of GATTInc. under the Agreement, the plaintiff has introduced no admissible evidence to show how or why this should be so.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

5

2. ***Grand Adventures Tour & Travel Publishing Corporation***

GATT, an Oregon corporation, was incorporated on or about April 3, 1987. *See Corporate Information from Oregon Secretary of State Records* attached hereto as **Exhibit E**. GATT provided travel services to travel agents, airline employees and newlyweds. *Deposition of Joseph Juba dated April 13, 2005 ("Juba Dep.")* at pp. 24:19-25:21 attached as **Exhibit F**; *deposition of In Churl Yo dated April 13, 2005 ("Yo Dep.")* at p. 54:11-17 attached as **Exhibit G**. It also published travel magazines entitled *Interline Adventures*; *Destination Weddings & Honeymoons* and *Interline Update*. *Yo Dep.* at p. 9:13-20. GATT was a publicly-traded company on the NASDAQ with over 1000 shareholders. *Juba Dep.* at p. 17:11-20; 46:18-21.

GATT's Chief Executive Officer was Matthew O'Hayer. *Juba Dep.* at p. 49:3-4. Joseph Juba was GATT's President and Chief Operating Officer. *Juba Dep.* at p. 96:7-9; *Deposition of Duane Boyd dated April 14, 2005 ("Boyd Dep.")* attached as **Exhibit H** at p. 227:10-16. Duane Boyd was a shareholder and director of GATT. *Boyd Dep.* at pp. 5:20-21; 6:11-12; *Juba Dep.* at 17:24-25. Mr. Boyd, however, was never an officer or employee of GATT. *Boyd Dep.* at p. 6:9-10, 7:10-12.

In April 2001, GATT was experiencing financial difficulty. *Boyd Dep.* at pp. 12:21-25, 13:1. At that time, GATT retained Boyd and Lawrence Fleischman ("Fleischman") as unpaid consultants to work with GATT's management to help GATT with their financial problems. *Boyd Dep.* at p. 7:4-

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

6

8.  Shortly after Mr. Boyd was retained by GATT, he resigned as a director from GATT. *Boyd Dep.* at p. 7:13-20; 8:1-6.

Boyd and Fleischman personally invested their money in GATT to help GATT turn a profit. *Boyd Dep.* at pp. 19:13-22; 35:6-8.  On May 24, 2001, after Boyd resigned as a director of GATT, Boyd extended a $90,000 line of credit to GATT in exchange for a security interest in 65% of the issued and outstanding capital stock of Grand Adventures Tour & Travel (UK) Limited ("GATT-UK") subject to a parallel security interest held by Fleischman. *Affidavit of Timothy Taylor, Esq. ("Taylor Aff.") dated July 27, 2005* attached hereto as **Exhibit I** at Exhibit B.  GATT and Boyd executed a Promissory Note formalizing this agreement. *Id.*  The Note was signed by Juba, President and COO of GATT, and Duane Boyd. *Id.*  On May 24, 2001, GATT entered into a similar Promissory Note with Fleischman for a line of credit loan in the amount of $80,000. *Id.*

On July 18, 2001, Boyd and Fleischman each loaned GATT $100,000 in exchange for a security interest in all of GATT's assets or other property including accounts, inventory, equipment, investment property, choses in action, general intangibles, real estate as well as 65% of the issued and outstanding capital stock of Grand Adventures Tour & Travel (UK) Limited ("GATT-UK"). *Id. at Exhibit A.*  The rights of the parties were exercisable under the Texas UCC. *Id.*  On that same day, GATT (through Juba) executed Promissory Notes with Boyd and Fleischman promising to repay these loans. *Id. at Exhibit B.*  The Security Agreement executed that same day secured all debt

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

7

including the Boyd Line of Credit Note dated May 24, 2001, the Fleischman Line of Credit Note dated May 24, 2001, the July Boyd Note and the July Fleischman Note. *Id. at Exhibit A.* On August 8, 2001, GATT filed financing statements for Boyd and Fleischman with the Travis County Clerk. *See Financing Statements* attached hereto as **Exhibit J.**

Efforts by Boyd and Flesichman to help GATT turn a profit were not successful. On October 9, 2001, the law firm of Jackson Walker LLP, representing Boyd and Fleischman, sent GATT, via certified mail, a Notice of Intent to Accelerate and Demand Payment. *Taylor Aff.* at ¶ 2, *Exhibits C & D.* The letter stated that GATT had defaulted on the May 2001 $90,000 and $80,000 Line of Credit loans and the July 2001 $100,000 Loans. *Id. at Exhibits C & D.* GATT was given until October 19, 2001 to pay the full amounts due and owing under the loans, namely the $140,000 that Boyd and Fleischman advanced to GATT pursuant to the lines of credit and the $200,000 that Boyd and Fleischman advanced to GATT via term loans, a total of $340,000. *Id.* On October 19, 2001, Boyd and Fleischman executed a Transfer and Assignment of Notes and Liens assigning their rights in the May $90,000 and $80,000 Lines of Credit and their July $100,000 term loans to Interline Travel & Tour, Inc. ("Interline"), a business that will be discussed in greater detail below. *Id.* at ¶ 3, *Exhibits E and F.*

On October 19, 2001, Jackson Walker LLP, representing Interline Travel and Tour, Inc. as holder of the four promissory notes described above and secured by the July 18, 2001 Security

Law Offices of Laura Flynn Baldini, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

8

Agreement, sent GATT a Notice of Intent to Accelerate and Demand Payment via certified mail. *Id.* at ¶ 4, *Exhibit G.* GATT was given until October 29, 2001 to pay the full amounts due and owing under the loans. *Id.* GATT did not repay its loans from Boyd and Fleischman that were assigned to Interline. *Boyd Dep.* at pp. 35:6-12; 36:1-3.

On October 19, 2001, Interline, through its attorneys, sent notices to GATT's secured creditors, Wells Fargo Bank Texas, NA ("Wells Fargo")(who held a first lien on GATT's assets), IBM Credit Corp. and Dell Financial Services, LP, and advised of its intent to conduct a public sale to dispose of GATT's collateral to satisfy GATT's indebtedness to Interline. *Taylor Aff.* at ¶ 7, Exhibits J, K, L. The sale was scheduled for 11 a.m. on October 30, 2001. *Taylor Aff.* at Exhibits J, K, L. On October 22, 2001, a copy of a notice of Interline's intent to conduct a public sale to dispose of GATT's collateral to satisfy GATT's indebtedness to Interline was posted at the regular place for posting foreclosure notices at the Travis County Courthouse in Austin, Travis County, Texas. *Taylor Aff.* at ¶ 5. Between October 24, 2001 and October 28, 2001, Interline published a daily paid notice in the *Austin American Statesman* advising the public of the scheduled foreclosure sale. *Id.* at Exhibit H.

On October 30, 2001, GATT's collateral was sold at a public foreclosure sale conducted at the Travis County Courthouse. *Id.* at ¶11. The purchaser of the assets was Interline Travel and Tour, Inc. and the bid price was $340,000 (the approximate amounts of the liens that Interline purchased from

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

9

Boyd and Fleischman). *Id.* at ¶12. There were no other bidders at the sale and Interline purchased GATT's assets subject to a first lien upon GATT's assets held by Wells Fargo. *Id.* at ¶8, Exhibit M. The assets were not encumbered by any security interest in favor of CCT. *Vlahos Dep.* at pp. 83:18-20, 136:15-20.

On the day of the sale, Wells Fargo Bank, in accordance with Article 9 of the UCC, executed a Transfer and Assignment of Debt Claims and Security Interests, and transferred and assigned its secured debt and liens to Boyd. *Id.* The transfer was made without recourse and without representations or warranties. *Id.* On November 1, 2001, Boyd executed a similar Transfer and Assignment of Debt Claims and Security Interests and transferred and assigned the acquired Wells Fargo lien to DBMK Partners Ltd (50%) and to Fleischmann (50%). *See Transfer and Assignment of Debt, Claims and Security Interests* attached hereto as **Exhibit K.** By letter dated November 1, 2001, Jackson Walker LLP sent Wells Fargo two checks in the amount of $52,500 executed by Boyd on behalf of DBMK Partners Ltd. and Fleischman on behalf of himself. *Id.* These checks represent the purchase of the Wells Fargo lien on GATT's assets at a price of $105,000. *Id.*

3.     ***Interline Travel & Tour, Inc.***

Interline Travel & Tour, Inc. d/b/a Interline Vacations is a privately-held company that was incorporated in Texas on October 15, 2001. *Boyd Dep.* at p. 32:12-14; Texas Secretary of State Records attached hereto as **Exhibit L.** The company was founded by Duane Boyd, Interline's current

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

10

President, and Lawrence Fleischman who is Interline's present Chairman and Chief Executive Officer. Boyd Dep. at p. 96:16-17; *Affidavit of Duane Boyd dated June 12, 2003* attached hereto as **Exhibit M**. Joseph Juba serves as Executive Vice President of the company. *Juba Dep.* at pp. 42:25-43:1. Interline has approximately 21 shareholders and 52 employees. *See Interline's Supplemental Responses to Plaintiff's Interrogatories dated May 4, 2005 ("Interline's May Discovery Responses")* attached hereto as **Exhibit N** at Interrogs. 4, 24. Interline is a closely held company and there is no majority shareholder of this business. *Boyd Dep.* at pp. 103:17-25, 104:1.

Interline offers to active and retired airline employees, as well as their parents, other family members and friends, cruise and resort/hotel vacations at discounted prices. *Boyd Aff.* at ¶3; *Yo Dep.* at pp. 54:23-55:2. Interline also offers the similar travel opportunities to active and retired employees of FedEx and the military. *Boyd Dep.* at pp. 83:16-22, 134:9-135:3; *Yo Dep.* at p. 55:1-2. Interline operates www.perx.com, one of GATT's former website addresses, which it purchased at the October 2001 foreclosure sale. *Boyd Dep.* at p. 70:18-24.

Interline is headquartered in Austin, Texas but also has an office in Boca Raton, Florida. *Interline's May Discovery Responses* at Interrog. 2. Interline performs all of its business operations in Texas and in Florida. *Boyd Aff.* at ¶4. All travel reservations and bookings are conducted in Texas and/or Florida. *Id.* Interline has no business offices in Connecticut and has no employees in Connecticut. *Id.* at ¶5. Interline does not own, lease or rent real property in Connecticut. *Id.* at ¶6.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

11

Interline has no agent for the service of process in Connecticut and has never filed a tax return in Connecticut. *Id.* at ¶7.  Interline presently derives only $33,000 in annual income (approximately 0.3% of its total annual income) from orders placed from individuals that have a residence address in the State of Connecticut. *Interline's May Discovery Responses* at *Interrog. 17.*  Of the approximately 115,000 persons in its e-mail customer and marketing database, only 680 e-mail addresses indicate that they are from persons who have an address in the State of Connecticut. *See Interline's Supplemental Responses to Plaintiff's Interrogatories dated June 8, 2005 ("Interline's June Discovery Responses")* attached hereto as **Exhibit O** at Interrog. 16.[1]  The instant case does not arise from a dispute between Interline and any of its Connecticut customers.

As noted above, Interline acquired the tangible and intangible assets of GATT by virtue of the foreclosure sale.  Interline acquired, among other things, GATT's furniture, computers, office equipment, internet domain names, telephone numbers and customer lists. *Boyd Dep. at p. 70:18-24; Juba Dep. at p. 124:21-25; Taylor Aff., Exhibit G.*  In November 2001, Interline executed a short-term property lease and conducted its business operations at the same street address as GATT, but in a different office suite. *Boyd Dep.* at p. 73:5-6; *Juba Dep.* at pp. 102:24-25, 103:1-16; *Lease Agreement* at **Exhibit P.**  Interline's management offered employment to some former GATT employees. *Boyd Dep.* at p. 67:10-13; *Juba Dep.* at p. 35:1-5.  The former GATT employees who

---

[1] The documents attached to these discovery responses are not attached to this motion as they are "Confidential" pursuant

Law Offices of Laura Flynn Baldini, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

12

were offered employment with Interline were required to submit formal employment resignation correspondence to GATT and complete new tax forms. *Boyd Dep.* at p. 68:19-24; *Juba Dep.* at p. 35:1-5; *Yo Dep.* at p. 58:3-7. Following the foreclosure sale, Interline obtained a tax identification number, opened new bank accounts and negotiated new contracts with, among others, customers on GATT customer lists. *Boyd Dep.* at pp. 193:19-22; 199:5. Interline also opened merchant accounts so that it could process credit card transactions and opened an account with the telephone company providing the telephone numbers purchased at the foreclosure sale. *Juba Dep.* at pp. 42:3-7; 125:22-126:1. Interline did not assume any of GATT's debts, liabilities or contracts. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at pp. 127:9-23, 137:3-6; *Taylor Aff., Exhibit G.*

## III.    ARGUMENT

### A.    Standard for Summary Judgment

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *Fed. R. Civ. P. 56(c)*; *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Cronin*, 46 F.3d at 202.

---

to the Consent Order and Agreement entered into by the parties in this case on or about June 1, 2005.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

13

The Second Circuit has ruled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985). Instead, *"the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful."* *Johnson v. Carpenter Technology Corp.*, 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

There are no genuine issues of fact regarding the plaintiff's claims against Interline. As will be discussed herein and as will be demonstrated through the documentary evidence in this case, the plaintiff's theories of recovery are illusory and based on conjecture. As such, Interline is entitled to judgment as a matter of law on all claims set forth in the plaintiff's Second Amended Complaint.

**B.      Interline Is Not A Legal Successor To GATT**

The gravaman of the plaintiff's claim against Interline is that Interline is a legal successor to GATT and should therefore be liable for the debt that GATT allegedly owes to the plaintiff. In Connecticut, a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless:

  1)  the purchase agreement expressly or impliedly so provides;
  2)  there was a merger or consolidation of the two firms;

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

14

3) the purchaser is a "mere continuation" of the seller; or

4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Ricciardello v. J.W. Gant & Company*, et al., 717 F. Supp. 56, 57-58 (D. Conn. 1989)(defendant's motion for summary judgment granted on plaintiff's successor liability claim); *15 Fletcher, Cyclopedia of Law of Corporations*, §7122 (1961 rev. vol.).

The plaintiff cannot establish that any one of the above exceptions apply that would warrant the imposition of liability on Interline for the alleged debts of GATT. The first exception is clearly inapplicable. Interline purchased GATT's assets at a public foreclosure sale. As such, there was no agreement, express or implied, for Interline to assume any of GATT's liabilities, including the plaintiff's purported claim that GATT owes it money.

The second exception is similarly inapplicable. "A merger contemplates the 'absorption of one corporation by another which retains its name and corporate identity with the added capital, franchise, and powers of a merged corporation'." *Ricciardello*, 717 F. Supp. at 58 *citing Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834 (S.D.N.Y. 1977). To find that a merger has occurred, there must be: 1) a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; 2) a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; 3) a dissolution of the selling corporation; and 4) the assumption of liabilities by the purchaser." *Ricciardello*, 717 F. Supp. at 58 [emphasis added]. The merger exception cannot apply to this case because, among other reasons,

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

15

Interline did not have the same management, personnel, assets and physical location as GATT. Moreover, Interline purchased GATT's assets for <u>cash</u>, not stock, at a foreclosure sale and Interline did not assume GATT's liabilities. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at 127:9-23; 137:3-6.

The consolidation exception similarly does not apply. "A consolidation envisions the joining together of the two corporations so that a totally new corporation emerges and the two others cease to exist." *Ricciardello*, 717 F. Supp. at 58; *Ladjevardian, supra,* 431 F. Supp. 834 (S.D.N.Y. 1977). The consolidation exception cannot apply to this case as the plaintiff has not alleged (and the facts do not show) that two corporations joined together to form a third entity separate and apart from GATT and Interline.

The fourth exception also does not apply. The plaintiff's Second Amended Complaint alleges no fraud in connection with Interline's purchase of GATT's assets. As such, the plaintiff cannot rely on fraud to impose successor liability upon Interline as the Federal Rules require that a plaintiff plead with particularity facts from which fraud may be inferred. *See Fed. R. Civ. P. 9(b)*; *Ricciardello*, 717 F. Supp. at 59. In addition, the plaintiff is precluded from asserting or arguing a claim for fraud, as the statute of limitations for such a claim has long expired. *See Conn. Gen. Stat. § 52-577.*

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

16

**1.    Interline Is Not A "Mere Continuation" Of GATT**

The plaintiff cannot rely upon the "mere continuation" exception as a basis for imposing liability on Interline. To establish a basis for successor liability based upon the "mere continuation" exception, a plaintiff must establish:

1)    continuation of the enterprise of the seller corporation so that there is a continuity of management, personnel, physical location, assets and general business operations;

2)    continuity of shareholders;

3)    the seller corporation ceases its business operations, liquidates and dissolves as soon as legally and practically possible;

4)    the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Peglar & Associates, Inc. v. Professional Indemnity Underwriters Corp.*, 2002 Conn. Super. LEXIS 2103 *19-20 (Conn. Super. Ct. June 19, 2002)(Rogers, J.)(judgment entered for defendants on all counts of plaintiff's complaint alleging de facto successorship and breach of contract). The focus of this exception "is not whether there is simply a continuation of the business, but rather the test is whether there is a continuation of the corporate entity of the seller". *Nat'l Grange Mutual Ins. Co. v. Montgomery Elevator*, 1994 Conn. Super. LEXIS 2429 *11 (Conn. Super. Ct. September 22, 1994)(Hale, J.)(judgment for defendant in plaintiff's action to recover from defendant as the successor to a corporation that was a principal on a bond); *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977). "The key element in determining whether the corporate entity continues to exist is a

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8463 • Fax: (860) 561-9823

17

determination of whether there is a common identity of the officers, directors and stockholders in both the selling and purchasing corporations." *Nat'l Grange Mutual Ins. Co., supra*, 1994 Conn. Super. LEXIS 2429 at *11.

> a.    ***There Is No Common Identity of Management Between GATT and Interline***

There was no continuity of management between GATT and Interline. GATT's management consisted of the following officers:

> Matthew O'Hayer - Chief Executive Officer;
>
> Joseph Juba - President and Chief Operating Officer;
>
> Bob Roe – Chief Financial Officer.

*Boyd Dep.* at p. 13:5-7; *Yo Dep.* at pp. 33:23-25; 34:1-7. Interline's management, however, consists of the following officers:

> Duane Boyd - President;
>
> Lawrence K. Fleischman - Chairman and Chief Executive Officer;
>
> Joseph Juba - Executive Vice President;
>
> Fernando Cruz Silva, Senior Vice President;
>
> Patricia Macchi, Vice President.

*Interline's June Discovery Responses* at Interrog. 4.

Indeed the management structure and officers of GATT are <u>completely</u> different from the management structure and officers of Interline. The only person in management that is common to

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

18

both organizations is Joseph Juba.  Mr. Juba, however, had differing managerial titles with GATT (President and Chief Operating Officer) and Interline (Executive Vice President).  Mr. Juba also testified under oath that he had significantly different job responsibilities with both companies:

> Q.    Who was in charge of the day-today management of GATT immediately before the foreclosure, the day-to-day operations?
>
> A.    I was.
>
>         *           *           *
>
> Q.    Okay. Did you also play a significant role in the management of the company the next – when Interline was formed?
>
> A.    No.

*Juba Dep.* at p. 122:11-14; 122:25:123:3; *see also Boyd Dep.* at p. 124:11-14.  Clearly, there is no continuity of management between GATT and Interline.

> b.    ***There Is No Commonality of Business Operations Between GATT and Interline***

The evidence in this case also establishes that GATT and Interline did not operate the same businesses.  Although GATT and Interline are travel-related businesses, they offered different products and services to their customers.  GATT provided travel services to travel agents, airline employees and newlyweds. *Juba Dep.* at pp. 24:19-25:21; *Yo Dep.* at p. 54:11-17.  It also published

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

19

travel magazines entitled *Interline Adventures*; *Destination Weddings & Honeymoons* and *Interline Update*. *Yo Dep.* at p. 9:13-20.

Interline, on the other hand, did not, and does not, provide travel services to travel agents or newlyweds. *Yo Dep.* at p. 102:17-22. Instead, Interline provides active and retired airline employees, and their parents, family members and friends, cruise and resort/hotel vacations at discounted prices. *Boyd Aff.* at ¶3; *Yo Dep.* at p. 54:23-55:2. Interline offers cruise and resort/hotel vacations at discounted prices to active and retired employees of FedEx and the military, services that GATT did not offer. *Boyd Dep.* at pp. 83:16-22, 134:9-135:3; *Yo Dep.* at p. 55:1-2. Contrary to the allegations in the plaintiff's Second Amended Complaint, Interline <u>never</u> published the publications known as *Interline Adventures, Destination Weddings & Honeymoons* or *Interline Update*. *Yo Dep.* at pp. 12:24-13:1; *Juba Dep.* at p. 118:8-13.

       **c.**      ***There Is No Commonality Of Shareholders or Personnel***

The shareholders and personnel of GATT and Interline are also different. GATT was a publicly-traded company on the NASDAQ with over 1000 shareholders. *Juba Dep.* at pp. 17:11-20, 46:18-21. Interline, however, is a closely held business with approximately 21 shareholders and 52 employees. *Interline's May Discovery Responses* at Interrogs. 4, 24. Contrary to the plaintiff's allegations, there is no majority shareholder of Interline. *Boyd Dep.* at pp. 103:17-25, 104:1. Although Interline's management offered employment to some former GATT employees, the former

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

20

GATT employees who were offered employment with Interline were required to submit formal employment resignation correspondence to GATT and complete new tax forms. *Boyd Dep.* at pp. 67:10-13, 68:19-24; *Juba Dep.* at 35:1-5; *Yo Dep.* at p. 58:3-7. Interline also hired new employees such as Boyd and Fleischman who were not previous GATT employees. *Boyd Dep.* at p. 111:1-8.

Indeed Interline's hiring of some previous GATT employees is not sufficient to establish successor liability. In *Nat'l Grange Mutual Ins. Co. v. Montgomery Elevator*, 1994 Conn. Super. LEXIS 2429 *11 (Conn. Super. 1994)(Hale, J.), a case in which the plaintiff sought to impose successor liability on an elevator company that had purchased the assets of another elevator company, the court entered judgment in favor of the defendant and dismissed the plaintiff's claim. In *Nat'l Grange Mutual*, the defendant corporation acquired among other things, the elevator service and construction contracts of the other elevator company along with certain equipment, motor vehicles, furniture, trade fixtures, tools and equipment supplies via an asset purchase agreement. *Nat'l Grange Mutual Ins. Co.*, *supra*, 1994 Conn. Super. LEXIS 2429 at *11. In its decision, the court considered the fact that the defendant elevator company had hired 50 employees that had worked for the elevator company that was acquired via the asset purchase agreement. The Court held that the defendant was not a legal successor to the company that it had purchased and noted that the hiring of such personnel was "important in maintaining the relationship which often existed between service employees and

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

21

the service contracts which they maintained." *Nat'l Grange Mutual Ins. Co.*, *supra*, 1994 Conn. Super. LEXIS 2429 at *11.

The facts of *Nat'l Grange Mutual* are similar to those in the present case. Interline is a service business that acquired GATT's assets at a public foreclosure sale. It is clearly within reason and common sense that Interline would have offered employment to some of GATT's employees, particularly since they were familiar with, among other things, the equipment purchased at the foreclosure sale as well as the people whose names appeared on the customer lists acquired via the sale. Since the plaintiff cannot establish commonality of shareholders or personnel, summary judgment should therefore be granted.

> **d.    *GATT and Interline Did Not Operate From The Same Business Location***

GATT and Interline did not operate their businesses from the same physical location. *Yo Dep.* at pp. 65:20:66:8; 101:1-7. At the time of the foreclosure sale, GATT's business operations were located at 211 West 7th Street, <u>Suite 1100</u>, in Austin, Texas. *Juba Dep.* at p. 103:3. Following Interline's purchase of GATT's assets at the foreclosure sale, Interline entered into a short-term lease for the premises located at 211 West 7th Street, <u>Suite 1120</u>, in Austin, Texas. *Boyd Dep.* at p. 74:10-11; *Juba Dep.* at pp. 102:24-25, 103:5-7; *Interline's May Discovery Responses* at Interrog. 2. Interline occupied this space for approximately six months before it moved its business operations to its present address at 12708 Riata Vista Circle, Suite A-125 in Austin, Texas. *Interline's May*

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

22

*Discovery Responses* at Interrog. 2. Even if the court were to consider the fact that Interline held a short-term lease for its business at the same street address as GATT, such a fact would not be sufficient to establish successor liability. *See Nat'l Grange Mutual Ins. Co., supra*, 1994 Conn. Super. LEXIS 2429 at *12 (court finds no successor liability where defendant purchaser corporation continued to operate out of seller corporation's building "for a relatively short time" after purchaser corporation acquired seller corporation's assets).

e.      ***Interline Did Not Assume Any Liabilities Or Obligations Of GATT***

Although there is no Connecticut state or federal law directly on point, the Second Circuit has held that in general, a purchaser of assets at a foreclosure sale does not assume the seller's liabilities. *Quinn v. Teti*, et al., 2000 U.S. App. LEXIS 27210 at *6 (2d Cir. 2000)(copy attached as **Exhibit Q**). Here, Interline did not assume <u>any</u> of GATT's liabilities following the foreclosure sale. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at pp. 127:9-23, 137:3-6. Moreover, the evidence shows that on October 30, 2001, Interline purchased GATT's assets for value at a public foreclosure sale conducted in Austin, Texas. The facts also show that the sale was conducted after appropriate notice was given to GATT's secured creditors and the general public. Jackson, Walker, LLP, counsel for Interline, performed a UCC search of all secured creditors prior to the sale and notified each creditor of the sale. *Taylor Aff.* at ¶ 7. CCT was not a secured creditor because CCT failed to perfect any security interest in the alleged Equipment furnished to GATT. *Vlahos Dep.* at p. 136:15-20. Jackson, Walker also published

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

23

notice of the sale in the *Austin American Statesman* newspaper prior to the sale and posted written notice of the sale at the Travis County Courthouse. *Taylor Aff.* at ¶5, Exhibit H.

On the date of the sale, Interline, who was owed $370,000 from GATT, purchased GATT's assets for $340,000. *Id.* at ¶12. Interline also purchased the debt of the first lien holder, Wells Fargo Bank for $105,000. *See Transfer and Assignment of Debt, Claims and Security Interests.* Simply stated, Interline, after attempting to recover its own investment ($370,000), paying the bid price ($340,000) and assuming Wells Fargo's first lien ($105,000), spent over **$475,000** to acquire GATT's assets. *Boyd Dep.* at p. 36:1-3. Interline, as a purchaser of a corporation for value at a public foreclosure sale, cannot as a matter of law, be held liable for any debts that GATT may have had at the time of the foreclosure sale. Accordingly, summary judgment is warranted on the plaintiff's Second Amended Complaint.

**C.    Because Interline Is Not A Legal Successor To GATT, CCT Cannot Maintain A Breach Of Contract Case Against Interline**

To maintain an action for breach of contract, a plaintiff must plead and prove the following: 1) formation of an agreement; 2) performance by one party; 3) breach of an agreement by the other party; and 4) damages. *Rosato v. Mascardo*, 82 Conn. App. 396, 844 A.2d 893 (2004); *Bouchard v. Sundberg*, 80 Conn. App. 180, 189, 834 A.2d 744 (2003). In the present case, the plaintiff cannot establish that Interline is a legal successor to GATT. Consequently, CCT cannot maintain a breach of

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

24

contract claim against Interline.  Accordingly, Interline seeks summary judgment on the plaintiff's breach of contract claims against it.

**D.    Plaintiff Cannot Establish a Chain of Liability From GATTInc. to Interline**

Even if CCT were able to establish some legal theory of successorship between GATT and Interline (which it cannot), that would still not make Interline liable for debts under the Agreement. As noted above, GATT was not a party to the Agreement, but instead, GATTInc. was.  CCT has introduced no record evidence to show that GATT is liable for the debts of GATTInc.  The mere allegation that GATT was "doing business as" GATTInc. falls far short of the admissible evidence CCT needs to defeat summary judgment on this essential point.  CCT's failure to come forward with evidence bridging the gap between GATTInc. and GATT is another reason calling for the entry of summary judgment against CCT on its claims against Interline, which are based entirely on the theory that Interline is the successor to GATT.

**E.    This Court Lacks Personal Jurisdiction Over Interline**

Interline is also entitled to summary judgment because it has presented undisputed evidence establishing that that this Court lacks personal jurisdiction over it in this case.  As set forth in Interline's Motion to Dismiss dated June 14, 2003 and Memorandum in Further Support dated

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

25

September 22, 2003 which are incorporated herein by reference,[2] Interline is entitled to judgment as a matter of law on the plaintiff's Second Amended Complaint.

Despite an ample opportunity to conduct discovery on jurisdictional issues, CCT has failed to establish that this case arises out of, or in any way relates to, contact by <u>Interline</u> with the State of Connecticut. Interline is a Texas corporation with a principal place of business in Texas. *Boyd Aff.* at ¶2. Interline performs all of its business operations in Texas and in Florida. *Id.* at ¶4. All travel reservations and bookings are conducted in Texas and/or Florida. *Id.* Interline has no business offices in Connecticut and has no employees in Connecticut. *Id.* at ¶5. Interline does not own, lease or rent real property in Connecticut. *Id.* at ¶6. Interline has no agent for the service of process in Connecticut and has never filed a tax return in Connecticut. *Id.* at ¶7.

A defendant can defeat the exercise of a Court's jurisdiction if a defendant makes out a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174 (1985). Interline does not have "continuous and systematic" contacts with Connecticut so as to give this Court general jurisdiction over it under the prevailing constitutional test. It presently derives only $33,000 in annual income (approximately **0.3%** of its total annual income) from orders placed from individuals that have a residence address in the State of Connecticut. *Interline's May Discovery*

---

[2] On November 10, 2003, the Court (Underhill, J.) denied Interline's Motion to Dismiss without prejudice, thereby

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

26

*Responses* at Interrog. 17. Of the approximately <u>115,000</u> persons in its e-mail customer and marketing database, only <u>680</u> e-mail addresses indicate that they are from persons who have an address in the State of Connecticut. *Interline's June Discovery Responses* at Interrog. 16. Although Interline has a website which can be accessed worldwide, this fact alone is insufficient to establish personal jurisdiction over Interline. *See Neato v. Great Gizmos*, 2000 U.S. Dist. LEXIS 20684 *11-12 (D. Conn. Feb. 24, 2000)(defendant's motion to dismiss granted where defendant's only contacts with Connecticut, besides its informational website, were sales amounting to 0.25% of its total sales).

Simply stated, Interline could hardly have imagined being haled into court in Connecticut to defend itself in a lawsuit arising over the purchase of assets in a foreclosure sale in Austin, Texas. Interline therefore seeks summary judgment and dismissal of this action because this Court lacks jurisdiction over it under both Connecticut's long arm statute, Conn. Gen. Stat. §33-929 and U.S. Const. Amend. V and XIV.

## IV.   CONCLUSION

The undisputed facts show that CCT's theories of recovery against Interline are insufficient as a matter of law. The case law and evidence in this case clearly establish that Interline is not a legal successor to GATT and that it cannot be held liable for any debts or obligations of GATT (or GATTInc.). Moreover, the evidence shows that this Court lacks jurisdiction over it under both

---

enabling Interline to raise the issue of personal jurisdiction at a later date. *See Court Order dated November 10, 2003*

Law Offices of Laura Flynn Baldini, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

27

Connecticut's long arm statute, Conn. Gen. Stat. §33-929 and U.S. Const. Amend. V and XIV. Accordingly, for the foregoing reasons, Interline respectfully requests that its Motion for Summary Judgment be granted and that this action be dismissed with prejudice.

Respectfully submitted,

DEFENDANT,
INTERLINE TRAVEL & TOUR, INC.

By: _____
LAURA F. BALDINI, ESQ.
Federal Bar Number ct19887
Law Offices Of Laura Flynn Baldini, LLC
2 Batterson Park Road, 2nd Floor
Farmington, CT 06032
Tel. (860) 874-8483
Fax. (860) 561-9823
LBaldini@FlyBal-Law.com
Juris. No. 421267

attached hereto as **Exhibit R**.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

28

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing was mailed via U.S. mail, postage prepaid on this 4th day of January, 2006 to the following counsel of record:

Kevin Chamberlin, Esq.
Law Offices of Kevin P. Chamberlin
*Counsel for Plaintiff*
Mill Pond Road, 4th Floor
Danbury, CT 06811

By: _____
LAURA F. BALDINI, ESQ.
Law Offices of Laura Flynn Baldini, LLC

LAW OFFICES OF LAURA FLYNN BALDINI, LLC
2 Batterson Park Road, 2nd Floor • Farmington, CT 06032
Juris No. 421267 • (860) 874-8483 • Fax: (860) 561-9823

29