# EXHIBIT A

Jan 11 07 11:54a     Kevin P. Chamberlin     2037923370     p.1

# FACSIMILE TRANSMITTAL COVER SHEET

## KEVIN P. CHAMBERLIN
### ATTORNEY AT LAW
39 MILL PLAIN ROAD, SUITE 10
DANBURY, CT 06811
TELEPHONE: (203) 792-0011
FACSIMILE:   (203) 792-3370

FILE:   _ACT v. Interline_

TO:   _Laura F. Baldini, Esq._

FAX NO:   _860 - 561 - 9823_

FROM:   ATTORNEY KEVIN P. CHAMBERLIN

DATE:   _1/11_

PAGES SENT:   _4_   (INCLUDING COVER)

MESSAGE: _Please be advised - this has been sent to USDC-Dallas, but not yet been processed._
_-Kevin_

The document(s) accompanying this fax transmission contains(s) information from the Law office of Kevin P. Chamberlin, which is confidential and/or legally privileged.  The information is intended only for the use of the individual of entity names on this transmission sheet.  If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing, taking any action in reliance on the contents of this telecopied information is strictly prohibited, and that the document should be returned to this firm immediately, so that we can arrange for the return of the documents to  us at no cost to you.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### DALLAS DIVISION

CALL CENTER TECHNOLOGIES, INC.,

Plaintiff

v.                                         Case Number:

GRAND ADVENTURES TOUR & TRAVEL

PUBLISHING CORP., INTERLINE TRAVEL &

TOUR, INC. [3:03CV1036 (USDC)]

Defendant

## APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

I.      Applicant is an attorney and a member of the law firm of (or practices under the name of)

Law Office of Kevin P. Chamberlin, with offices at 39 Mill Plain Road, Suite 10, Danbury, CT, 06811,

203-792-0011.

II.     Applicant will sign all pleadings with the name Kevin P. Chamberlin.

III.    Applicant has been retained personally or as a member of the above-named firm by

Call Center Technologies, Inc.

to provide legal representation in connection with the above-styled matter now pending before the United

States District Court, for the Northern District of Texas.

IV.     Applicant is a member in good standing of the bar of the highest court of the state of

Connecticut , where Applicant regularly practices law.

Bar license number: ct26843        Admission date: November 14, 2005

V.      Applicant has also been admitted to practice before the following courts:

| Court: | Admission Date: | Active or Inactive: |
|---|---|---|
| CT STATE COURT | 10/13/2000 | ACTIVE |
| | | |
| | | |
| | | |

_____

Signature

I hereby certify that I have served a true and correct copy of this document upon each attorney of

record and the original upon the clerk of court accompanied by a $25.00 filing fee on this ___9th___ day of

_____January_____, 2007.

_____Kevin Chamberlin_____

Printed Name of Applicant

_____

Signature

**ORDER**

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☐ the application be granted. The Clerk of Court shall deposit the application fee to the account

of the Non-Appropriated Fund of this Court.

☐ the application be denied. The Clerk of Court shall return the admission fee to the Applicant.

_____    _____

DATE JUDICIAL OFFICER

Jan 11 07 11:55a    Kevin P. Chamberlin    2037923370    p.3

**VI.** Applicant has never involuntarily lost, temporarily or permanently, the right to practice before any court or tribunal, or resigned in lieu of discipline, except as provided below:

**VII.** Applicant has never been subject to grievance proceedings or involuntary removal proceedings—regardless of outcome—while a member of the bar of any state or federal court or tribunal that requires admission to practice, except as provided below:

**VIII.** Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

**IX.** Applicant has filed for *pro hac vice* admission in the United States District Court for the Northern District of Texas during the past three (3) years in the following matters:

Date of Application Case No. And Style

_____

_____

(If necessary, attach statement of additional applications.)

**X.** Local counsel of record associated with Applicant in this matter is Christopher J. Parvin who has offices at 3010 LBJ Freeway, Suite 1310, Dallas, TX, 75234, (972) 481-1778.

**XI.** Check the appropriate box below.

For Application in a **Civil Case**

☒ Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☐ Applicant has read and will comply with the local criminal rules of this court.

**XII.** Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

SIGNED this ___9th___ day of ___January___, 20_07_ .

_Kevin Chamberlin_

Printed Name of Applicant

Page 2 of 3

# <u>EXHIBIT B</u>

Service: **Get by LEXSEE®**
Citation: **2005 U.S. App. LEXIS 26525**

*368 U.S. App. D.C. 361; 430 F.3d 450, \*;*
*2005 U.S. App. LEXIS 26525, \*\*; 17 Am. Disabilities Cas. (BNA) 577*

GWENDOLYN B. SMITH, APPELLANT v. DISTRICT OF COLUMBIA, APPELLEE

No. 04-7082

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

368 U.S. App. D.C. 361; 430 F.3d 450; 2005 U.S. App. LEXIS 26525; 17 Am. Disabilities
Cas. (BNA) 577

October 14, 2005, Argued
December 6, 2005, Decided

**SUBSEQUENT HISTORY:** Later proceeding at Smith v. District of Columbia, 2006 U.S. Dist.
LEXIS 40893 (D.D.C., June 21, 2006)

**PRIOR HISTORY:** [\*\*1] Appeal from the United States District Court for the District of
Columbia. (No. 02cv00481). Smith v. District of Columbia, 271 F. Supp. 2d 165, 2003 U.S.
Dist. LEXIS 11695 (D.D.C., 2003)

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee filed suit against defendant former
employer alleging discrimination and retaliation under the Americans with Disabilities Act.
The United States District Court for the District of Columbia granted the employer
summary judgment on the retaliation claim, and then later, just prior to trial, granted the
employer summary judgment on the discrimination claim. The employee appealed.

**OVERVIEW:** As to retaliation, the employer showed that it detailed the employee to
another position in an attempt to give her a position that would not require out of office
home visits to patients of which she had complained. The request for advance sick leave
was denied because more leave was requested than regulations allowed. The disciplinary
actions were initiated due to her negligence and insubordination. Those nondiscriminatory
reasons were completely unrebutted. Summary judgment was properly granted on the
retaliation claim. The employer had filed the summary judgment motion on the
discrimination claim after the deadline for doing so, just prior to trial, with no motion for
an extension of the deadline. Absent a motion for an extension, the trial court had no
basis on which to exercise its discretion and entertain the motion. Under such
circumstances, it was an abuse of discretion to entertain the late motion for summary
judgment on the disability discrimination claim. The employer had delayed in filing the
motion for well over a year, and no reason for the delay was presented.

**OUTCOME:** The district court's grant of summary judgment on the retaliation claim was
affirmed. The grant of summary judgment on the discrimination claim was reversed, and
the discrimination claim was remanded for trial.

**CORE TERMS:** disability, summary judgment, retaliation, discrimination claim, deadline,
excusable neglect, non-discriminatory, sick leave, supervisor, patients, prima facie case,

reasonable jury, adverse action, concedes, reasonable accommodation, insubordination, accommodation, disciplinary, discourteous, regulation, designated, abused, protected activity, notice of appeal, discriminatory, post-deadline, entertaining, quotation, movant, Disabilities Act

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Summary Judgment > Standards > General Overview

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1* An appellate court reviews de novo the district court's decision to grant summary judgment. The appellate court affirms only if, viewing the evidence in the light most favorable to the party opposing summary judgment, no reasonable jury would find in her favor. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Burden Shifting

Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Americans With Disabilities Act

*HN2* Employers may not retaliate against employees who file complaints of disability discrimination under the Americans with Disabilities Act. 42 U.S.C.S. § 12203(a). In analyzing an employee's retaliation claim, courts use the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corp. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Burden Shifting

Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof

Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Americans With Disabilities Act

*HN3* Under the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corp., the plaintiff employee asserting retaliation must establish the three elements of a prima facie case of retaliation: (1) that she engaged in protected activity; (2) that she was subjected to adverse action by the employer; and (3) that there existed a causal link between the adverse action and the protected activity. Such a showing raises a rebuttable presumption of unlawful discrimination and shifts to the defendant the burden to rebut the presumption by asserting a legitimate, nondiscriminatory reason for its actions. If the defendant does so, the McDonnell Douglas framework disappears, and the court must decide whether a reasonable jury could infer intentional discrimination from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory or that the nondiscriminatory justification was pretextual. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions

*HN4* Fed. R. Civ. P. 6(b) governs extensions of time for various filings with the trial court.

When a court sets a deadline, the court may, for cause, exercise its discretion upon motion made after the expiration of the specified period and permit the belated action where the failure to act was the result of excusable neglect. Fed. R. Civ. P. 6 (b)(2). There is a distinction between Rule 6(b)(2) and Rule 6(b)(1), which allows a court to grant an extension if a "request" is made before the time for filing expires. By contrast, post-deadline extensions may be granted only "for cause shown" and "upon motion." Any post-deadline motion must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Motion Practice > Time Limitations 🔍

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions 🔍

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion 🔍

HN5⚡ An appellate court reviews the district court's decisions under Fed. R. Civ. P. 6(b) for abuse of discretion. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Motion Practice > Time Limitations 🔍

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions 🔍

HN6⚡ The danger of prejudice to the other party is one of the factors to be considered in making a determination of "excusable neglect" under Fed. R. Civ. P. 6(b). Other factors to be considered in this equitable determination include (1) the length of the delay and its potential impact on judicial proceedings, (2) the reason for the delay, including whether it was within the reasonable control of the movant, and (2) whether the movant acted in good faith. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** Robin M. Meriweather, appointed by the court, argued the cause as amicus curiae for appellant. With her on the briefs were David W. DeBruin and William M. Hohengarten.

L. Saundra White argued the cause and filed the brief for appellant.

William J. Earl, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellee. With him on the briefs were Robert J. Spagnoletti, Attorney General, and Edward E. Schwab, Deputy Attorney General.

**JUDGES:** Before: TATEL and BROWN, Circuit Judges, and EDWARDS, Senior Circuit Judge. n1 Opinion for the Court filed by Circuit Judge BROWN.

n1 Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

**OPINION BY:** BROWN

**OPINION:** [*451] BROWN, *Circuit Judge:* Gwendolyn Smith, a former employee of the District of Columbia's Department of Mental Health (DMH), filed suit against the District, claiming she was the victim of discrimination and retaliation under the Americans with Disabilities Act (ADA). The district court granted summary judgment to the District on both claims; Smith now [**2] appeals. We find the district court properly granted summary judgment on Smith's retaliation claim but abused its discretion by granting the District's late [*452] motion for summary judgment on the discrimination claim. We therefore remand

the case for trial on the discrimination claim.

I

Smith worked for the DMH as a mental health specialist for over thirty years. During her service in the Gulf War, Smith was diagnosed with a bacterial infection; the treatment for this condition led to diabetes and hypertension. Smith also suffered back and shoulder injuries. After returning to work in June 1994, she informed her supervisors at the DMH of her disabilities and was given a handicapped parking space and permitted to change her work schedule to start at 10:00 a.m. rather than 8:15 a.m.

In Smith's role as a mental health specialist at the DMH, she had to make home visits to patients; this requirement was always part of her job description, but the required frequency of visits increased in 2000. Smith claims her disability prevents her from making "frequent trips up and down stairs" or "getting in and out of vehicles constantly," and because of these restrictions, she is physically able to [**3] make only occasional home visits to patients.

On May 16, 2000, Smith filed a complaint with the D.C. Office of Human Rights and the Equal Employment Opportunity Commission (EEOC), alleging the DMH had discriminated against her by denying her a reasonable accommodation of her disability. In the section of the complaint form designated "cause of discrimination," Smith checked the boxes for "Retaliation" and "Disability." In part, Smith's complaint stated she "believed that [she had] been discriminated against because of [her] disability, in violation of the Americans with Disabilities Act of 1990, as amended." The EEOC dismissed her complaint and issued a "right to sue" letter on November 20, 2000, informing her that she had 90 days to file suit.

On January 3, 2001, Smith requested additional accommodations, including not being counted as "absent without leave" for time she missed, as well as being excused from home visits. On March 12, 2001, a DMH director noted Smith's patients had not been receiving home visits over the previous three months and found this "unacceptable." Smith informed the DMH she was unable to make home visits due to her disability; all of her patients were [**4] then assigned to other employees. Later that month, the District sent Smith a letter stating that "conducting 'home visits' [was] an essential function of [her] position." The District found her to be an "individual with a disability," n2 and thus entitled to reasonable accommodations, but concluded there were "no probable grounds to support a finding that [her] rights in the workplace [were] being violated."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 We express no opinion as to whether Smith's health problems qualify her as disabled under the ADA. This question will have to be resolved on remand.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The DMH also filed disciplinary charges against Smith based on her refusal to acknowledge Kevin Martin as her designated supervisor. Smith admitted that she would not accept Martin as her supervisor, claiming he lacked the educational background to give her instructions. Smith stated that if she was given an instruction she viewed as "wrong," she would not comply: "I don't come out and say, no, I'm not going to do it. I just don't do it."

On June 14, 2001, the [**5] DMH ordered Smith to report for a 120-day detail at the Comprehensive Psychiatric Emergency Program's (CPEP) Crisis Hotline at D.C. General Hospital. Smith informed the [*453] DMH she would be unable to report to the CPEP, claiming the hospital was too far from her home and driving there would "compromise [her]

health and place [her] in a position for potential and/or imminent severe medical complications." On July 9, 2001, the DMH notified Smith she had no accumulated leave time available and that it was instituting disciplinary measures against her. On August 14, 2001, the DMH denied Smith's request for an advance of 328 hours of sick leave because regulations did not allow such a large advance and informed her she was going to be terminated. The stated grounds for her removal were "insubordination" (i.e., "refusal to carry out assigned duties and responsibilities"), "inexcusable neglect of duty" (i.e., "negligence in performing official duties, including failure to follow verbal or written instructions"), and "insubordination and discourteous treatment" (i.e., "knowingly making false or unfounded face-to-face and written discourteous statements concerning [her] immediate supervisor"). [**6]

On October 22, 2001, after the 120-day detail to CPEP would have ended, Smith notified the DMH that she was ready and medically able, given accommodations, to return to work. She was not given another assignment, however, and filed another complaint with the D.C. Office of Human Rights and the EEOC on November 23, 2001. In the section of the complaint form designated "cause of discrimination," Smith again checked the boxes for "Retaliation" and "Disability." Smith alleged that since she filed her first EEOC complaint, the District had "retaliated against [her] by not allowing [her] a reasonable accommodation for [her] disability." On December 18, 2001, the EEOC dismissed Smith's complaint and issued her another "right to sue" letter, stating that she had 90 days to file suit. Smith retired from the DMH before disciplinary actions were finalized.

Smith filed suit in the United States District Court for the District of Columbia on March 15, 2002, alleging disability discrimination and retaliation in violation of the ADA. n3 The District moved for summary judgment on both claims. The district court denied the motion with respect to the discrimination claim, finding genuine issues [**7] of material fact as to whether home visits were essential to Smith's job and whether a reasonable accommodation was possible. _Smith v. District of Columbia, 271 F. Supp. 2d 165, 172 (D.D.C. 2003)_ (_Smith I_). However, the court granted summary judgment to the District on the retaliation claim, finding Smith had not established a prima facie case. _Id. at 173_. The court found her temporary reassignment to CPEP was not an adverse action, and Smith did not present "a single reason or scrap of evidence permitting the inference" that her request for sick leave was denied as retaliation rather than because her request exceeded the amount allowed by regulation. _Id._ n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 In her complaint, Smith claimed the District's acts violated 42 U.S.C. § 2000e-5 et seq. (part of Title VII of the Civil Rights Act of 1964) and 42 U.S.C. § 12101 et seq. (the ADA). We note that the parties have at times referred to Smith's retaliation claim as arising under Title VII and at other times as arising under the ADA. As Smith alleges that she was retaliated against for filing a complaint of _disability_ discrimination, we analyze her retaliation claim under the ADA, namely 42 U.S.C. § 12203(a). [**8]

n4 The District later moved for summary judgment on the discrimination claim for a second time, arguing that Smith had submitted a "Total and Permanent Disability Cancellation Request" to the Federal Family Education Loan Program. _Smith v. District of Columbia, 295 F. Supp. 2d 53 (D.D.C. 2003)_ (_Smith II_). In that request, Smith had certified she was "totally and permanently disabled, rendering her unable to work, even on a limited basis." _Id._ at 54 (internal quotation marks omitted). The District claimed this statement was incompatible with Smith's current claim that she could still perform the essential functions of her job. _Id. at 54-55_. The district court denied the motion, holding that Smith was not estopped by her

previous statement, as the loan cancellation request had not been approved. *Id. at 55-56.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

 **[\*454]** The district court had set December 27, 2002, as the deadline for the District to file motions for summary judgment. On April 9, 2004, ten days before the scheduled start of trial, the District again moved for summary **[\*\*9]** judgment, arguing Smith's disability discrimination claim should be dismissed as untimely. The district court granted the motion on April 19, 2004, finding Smith had 90 days after the EEOC sent her first "right to sue" letter to file suit on her disability discrimination claim, but that she had waited almost 16 months to do so. *Smith v. District of Columbia,* 2005 U.S. Dist. LEXIS 2853, No. 02cv00481, 2005 WL 488824, at \*1 (D.D.C. Feb. 28, 2005) (unpublished opinion) (*Smith III*). The district court also found Smith's second EEOC complaint alleged only retaliation, not disability discrimination; thus, it held that Smith had not exhausted her administrative remedies with respect to her attempt to renew her claim of disability discrimination. 2005 U.S. Dist. LEXIS 2853, [WL] at \*2-3. Although Smith protested the District's late filing, the trial court concluded the District's "dilatoriness . . . [did] not amount to the kind of delay and 'game playing' that have led the courts to hold that the defendant has waived the failure to exhaust defense." 2005 U.S. Dist. LEXIS 2853, [WL] at \*3. At the same time, the district court attempted to "cure the prejudice [Smith] suffered without nullifying the congressional policy . . . that the courts enforce **[\*\*10]** the procedural requirements Congress mandated" in the ADA. *Id.* "All of the fees and costs generated since the District's filing of its answer were completely unnecessary," the district court reasoned, as the District could have moved to dismiss the complaint at that early point; hence, the district court ordered the District to pay all costs and attorney's fees incurred by Smith since that point, except those incurred in response to this final motion. *Id.*

II

As a preliminary matter, we find that we have jurisdiction to hear Smith's appeal. After the district court granted summary judgment on Smith's disability discrimination claim, the parties filed several motions contesting the costs and attorney's fees and asking for reconsideration. Smith also filed a notice of appeal. The District then filed a motion in this court requesting that we hold the case in abeyance pending the resolution of the district court motions. We denied the District's motion but directed the parties to address this jurisdictional issue further in their briefs. As the District now concedes, none of the relevant motions was filed in the district court within ten days after the grant of summary judgment, **[\*\*11]** as Federal Rule of Civil Procedure 59(e) requires. Hence, the motions were not timely, and do not affect the timeliness of Smith's notice of appeal. *See* Fed. R. App. P. 4(a).

III

 HN1 We review de novo the district court's decision to grant summary judgment. *See Haynes v. Williams,* 364 U.S. App. D.C. 108, 392 F.3d 478, 481 (D.C. Cir. 2004). We affirm only if, viewing the evidence in the light most favorable to Smith, no reasonable jury would find in her favor. *See Murray v. Gilmore,* 365 U.S. App. D.C. 372, 406 F.3d 708, 713 (D.C. Cir. 2005).

 HN2 Employers may not retaliate against employees who file complaints of disability discrimination under the ADA. **[\*455]** *See* 42 U.S.C. § 12203(a). In analyzing Smith's retaliation claim, we use the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Although the framework was developed for Title VII cases, our sister circuits have all accepted its application to ADA retaliation suits under § 12203(a), as we do now. *See Brown*

*v. City of Tucson, 336 F.3d 1181, 1186-87 (9th Cir. 2003)*; **[\*\*12]** *New England Health Care Employees Union v. R.I. Legal Servs.*, 273 F.3d 425, 429 (1st Cir. 2001); *Rhoads v. FDIC, 257 F.3d 373, 391-92 (4th Cir. 2001); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000); Silk v. City of Chicago, 194 F.3d 788, 799 (7th Cir. 1999); Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999); Walborn v. Erie County Care Facility, 150 F.3d 584, 588-89 (6th Cir. 1998); Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1121-22 (5th Cir. 1998); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997); see also Brown v. Brody, 339* U.S. App. D.C. 233, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999) ("Courts of appeals routinely apply the same standards to evaluate Title VII claims as they do ADA claims, ADEA claims, and even ERISA claims.").

*HN3*Under this framework, the plaintiff must establish the three elements of a **[\*\*13]** prima facie case of retaliation: first, that she "engaged in protected activity"; second, that she "was subjected to adverse action by the employer"; and third, that "there existed a causal link between the adverse action and the protected activity." *Jones v. Wash. Metro. Area Transit Auth.*, 340 U.S. App. D.C. 320, 205 F.3d 428, 433 (D.C. Cir. 2000) (internal quotation marks and citations omitted). "Such a showing raises 'a rebuttable pre-sumption of unlawful discrimination' and shifts to the defendant the burden to 'rebut the presumption by asserting a legitimate, non-discriminatory reason for its actions.'" *Id.* (citations omitted). If the defendant does so, "the *McDonnell Douglas* framework disappears, and we must decide whether a reasonable jury could infer intentional discrimination" from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory or that the non-discriminatory justification was pretextual. *Murray, 406 F.3d at 713.*

Clearly, Smith engaged in a statutorily-protected activity when she filed her first EEOC complaint. *See Holbrook v. Reno*, 339 U.S. App. D.C. 4, 196 F.3d 255, 263 (D.C. Cir. 1999). **[\*\*14]** Smith claims the District took adverse actions against her by detailing her to CPEP, denying her request for advance sick leave, and effectively suspending her and forcing her to retire. Assuming, without deciding, that these acts do qualify as "adverse actions," and that a causal connection between her EEOC complaint and the District's actions did exist, Smith's case still fails under the *McDonnell Douglas* framework. The District presented legitimate, non-discriminatory reasons for its actions: it detailed Smith to CPEP in an attempt to give her a position that would not require home visits; it denied her request for advance sick leave because she requested more leave than regulations allowed; and it instituted disciplinary actions against her in response to her negligence and insubordination (including discourteous treatment of her supervisor). Smith did not provide evidence on which a reasonable jury could conclude that these proffered justifications were mere pretext and that discriminatory animus motivated the District's actions. The District's non-discriminatory justifications for its actions remain completely unrebutted. Therefore, **[\*456]** summary judgment was properly granted on **[\*\*15]** Smith's retaliation claim.

IV

The same cannot be said of Smith's disability discrimination claim. Smith argues that the district court abused its discretion in entertaining the District's late motion for summary judgment. The District filed its third motion for summary judgment on April 9, 2004, contending that Smith's disability discrimination claim was not timely, as she did not file it in the district court within 90 days after her first "right to sue" letter was issued. Although the District concedes it never moved for an extension of the December 27, 2002, deadline for filing summary judgment motions, the district court granted the late motion without discussing the lack of a request for an extension.

*HN4*Federal Rule of Civil Procedure 6(b) governs extensions of time for various filings with

the trial court. When a court sets a deadline, the court may, for cause, exercise its discretion "upon motion made after the expiration of the specified period" and permit the belated action "where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b). In *Lujan v. National Wildlife Federation* [**16] , the Supreme Court noted the distinction between this provision and Rule 6(b)(1), which allows a court to grant an extension if a "request" is made before the time for filing expires. 497 U.S. 871, 896 n.5, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). By contrast, the Court emphasized that post-deadline extensions may be granted only "for cause shown" and "upon motion." *Id.* at 896. Any post-deadline motion "must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond." *Id.* at 896 n.5. *HN5* We review the district court's decisions under Rule 6(b) for abuse of discretion. See *In re Vitamins Antitrust Class Actions*, 356 U.S. App. D.C. 70, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

We have been quite deferential to Rule 6(b) decisions in the past, even affirming a deadline extension that was granted without a formal finding of excusable neglect when the court found no prejudice to the other party. n5 See *Yesudian ex rel. United States v. Howard Univ.,* 348 U.S. App. D.C. 145, 270 F.3d 969, 971 (D.C. Cir. 2001). In *Yesudian*, however, we found that the Rule [**17] 6(b)(2) motion requirement may have been satisfied by a memorandum filed by the [*457] requesting party. *Id.* Here, the District concedes that it never moved for an extension of the deadline. In the absence of any motion for an extension, the trial court had no basis on which to exercise its discretion. See *Lujan, 497 U.S. at 896* (stating that "any *post*deadline extension must be 'upon motion made'"). Under these circumstances, then, we are compelled to conclude that the district court abused its discretion in entertaining the late motion for summary judgment on Smith's disability discrimination claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 *HN6* The danger of prejudice to the other party is one of the factors to be considered in making a determination of "excusable neglect." See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (construing Bankr. R. 9006(b)); *see also Yesudian ex rel. United States v. Howard Univ.,* 348 U.S. App. D.C. 145, 270 F.3d 969, 971 (D.C. Cir. 2001) (applying the *Pioneer* analysis to Rule 6(b)). Other factors to be considered in this equitable determination include "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer, 507 U.S. at 395*. Although the district court did not make a formal finding of excusable neglect, we note that the *Pioneer* factors would not have supported the district court's acceptance of the District's late motion, even if the District had filed a formal request for an extension. First, the district court found Smith would suffer prejudice from the District's late filing; the award of costs and attorney's fees was aimed at remedying the prejudice. Second, the length of the delay was well over a year, not just a few days. Third, the District did "not even attempt to justify . . . ignoring the deadlines"; no reason for the delay was presented. *Smith III*, 2005 U.S. Dist. LEXIS 2853, 2005 WL 488824, at *3. Only one of the four factors—that the District did not appear to act in bad faith—supports the court's decision.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**18]

V

For the above reasons, we affirm the district court's grant of summary judgment on Smith's retaliation claim, but reverse the grant of summary judgment on the discrimination claim and remand for trial on that claim only.

*So ordered.*

Service: **Get by LEXSEE®**
Citation: **2005 U.S. App. LEXIS 26525**
View: **Full**
Date/Time: Monday, January 22, 2007 - 12:16 PM EST

\* Signal Legend:

● - Warning: Negative treatment is indicated

Ⓠ - Questioned: Validity questioned by citing refs

⚠ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

Ⓐ - Citing Refs. With Analysis Available

ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

Service: **Get by LEXSEE®**
Citation: **211 F.3d 457,at 464**

*211 F.3d 457, \*; 2000 U.S. App. LEXIS 8170, \*\*;*
*46 Fed. R. Serv. 3d (Callaghan) 505*

Margaret Lowry, Appellant/Cross-Appellee, v. McDonnell Douglas Corporation,
Appellee/Cross-Appellant.

No. 99-1750, No. 99-1805

UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

211 F.3d 457; 2000 U.S. App. LEXIS 8170; 46 Fed. R. Serv. 3d (Callaghan) 505

January 12, 2000, Submitted
April 27, 2000, Filed

**SUBSEQUENT HISTORY:** [\*\*1] Rehearing En Banc and Rehearing Denied June 2, 2000,
Reported at: 2000 U.S. App. LEXIS 12174. Certiorari Denied October 10, 2000, Reported at:
2000 U.S. LEXIS 6675.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of
Missouri. 4:96-CV-1572 (ERW). Honorable E. Richard Weber.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff appealed the order of the United States District Court
for the Eastern District of Missouri granting summary judgment to defendant on her
wrongful death claim. Defendant cross-appealed the decision to grant plaintiff's motion for
Fed. R. Civ. P. 60(b) relief and moved to dismiss the appeal for lack of jurisdiction.

**OVERVIEW:** Plaintiff brought an action for wrongful death against defendant. Summary
judgment was granted to defendant on the merits. Plaintiff's first appeal was dismissed for
lack of jurisdiction. She then filed a Fed. R. Civ. P. 60(b) motion seeking relief from earlier
orders relating to her untimely notice of appeal. The district court granted the motion.
Plaintiff again appealed the summary judgment, and defendant cross-appealed from the
decision to grant relief from judgment under Rule 60(b). Defendant again moved to
dismiss for lack of jurisdiction. The appellate court dismissed the appeal, finding that the
district court did not have the authority to consider plaintiff's Rule 60(b) motion to
essentially undo the court's denial of her original Fed. R. App. P. 4(a)(5) motion for an
extension of time to file her notice of appeal. The district court abused its discretion in
holding that plaintiff demonstrated excusable neglect so as to entitle her to an extension
of time because her reason for delay was her counsel's miscalculation of the dates.

**OUTCOME:** The motion to dismiss the appeal was granted because the district court was
without authority to consider plaintiff's motion to undo the court's denial of her original
motion for extension of time to file notice of appeal. It was abuse of discretion to hold that
plaintiff demonstrated excusable neglect for purposes of the extension of time.

**CORE TERMS:** notice of appeal, excusable neglect, neglect, untimely, motion to dismiss,
excusable, timely notice of appeal, entry of judgment, notice, weekend, movant, extension of
time, lack of jurisdiction, summary judgment, inadvertence, thirty-day, docketed, deadline,
moot, leave to file, good cause, jurisdictional, properly granted, filing deadline, written
notice, relieve, sua sponte, miscalculation, styled, granting summary judgment

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Jurisdiction > General Overview 🔲

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss 🔲

Civil Procedure > Appeals > Reviewability > Notice of Appeal 🔲

*HN1*⏷The party seeking reversal of a district court's failure to grant Fed. R. Civ. P. 60(b) relief should file a notice of appeal from that order.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview 🔲

Civil Procedure > Appeals > Reviewability > Time Limitations 🔲

*HN2*⏷The "unique circumstances" doctrine, which would justify an appellate court's jurisdiction over an otherwise untimely appeal, applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done.  More Like This Headnote

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview 🔲

Civil Procedure > Appeals > Dismissals of Appeals > Involuntary Dismissals 🔲

Civil Procedure > Appeals > Reviewability > General Overview 🔲

*HN3*⏷The continued vitality of the "unique circumstances" doctrine, which would justify an appellate court's jurisdiction over an otherwise untimely appeal, has been questioned.  More Like This Headnote

Civil Procedure > Pleading & Practice > Motion Practice > General Overview 🔲

Civil Procedure > Judgments > General Overview 🔲

Civil Procedure > Appeals > Reviewability > Time Limitations 🔲

*HN4*⏷Fed. R. Civ. P. 60(b) provides that a district court may relieve a party from a final judgment, order, or proceeding for mistake. The motion must be filed, however, within a reasonable time, and not more than one year after the judgment, order, or proceeding was entered or taken.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion 🔲

Civil Procedure > Appeals > Standards of Review > De Novo Review 🔲

Governments > Courts > Authority to Adjudicate 🔲

*HN5*⏷A court's decision that a movant has shown grounds warranting Fed. R. Civ. P. 60(b) relief is reviewed for abuse of discretion, but the appellate court reviews the district court's power to entertain a motion for relief in the first instance de novo.  More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

*HN6* It remains the law that relief under Fed. R. Civ. P. 60(b)(1) for judicial error other than for judicial inadvertence is not available. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

Civil Procedure > Appeals > Reviewability > General Overview 

*HN7* A Fed. R. Civ. P. 60(b) motion also must be brought within a reasonable time and, to prevent its use as a substitute for appeal, the court has required a Rule 60(b) motion alleging judicial inadvertence to be made within the time period allowed for appeal, that is, 30 days from the entry of judgment. This certainly makes sense in cases alleging mistake by the court, where all relevant facts evidencing the court's errors were known as soon as the orders were entered. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Relief From Judgment > Extraordinary Circumstances 

Civil Procedure > Appeals > Reviewability > General Overview

*HN8* Miscounting cannot be considered the type of "exceptional circumstances" which the court has deemed necessary to revisit a final judgment. More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN9* Counsel's miscalculation does not constitute "excusable neglect" under Fed. R. App. P. 4(a)(5) or "mistake" under Fed. R. Civ. P. 60(b). More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview 

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN10* The practice of accepting an untimely notice of appeal for filing without a motion and a showing of excusable neglect was rendered invalid in 1979 when Fed. R. App. P. 4 was amended to require a motion. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions

Civil Procedure > Appeals > Reviewability > Time Limitations 

*HN11* The time limits detailed in Fed. R. App. P. 4 for filing a notice of appeal in the district court are mandatory and jurisdictional. Under the terms of the rule, the district court may extend the time for filing a notice of appeal upon motion by a party made within 30 days of the filing deadline and with a showing of excusable neglect. Fed. R. App. P. 4(a)(5). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions



Civil Procedure > Appeals > Reviewability > Time Limitations

*HN12* A party may file an ex parte Fed. R. App. P. 4(a)(5) motion to extend the time for filing a notice of appeal only if the motion is filed within the time permitted for filing the notice of appeal in the first place, ordinarily 30 days from the date judgment is entered. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN13* The good cause standard is applicable only when the party seeking an extension files her Fed. R. App. P. 4(a)(5) motion within the 30-day period allowed for filing a timely notice of appeal, that is, when she is seeking permission to file late rather than forgiveness for having filed late. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN14* The court has adopted the more flexible analysis of the excusable neglect standard for application to Fed. R. App. P. 4(a)(5) cases. The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. Those circumstances, the Pioneer factors, include the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN15* Fed. R. App. P. 4 requires a Rule 4(a)(5) motion to be filed within 30 days of the last day for filing a timely notice of appeal. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN16* The court does not think it can make a difference that no harm to the appellee has been shown. There is unlikely ever to be harm in the Fed. R. App. P. 4(a)(5) setting, because the neglectful appellant has only 30 days after the expiration of his time for appealing in which to request relief. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations

*HN17* The four Pioneer factors applicable to Fed. R. App. P. 4(a)(5) analyses do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry. The court has said that neglect need not be caused by circumstances beyond the control of the movant to be excusable and that a finding of sufficient innocence on the part of the movant is not a condition precedent to our obligation to consider the other equitable factors. But at the end of the day, the focus must be upon the nature of the neglect. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions

Civil Procedure > Appeals > Reviewability > Time Limitations 🔍

HN18⬆The Federal Rules of Appellate Procedure clearly provide that intermediate
weekends are to be counted in the 30-day computation for appeals. Fed. R. App. P.
26(a)(2). If the last day for filing, however, falls on a weekend or a legal holiday,
that day is not included in the 30 days allowed for filing. Fed. R. App. P. 26(a)
(3)). More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations 🔍

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review 🔍

HN19⬆Although neglect no longer needs to be beyond a party's control to be deemed
excusable, inadvertence, ignorance of the rules, or mistakes construing the rules do
not usually constitute "excusable" neglect. Notwithstanding the flexible Pioneer
standard, experienced counsel's misapplication of clear and unambiguous
procedural rules cannot excuse his failure to file a timely notice of
appeal. More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Appeals > Reviewability > Time Limitations 🔍

HN20⬆That the four-part Pioneer standard for determining excusable neglect applies does
not change existing law that a lawyer's misunderstanding of clear law cannot
constitute excusable neglect under Fed. R. App. P. 4(a)(5). More Like This Headnote |
Shepardize: Restrict By Headnote

**COUNSEL:** Counsel who presented argument on behalf of the appellant was Louis S.
Franecke, San Francisco, California.

Counsel who presented argument on behalf of the appellee was Peter W. Herzog, St. Louis,
Missouri.

**JUDGES:** Before BOWMAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

**OPINION BY:** BOWMAN

**OPINION: [*458]**

BOWMAN, Circuit Judge.

This case is before us for the second time, on appeal from the order of the District Court
granting summary judgment to McDonnell Douglas Corporation (MDC) on the wrongful death
claim of plaintiff Margret Lowry. n1 Lowry alleges that MDC defectively designed and failed to
warn of defects in a United States Air Force F-15 aircraft that crashed at Spangdahlem Air
Base in Germany on May 30, 1995, killing Major Donald Lowry, plaintiff's decedent. The
District Court concluded that MDC was shielded from liability by the federal military
contractor defense set forth in Boyle v. United Technologies Corp., 487 U.S. 500, 101 L. Ed.
2d 442, 108 S. Ct. 2510 (1988). Lowry filed her first notice of appeal out of time, and the
District Court allowed the defective filing, notwithstanding Lowry's failure to file a motion and
make a showing that would justify extending the filing deadline under Federal Rule of
Appellate Procedure 4(a). Two days after the notice of appeal was docketed, Lowry
did [**2] file a motion for an extension under Rule 4(a)(5), but the District Court denied
that motion as moot. On MDC's motion, we dismissed the first appeal for lack of jurisdiction.
As we will explain in more detail, Lowry then filed a motion with the District Court invoking

Federal Rule of Civil Procedure 60(b) and seeking relief from the District Court's earlier orders relating to the untimely notice of appeal. The court granted the motion, which ultimately allowed Lowry to timely file another notice of appeal. We have taken with the case MDC's motion to once again dismiss the appeal for lack of jurisdiction, an issue MDC also raises in a cross appeal from the District Court's decision to grant relief from judgment under Rule 60(b). Cf. Karras v. Karras, 16 F.3d 245, 247 (8th Cir. 1994) (per curiam) (noting that [HN1] "party seeking reversal of district court's failure to grant Rule 60(b) relief should file a notice of appeal from that order). It is to the question of our jurisdiction that we turn first.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The original complaint and, as far as we have seen, all documents filed by the parties in this case, including the briefs, spell the plaintiff's first name "Margret." The District Court docketed the case spelling the plaintiff's name "Margaret," and it is the practice of this Court's clerk to use the same caption as the District Court when docketing an appeal, unless advised otherwise. We are not inclined to meddle with the caption sua sponte, absent an indication from Lowry that the spelling of her first name has been wrong from the inception of the case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**3]

I.

In order for us to make our discussion as easy to follow as possible, and to assist the reader in referring back to the pertinent facts and the timing of events, we will forgo further narrative description of the procedural history of the case in favor of a chronological listing, beginning with the District Court's decision to grant summary judgment on the merits.

**June 19, 1998** The District Court granted MDC's motion for summary judgment on the merits. Counsel for MDC has represented to this Court that he faxed the **[*459]** District Court's order to counsel for Lowry on this date; in fact, the copy of the order in the addendum to Lowry's brief (which she has called "Appendix I") bears a typewritten notation at the top "cc: Lou Franecke [Lowry's counsel] (by fax) 6/19/98" and fax legends showing the document was faxed twice on June 19, once from the District Court and again from the offices of MDC's counsel.

**June 24, 1998** Judgment was entered on the District Court docket.

**July 24, 1998** The thirty days allowed for filing a timely notice of appeal from the summary judgment, as provided in Federal Rule of Appellate Procedure 4(a), expired.

**July 27, 1998 [**4]** Lowry tendered her notice of appeal to the District Court.

**July 29, 1998** Lowry's notice of appeal was filed. On it was handwritten: "Leave to file granted 7/29/98 /s/E. Richard Webber."

**July 31, 1998** Lowry filed a motion styled "Ex Parte Motion by Plaintiff to File Notice of Appeal per Federal Rule of Appellant [sic] Procedure 4(a)(5)." The motion sought an extension of time to file a notice of appeal from the summary judgment, alleging "excusible [sic] neglect and good cause" for the delay.

**August 6, 1998** The District Court denied the "Ex Parte Motion" as moot.

**October 13, 1998** MDC filed with the Court of Appeals a motion to dismiss the appeal for

lack of jurisdiction. In the motion, MDC argued that Lowry's notice of appeal was untimely, and that the court's notation purporting to grant "leave to file" was not effective to extend the time for filing the notice of appeal, unaccompanied as it was by a Rule 4(a) motion from Lowry and findings by the District Court.

**November 10, 1998** This Court granted MDC's motion to dismiss the appeal. That judgment, in its entirety, reads as follows: "The motion of appellee for dismissal of **[**5]** this appeal is granted. The appeal is hereby dismissed. See Eighth Circuit Rule 47A(b)." This Court's Rule 47A(b) sets out the procedure for filing "a motion to dismiss a docketed appeal on the ground the appeal is not within the court's jurisdiction." n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Lowry makes much of the fact that MDC did not file this initial motion to dismiss within fifteen days after the first appeal was docketed, as provided in Eighth Circuit Rule 47A(b). She did not mention this in her response in opposition to the motion to dismiss, but only in her "motion for reconsideration" filed with this Court. In any event, it is not clear what she would have this panel do about that now. That case is closed and the mandate has issued. Moreover, if there is any question about this Court's jurisdiction, the Court may (and, indeed, it must) sua sponte examine the issue. See Faysound Ltd. v. Falcon Jet Corp., 940 F.2d 339, 341 n. 2 (8th Cir. 1991), cert. denied, 502 U.S. 1096, 117 L. Ed. 2d 420, 112 S. Ct. 1175 (1992). Also, and again for the reason that the first appeal is closed, we reject any contention, see Reply Brief of Lowry at 12, that the filing of the first notice of appeal presented "unique circumstances" justifying this Court's assertion of jurisdiction over an otherwise untimely appeal. See Osterneck v. Ernst & Whinney, 489 U.S. 169, 179, 103 L. Ed. 2d 146, 109 S. Ct. 987 (1989) (explaining that HN2↑"unique circumstances" doctrine "applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done"). But see Schwartz v. Pridy, 94 F.3d 453, 456 n. 3 (8th Cir. 1996) (noting that HN3↑"the continued vitality of the doctrine has been questioned"). This is a defense that could have been successful, if at all, only in response to the motion to dismiss the first appeal.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[**6]**

**January 6, 1999** The mandate issued on our judgment dismissing the appeal.

**January 19, 1999** Lowry filed in the District Court a document styled "Notice and Motion to Relieve Plaintiffs [sic] from Denial as Moot Motion to Grant Leave to Extend Time for Filing Notice of Appeal (FRCP 60, FRAP 4(a)(5) and 4(a)(6))." In the motion Lowry acknowledged that "[]the District Court cannot grant untimely Appeals to be filed unless proving the conditions prescribed by the Rules **[*460]** (FRAP 4(a)(5) or 4(a)(6)) have been satisfied." Notice and Motion at 2. Lowry continued, "By the Judge not designating and finding good cause of [sic] excusable neglect pursuant to Motion, this does not confirm [sic] jurisdiction on the Court of Appeals." Id. at 4.

**February 12, 1999** The District Court vacated its order granting leave to file the untimely notice of appeal. The court noted that it "incorrectly treated [Lowry's] notice of appeal as a motion for an extension of time"; this was error, the court said, because the notice of appeal was unaccompanied by a motion and a showing of excusable neglect. Order at 3. The court also vacated its order denying as moot **[**7]** Lowry's Rule 4(a)(5) motion. The court gave MDC ten days to respond to the revived 4(a)(5) motion.

Lowry also had argued in her 60(b) motion that she was entitled to relief under Federal Rule of Appellate Procedure 4(a)(6) because she did not receive written notice of the entry of judgment. The District Court declined to address that argument, noting that it was not raised in the original 4(a)(5) motion for an extension of time to file a notice of appeal. (The court also denied Lowry's later motion to reconsider that ruling.)

**March 8, 1999** The District Court granted Lowry's Rule 4(a)(5) motion, finding the requisite excusable neglect. The court noted that the reasons for the delay were "within Lowry's counsel's control, [but] do not indicate bad faith so much as carelessness in keeping up with filing deadlines." Order at 5. The court put Lowry on notice that she had ten days to file a new notice of appeal.
**March 15, 1999** Lowry timely filed her second notice of appeal from the original summary judgment granted to MDC.

**March 29, 1999** MDC filed with this Court yet another motion to dismiss the appeal for lack of jurisdiction, which we ordered taken with [**8] the case. As we have said, MDC also raises the jurisdictional issue in a cross appeal from the District Court's decision to grant Lowry's motion for Rule 60(b) relief.

II.

We begin with the question of whether the District Court properly granted Lowry's motion filed under Federal Rule of Civil Procedure 60(b). *HN4*Rule 60(b) provides, as relevant here, that a district "court may relieve a party ... from a final judgment, order, or proceeding for ... mistake." The motion must be filed, however, "within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken." The District Court determined that it could properly consider Lowry's 60(b) motion filed nearly six months after the orders in question were entered, and then held that the court was mistaken in granting "leave to file" the untimely notice of appeal without a motion from Lowry. The court also held that it erred in denying Lowry's original 4(a)(5) motion as moot, a decision the court made because it had accepted for filing (albeit mistakenly) the defective notice of appeal two days before the 4(a)(5) motion was filed. *HN5*A court's decision that a movant has shown grounds warranting [**9] 60(b) relief is reviewed for abuse of discretion, but "we review the district court's power to entertain [a motion for] relief" in the first instance de novo. Spinar v. South Dakota Bd. of Regents, 796 F.2d 1060, 1062 (8th Cir. 1986).

At issue here is not Rule 60(b)(1) mistake by a party, but mistake by the court. n3 *HN6*It remains the law in this Circuit [*461] that "relief under Rule 60(b)(1) for judicial error other than for judicial inadvertence" is not available. Fox v. Brewer, 620 F.2d 177, 180 (8th Cir. 1980). Assuming without deciding that the mistakes alleged were the result of "judicial inadvertence," the District Court nevertheless should not have considered Lowry's motion for Rule 60(b) relief because such relief was not timely sought, notwithstanding that the motion was made within the one year specified by the Rule. *HN7*A 60(b) motion also must be brought within a "reasonable time" and, "[] to prevent its use as a substitute for appeal, we have required a Rule 60(b) motion alleging judicial inadvertence to be made within the time period allowed for appeal," that is, thirty days from the entry of judgment. Id. This certainly makes sense in this [**10] case, as in other cases alleging mistake by the court, where all relevant facts evidencing the court's errors were known as soon as the orders were entered. The argument raised in Lowry's 60(b) motion presents a theory identical to the theory that, in substance, would have formed the basis of Lowry's appeal from the denial of the Rule 4(a)(5) motion.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 MDC misapprehends the District Court's ruling that the court itself, and not Lowry or her counsel, made the Rule 60(b)(1) mistakes, a confusion that creates a blurring of arguments between the two rules at issue in this case. See Brief of McDonnell Douglas Corp. at 26 *HN8* ("[] Miscounting cannot be considered the type of 'exceptional circumstances' which this Court has deemed necessary to revisit a final judgment."); id. at 27 ("[] Plaintiff's untimely notice of appeal was attributable solely to her counsel's miscalculation, *HN9* which does not constitute 'excusable neglect' under Rule 4(a)(5) or 'mistake' under Rule 60(b)."). Had the District Court in fact granted Lowry's 60(b) motion to vacate the judgment based on her counsel's mistake in calculating the time for filing her notice of appeal, we likely would agree with MDC that this is an improper use of Rule 60(b). But that is not what happened here.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*11]**

Although the consequences of enforcing the rule in Fox might seem harsh in this situation, the result cannot be characterized as unfair. It is clear both from Lowry's 4(a)(5) motion and from her later 60(b) motion that she was fully aware that Rule 4(a)(5) requires a showing of excusable neglect before an extension for filing a notice of appeal can be granted. She even submitted with her 4(a)(5) motion a proposed order purporting to make such a finding. Lowry filed her motion two days **after** the court granted her the very relief that the motion now sought under Rule 4(a)(5)--an extension of time to file her notice of appeal. By filing that motion, Lowry conceded that the court's sua sponte granting of "leave to file" two days earlier was insufficient under the Federal Rules of Appellate Procedure to remedy the defective notice of appeal. n4 Lowry got her extension, but by a procedure that was in violation of the strictly enforced jurisdictional requirements of Rule 4. Months later, when she filed her 60(b) motion, it was not because she had suddenly learned of facts that were outside the record when the asserted mistakes were made; she was on notice as soon as her 4(a)(5) **[\*\*12]** motion was denied that it was a mistake. Thus she was not relieved of her obligation to promptly challenge the court's failure to enunciate a finding of excusable neglect so as to satisfy this Court's jurisdictional requirements. It was Lowry's responsibility to act diligently in these circumstances, either by asking the District Court to reconsider its ruling or by appealing from that ruling, to see that a 4(a)(5) extension was properly granted and to protect her right to have this Court consider her appeal on the merits. No one prevented her, actually or effectively, from exercising her rights, nor did anyone or anything lull her into thinking the court's actions were beyond challenge.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n4 *HN10* The practice of accepting an untimely notice of appeal for filing without a motion and a showing of excusable neglect was rendered invalid in 1979 when Federal Rule of Appellate Procedure 4 was amended to require a motion. See Campbell v. White, 721 F.2d 644, 645-46 (8th Cir. 1983) ("We think it clear that the 1979 amendment requires the filing of a motion and that the notice of appeal received after the date for filing notices may not be considered a motion for extension.").


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*13]**

Additionally, it should be remembered that Lowry sought to reopen a post-judgment procedural decision, **not** a decision that precluded adjudication on the merits of the case. That is, Lowry "received a ruling on the merits of [her] claim" from **[\*462]** the District Court. MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 756 (8th Cir. 1996) (noting that court should "balance the policy favoring finality in judgments against the competing policy of

granting parties a hearing on the merits of their claims" in case where Rule 60(b) was invoked to set aside dismissal that was entered in anticipation of settlement that was never finalized). Our decision does not deprive Lowry of her day in court on the substance of her complaint.

The 60(b) motion was, in fact if not in form, Lowry's attempt to be relieved from our conclusion in the first appeal in this case that we had no jurisdiction to hear the appeal. Lowry had no quarrel with the District Court's erroneous procedural rulings until this Court decided it was without jurisdiction; now it is too late. Because Lowry's 60(b) motion was not filed within the thirty days permitted for filing a notice of appeal from the denial **[\*\*14]** of the 4(a)(5) motion, the District Court erred in considering the 60(b) motion.

III.

Even if the Rule 60(b) motion had been timely filed and properly granted so as to give the District Court the authority to revisit the Rule 4(a)(5) motion, we conclude that the District Court abused its discretion in finding that Lowry had shown excusable neglect. See Metropolitan Fed. Bank v. W.R. Grace & Co., 999 F.2d 1257, 1259 (8th Cir. 1993) (standard of review).

*HN11*The time limits detailed in Federal Rule of Appellate Procedure 4 for filing a notice of appeal in the district court are "mandatory and jurisdictional." Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 54 L. Ed. 2d 521, 98 S. Ct. 556 (1978) (quoting United States v. Robinson, 361 U.S. 220, 229, 4 L. Ed. 2d 259, 80 S. Ct. 282 (1960)). Under the terms of the rule, as relevant here, the district court may extend the time for filing a notice of appeal upon motion by a party made within thirty days of the filing deadline and with a showing of excusable neglect. n5 See Fed. R. App. P. 4(a)(5). The question here is whether Lowry can demonstrate excusable neglect. **[\*\*15]**

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Lowry's motion was styled "Ex Parte Motion by Plaintiff to File Notice of Appeal per Federal Rule of Appellant [sic] Procedure 4(a)(5)." *HN12*A party may file an ex parte 4(a)(5) motion to extend the time for filing a notice of appeal only if the motion is filed within the time permitted for filing the notice of appeal in the first place, ordinarily (and in this case) thirty days from the date judgment is entered. See Hable v. Pairolero, 915 F.2d 394, 395 (8th Cir. 1990). Lowry's motion was not filed within that period, but it was not ex parte either, as it was served on opposing counsel. Also, to the extent Lowry may be proposing that we might apply the less stringent "good cause" standard referred to in Rule 4(a)(5) (she mentions it throughout her brief, usually in conjunction with the "excusable neglect" standard), we must reject that suggestion. *HN13*The good cause standard is applicable only when the party seeking an extension files her 4(a)(5) motion within the thirty-day period allowed for filing a timely notice of appeal, that is, when she is seeking permission to file late rather than forgiveness for having filed late. See Bartunek v. Bubak, 941 F.2d 726, 728 (8th Cir. 1991).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*16]**

In Fink v. Union Central Life Insurance Co., [65 F.3d 722] *HN14*this Court adopted the "more flexible analysis of the excusable neglect standard" set forth in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993), for application to Rule 4(a)(5) cases. Fink, 65 F.3d 722, 724 (8th Cir. 1995). In Pioneer, the Supreme Court "concluded that the determination [of whether neglect is excusable] is at bottom an equitable one, taking account of all relevant

circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. The Court found those circumstances to include "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.

[*463] For some reason, MDC opted not to discuss all four of the Pioneer factors, or even to discuss the Pioneer standard at all in its brief, and mentions the case only fleetingly in its motion to dismiss. Instead, MDC's argument [**17] focuses only on the reasons that Lowry gave for failing to file a timely notice of appeal. We will assume, then, that MDC is not claiming that any prejudice will result to the company from granting Lowry's 4(a)(5) motion. Indeed, we discern none, except that final resolution of the case has been postponed. As for the second factor, the delay of one week in filing the original 4(a)(5) motion was minimal. But then it seems that the delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, since the ᴴᴺ¹⁵⚓Rule requires a 4(a) (5) motion to be filed within thirty days of the last day for filing a timely notice of appeal. See, e. g., Prizevoits v. Indiana Bell Tel. Co., 76 F.3d 132, 134 (7th Cir. 1996) ᴴᴺ¹⁶⚓("We do not think it can make a difference that no harm to the appellee has been shown. There is unlikely ever to be harm in the Rule 4(a)(5) setting, because the neglectful appellant has only 30 days after the expiration of his time for appealing in which to request relief."). The delay is more significant, of course, if we count the months caused by the late filing (and subsequent granting) of Lowry's 60(b) [**18] motion. But even taking that delay into account, there is no apparent "impact on judicial proceedings." And there is no record evidence that Lowry did not act in good faith, as that term is generally understood (although we are a bit troubled by the sometimes inconsistent and shifting excuses for the failure to timely file the notice of appeal that appear throughout the record in this case).

This brings us to the fourth factor: Lowry's reason for missing the filing deadline. We think this is key to the analysis. ᴴᴺ¹⁷⚓The four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry. We acknowledge, of course, that the Supreme Court has said that neglect need not be "caused by circumstances beyond the control of the movant" to be excusable, Pioneer, 507 U.S. at 392, and that a finding of sufficient innocence on the part of the movant is not a condition precedent to our obligation to consider the other equitable factors, see id. at 395 n. 14. [**19] But at the end of the day, the focus must be upon the nature of the neglect. Therefore we must examine carefully the reasons Lowry gave for missing the deadline.

In the original 4(a)(5) "Ex Parte Motion" (filed July 31, 1998), Lowry said that counsel "calculated incorrectly the thirty (30) days, believing that the thirty (30) days did not count the original June 24, 1998 and that thirty (30) days would fall on Saturday July 25, 1998." In fact counsel was correct about the first part; the thirty-day window did **not** begin on the date of entry, June 24, 1998, but on the next day. See Fed. R. App. P. 26(a)(1). Counting thirty days beginning with June 25, 1998, however, still makes the last day for filing a timely notice of appeal July 24, 1998, not July 25. Lowry also claimed in the "Ex Parte Motion" that "excusable neglect is shown by Plaintiff's counsel's miscalculation of the time due to the weekend time and the calculations thereto." We are not certain exactly what that means, as ᴴᴺ¹⁸⚓the rules clearly provide that intermediate weekends are to be counted in the thirty-day computation. See Fed. R. App. P. 26(a)(2). (If the last day for filing, however, fails on a weekend [**20] or a legal holiday, that day is not included in the thirty days allowed for filing. See id. 26(a)(3)). In the later-filed "Notice and Motion to Relieve Plaintiffs [sic] from Denial as Moot Motion to Grant Leave to Extend Time for Filing Notice of Appeal (FRCP 60, FRAP 4(a)(5) and 4(a)(6))" (filed January 19, 1999), Lowry further offered that "[] any miscalculations on the time was [sic] also [*464] compounded by the weekend and the

number of days in the month of June." As we have said, it is unclear (and unexplained) why "the weekend" provides an excuse. As for the number of days in June, if Lowry is suggesting that June being a thirty-day month, rather than a thirty-one-day month, threw off his calculations, that argument is specious. If June had thirty-one days instead of thirty, the notice of appeal would have been due one day **sooner**.

What we have, then, is garden-variety attorney inattention. [HN19]Although neglect no longer needs to be beyond a party's control to be deemed excusable, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." Pioneer, 507 U.S. at 392. Notwithstanding the "flexible" **[\*\*21]** Pioneer standard, experienced counsel's misapplication of clear and unambiguous procedural rules cannot excuse his failure to file a timely notice of appeal. "Here the rule is crystal clear, the error egregious, the excuses so thin as to leave the lapse not only unexcused but inexplicable." Prizevoits, 76 F.3d at 134. If we were to apply the excusable neglect standard to require that we deem Lowry's neglect excusable in this case, it is hard to fathom the kind of neglect that we would **not** deem excusable. See id.; see also Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 998 (11th Cir. 1997) [HN20]("That the four-part Pioneer standard for determining excusable neglect applies does not change existing law that a lawyer's misunderstanding of clear law cannot constitute excusable neglect. If it could, almost every appellant's lawyer would plead his own inability to understand the law when he fails to comply with a deadline. We do not believe that the [Supreme] Court intended a practice that would require courts to be that lenient about disobedience to plain law."). The District Court abused its discretion in holding that Lowry demonstrated **[\*\*22]** excusable neglect under Rule 4(a)(5).

We make short work of Lowry's argument that she was entitled to relief under Federal Rule of Appellate Procedure 4(a)(6) because she did not receive notice from the court or from a party of the entry of judgment. The District Court declined to address the issue because it was not properly raised in her original 4(a)(5) motion, and we see no error in that conclusion. Moreover, even if we were to consider the question and to accept the assertion that Lowry did not receive written notice of the entry of judgment, she acknowledged in her 4(a)(5) motion that "counsel was informed that [judgment] was entered on June 24, 1998 and was attempting to proceed thereto." Thus Lowry had actual notice of the entry of judgment, if in fact she did not receive written notice. Further, it was Lowry's responsibility to check the docket for entry of judgment, particularly when she knew on June 19, 1998, that the District Court had signed an order granting summary judgment to MDC. See Zimmer St. Louis, Inc. v. Zimmer Co., 32 F.3d 357, 361 (8th Cir. 1994).

IV.

In sum, then, we hold that the District Court was without authority to consider Lowry's **[\*\*23]** 60(b) motion to "undo" the court's denial of her original 4(a)(5) motion. In any case, Lowry cannot demonstrate that her neglect was "excusable" so as to entitle her to an extension of time to file her notice of appeal. The timely filing of a notice of appeal being mandatory and jurisdictional, we dismiss the appeal and decline to address the merits in what could only be an advisory opinion. See id.

Service:   Get by LEXSEE®
Citation:  211 F.3d 457,at 464
View:      Full
Date/Time: Monday, January 22, 2007 - 12:16 PM EST

* Signal Legend:
  ● - Warning: Negative treatment is indicated
  [Q] - Questioned: Validity questioned by citing refs

Get a Document - by Citation - 211 F.3d 457

⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®

About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.