## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CALL CENTER TECHNOLOGIES, | : | CIVIL ACTION NO. 3:03CV1036 (DJS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GRAND ADVENTURES TOUR & | : | |
| TRAVEL PUBLISHING CORPORATION, | : | |
| INTERLINE TRAVEL & TOUR, INC., | : | |
| Defendants. | : | NOVEMBER 2, 2007 |
| | : | |

### MEMORANDUM OF LAW
### IN SUPPORT OF DEFENDANT INTERLINE TRAVEL & TOUR INC.'S
### MOTION FOR SUMMARY JUDGMENT

Defendant Interline Travel & Tour, Inc. ("Interline"), submits the foregoing Memorandum of Law in support of its Motion for Summary Judgment.

## I.    STATEMENT OF FACTS

### A.    Procedural History

This is a purported breach of contract and successor liability case brought by the plaintiff, Call Center Technologies ("CCT"), against Grand Adventures Tour & Travel Publishing Corporation ("GATT") and Interline.

1

This case first began in August 2002.   CCT commenced an action in Connecticut Superior Court against GATT. *See Complaint dated August 27, 2002* attached hereto as **Exhibit 1**.   In its initial Complaint, CCT alleged that GATT was a "successor at interest of Grand Adventures Tour & Travel, Inc. ["GATTInc."]" and that GATT, as successor to GATTInc., was indebted to the plaintiff in the amount of $125,090.00 as a result of breaching a Customer Agreement dated June 16, 1998 to which CCT and GATTInc., not GATT, were parties. *See Complaint* at ¶¶ 1, 3.

When plaintiff couldn't (and still can't) find any proof to establish that GATT was, in fact, a "successor at interest of" GATTInc., plaintiff changed course and filed a Motion to Cite In Party Defendant seeking to add Interline as a Defendant. *See Motion to Cite In Party Defendant dated March 31, 2003* attached hereto as **Exhibit 2**.   This motion resulted in the plaintiff filing an Amended Complaint adding Interline as a party defendant under a claim that Interline was "the alter ego and successor at interest" to GATT. *See Amended Complaint dated May 12, 2003* attached hereto as **Exhibit 3**.   The case was removed to federal court pursuant to 28 U.S.C. §1332(a).   On July 28, 2003, the plaintiff moved a second time to amend its complaint. *See Second Amended Complaint dated July 28, 2003* attached hereto as **Exhibit 4**.

2

**B.    Plaintiff's Claims**

The plaintiff amended its complaint for yet a third time on February 15, 2006.  The Third Amended Complaint, while convoluted, rambling and confusing, contains two counts.  The First Count is directed to defendant GATT.   The plaintiff alleges that pursuant to a Customer Agreement ("Agreement"), GATT purchased "certain telecommunications goods called an Aspect Call Center".  *Third Amended Complaint dated February 16, 2006,* ¶¶ 6, 14 attached hereto as **Exhibit 5**.  GATT is not a party to the Customer Agreement, but another incorporated entity with a similar name, Grand Adventures Tour & Travel, Inc. ("GATTInc."), is.  Plaintiff, in this <u>fourth</u> pleading, purports to bridge the gap between the two entities by alleging that GATT was "doing business as" GATTInc.", even though this allegation contradicts previous allegations and has not been supported by any evidence in this case. *Third Amended Complaint,* ¶ 4.

CCT claims that GATT ordered "additional parts" for the phone system in February 1999 and CCT supplied said parts. *Id.* at ¶ 30.  CCT claims that GATT did not return "the Aspect Call Center or additional parts" or pay for them. *Id.* at ¶¶ 32-34.  CCT alleges that the value of the Aspect Call Center and the additional parts is $136,090.00 and $13,990.00, respectively. *Id.* at ¶ 32.  The plaintiff claims that although demand for payment has been made, GATT has paid the sum of $35,000.00 but has refused and neglected to pay the balance. *Id.* at ¶¶ 32-33.

3

The Second Count is directed to Interline and labeled a "Successor Liability" claim. CCT incorporates by reference the allegations of the First Count against GATT (*Id.* at ¶¶ 1-99) and claims that Interline is "the mere continuation of GATT" and therefore liable for GATT's alleged debt under the Agreement. *Id.* at ¶¶ 100-109.

The plaintiff also alleges, for the first time, a claim which purports to be a successor liability claim based upon an alleged fraudulent "foreclosure auction". The plaintiff's Third Amended Complaint, however, contains no allegations to indicate that the foreclosure sale was fraudulent. Instead, the plaintiff asserts confusing, irrelevant allegations that prior to the 2001 foreclosure sale, GATT failed to disclose certain information to the Securities and Exchange Commission ("SEC"), the public, GATT's "shareholders or creditors" and that such conduct was "improper and fraudulent and lacked the bona-fides of an arms length transaction." *Third Amended Complaint dated February 15, 2006* at ¶101. The plaintiff also claims that GATT's granting of security interests to two individuals, Duane Boyd ("Boyd") and Lawrence Fleischman ("Fleischman"), in May and July 2001 without "itemiz[ing] the assets being pledged" "tainted" the security interests with "self-dealing, fraud and lack[ed] the bona-fides of an arms length transaction." *Id.* at ¶103. The plaintiff, although asserting injury on behalf of GATT shareholders, is not, and never has been, a GATT shareholder. *Id.* at ¶¶ 101, 105;

4

*Plaintiff's Responses to Interline's Interrogatories and Requests for Production dated August 3, 2006 at Interrog. #3* attached hereto as **Exhibit 6**.

Interline denies the substantive allegations of the plaintiff's Third Amended Complaint and has asserted certain affirmative defenses, including lack of personal jurisdiction and standing, setoff and recoupment, and the doctrine of unclean hands. *See Interline's Answer and Affirmative Defenses dated May 19, 2006* attached hereto as **Exhibit 7**.

**C.    The Undisputed Facts**

**1.    The Plaintiff's Contract With GATTInc.**

On June 16, 1998, CCT and an entity identified as Grand Adventures Tour & Travel, Inc. ("GATTInc.") entered into a Customer Agreement ("Agreement") for the sale and purchase of, among other things, an "Aspect Call Center" ("Equipment"). *Customer Agreement dated June 16, 1998* attached hereto as **Exhibit 8**. The Agreement is signed by Dean Vlahos as President of CCT and Matthew O'Hayer as C.E.O. of GATTInc. *Id.* At the time the plaintiff entered into this Agreement, the plaintiff was not an authorized distributor of Aspect products. *Deposition of Dean Vlahos dated March 29, 2005 ("Vlahos Dep.")* attached hereto as **Exhibit 9** at pp. 71:21:24.

The purchase price for the Equipment was $130,090 and any costs to install the Equipment would be in addition to the purchase price. *Customer Agreement at ¶¶ 1-2.* CCT

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 •TEL: (860) 676-3123 •FAX: (860) 606-9797

agreed that it would use its own personnel to install the Equipment and provide training, but reserved the right to subcontract with third parties to complete these tasks. *Id.* at ¶¶ 10-12. GATTInc. did, however, have the ability to request that the installation and training be provided by a third party of its own choosing, but such request had to be approved by CCT. *Id.* at ¶ 12.

The plaintiff has alleged that "GATT ordered additional parts from plaintiff in February 1999 consisting of two (2) Aspect Teleset Interface Cards, part number 4061, and three (3) Aspect Teleset Interface Cables, which plaintiff supplied to GATT, shipping them from its Brookfield, Connecticut offices." *Third Amended Complaint*, at ¶30. The plaintiff, however, admits that it has no admissible evidence to establish that the Aspect Teleset Interface Cards, which it values at $13,990, were ever shipped to GATTInc. or GATT. *Vlahos Dep.* at pp. 86:22-87:7; 90:9-14.

The Agreement provides that GATTInc. granted to CCT a security interest in the Equipment to secure payment in the purchase price, installation charges, freight and taxes related to the Equipment. *Customer Agreement* at ¶ 13. GATTInc. agreed to execute "such documents as CCT shall reasonably require protecting its security interest." *Id.* CCT, however, admits that it did not file UCC statements relating to the Equipment or "additional parts". *Vlahos Dep.* at pp. 136:15-20.; *Plaintiff's Responses to Interline's Requests for Admission of Statements and Documents ("Requests to Admit")* at p. 3. Plaintiff has also admitted that it was never a secured

6

creditor of GATT and has never had an enforceable lien on GATT's assets. *Plaintiff's Responses to Interline's Requests for Admission of Statements and Documents ("Requests to Admit") dated August 3, 2006* at pp. 3-4, 17, #3-7, 54 attached hereto as **Exhibit 10**. In addition, Plaintiff has produced no evidence to show that it ever made any demands on GATT to pay it for the goods it allegedly supplied to GATT nor provided evidence that it made any efforts to repossess the equipment that it allegedly sold to GATT. *Vlahos Dep.* at pp. 137:25-140:21.

CCT warranted, among other things, that for a period of 24 months from the date of delivery, that the Equipment would be free from material defects under normal conditions and use. *Agreement* at ¶ 14(a). CCT also promised to replace any Equipment suspected of defect within 24 hours of being notified of the defect. *Id.* CCT also promised that it would "maintain the Equipment [provided to GATTInc.] under the Agreement for year 2000 compliance" and agreed to hold GATTInc. "harmless of and from any loss incurred by [GATTInc.] as a result of any failure of the Equipment to maintain year 2000 compliance." *Id.* at ¶ 14(b). CCT further agreed that it would reimburse GATTInc. for any cost actually incurred by GATTInc. in shipping, installing and replacing any of the Equipment determined to be defective. *Id.* at ¶ 14(c). The Agreement states that it will be governed and enforceable under Connecticut law. *Id.* at ¶ 18.

7

2.      **Grand Adventures Tour & Travel, Inc.**

GATTInc., the named party to the Agreement, is not a named party to this lawsuit.  To date, the plaintiff has failed to present any admissible evidence to support its allegation that GATTInc. and GATT are the same entity and/or that GATT "did business" under the name of GATTInc.

3.      **Grand Adventures Tour & Travel Publishing Corporation**

GATT, an Oregon corporation, was incorporated on or about April 3, 1987. *Secretary of State Records for GATT* attached hereto as **Exhibit 11**.  GATT was a publicly-traded company on the NASDAQ with over 1000 shareholders. *Deposition of Joseph Juba dated April 13, 2005 ("Juba Dep.")* at p. 17:11-20; 46:18-21 attached hereto as **Exhibit 12**.  The plaintiff, however, was never a GATT shareholder. *Requests to Admit* at p. 3; *August 2006 Discovery Responses* at p. 7.

A Securities and Exchange Commission ("SEC") filing dated November 21, 2000 states that GATT's management consisted of the following individuals: Matthew O'Hayer, Chairman of the Board/Chief Executive Officer; Robert Sandner, Director; Robert G. Rader, Director; and Duane K. Boyd, Director. *See SEC Form 10-QSB Quarterly Report for GATT for the Period Ending Sept. 30, 2000* attached hereto *as* **Exhibit 13** at p. 10.

8

GATT's business consisted of proving travel services to: 1) "interliners" (active employees and retirees of the airline industry) and their families and friends; 2) travel agents; 3) airline employees; and 4) newlyweds. *Juba Dep.* at pp. 24:19-25:21; *Deposition of In Churl Yo dated April 13, 2005 ("Yo Dep.")* at p. 54:11-17 attached as **Exhibit 14**. GATT also promoted sales through travel publications entitled *Interline Adventures, Destination Weddings & Honeymoons* and *Interline Update. Yo Dep.* at p. 9:13-20. The company also promoted travel sales over the Internet through its websites, among them www.perx.com. *Juba Dep.* at p. 22:-23:3. GATT also provided wedding planning and consulting to newlyweds and, through a subsidiary (GAAT-UK), provided customized safari tours. *Id.* at p. 25:5-8.

In April 2001, GATT was experiencing financial difficulty. *Boyd Dep.* at pp. 12:21-25, 13:1. In an effort to improve GATT's financial situation, GATT retained Boyd and Lawrence Fleischman ("Fleischman") of Capital Vision Group, Inc. as consultants to work with GATT's management to help GATT with their financial problems. *Deposition of Duane Boyd dated April 14, 2005 ("Boyd Dep.")* attached as **Exhibit 15** at p. 7:4-8; *Boyd and Fleischman Consulting Agreements* attached as **Exhibits 16 and 17**. These engagements, which were disclosed to the public, reveal that Boyd and Fleischman were being engaged with no immediate compensation but rather would receive future compensation in the form of cash, or, at GATT's sole option, common stock based upon the price of that common stock. *See GATT SEC Form 8-K dated June*

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

*15, 2001 attached* as **Exhibit 18** at p. 1. As part of their engagement, Boyd and Fleischman

worked with GATT's management to raise cash to operate GATT's business. *Juba Dep.* at p.

154:16-155:7. Shortly after Boyd was retained by GATT, he resigned as a director from GATT.

*Boyd Dep.* at p. 7:13-20; 8:1-6. Fleischman was never a director of GATT. *Id.* at p. 9:1-2.

On June 2, 2001 Joseph Juba ("Juba"), GATT's President and Chief Operating Officer

was appointed to GATT's Board of Directors while, at the same time, Boyd and Rader officially

resigned from their positions on the Board, Audit Committee and Compensation Committee. *See*

*GATT SEC Form 8-K dated June 15, 2001* at p. 1. On the same date, Matthew O'Hayer resigned

his position as Chief Executive Officer but remained Chairman of GATT's Board of Directors.

*Id.* Boyd was a GATT shareholder and, for a time, a GATT director, but was never an officer or

employee of GATT. *Boyd Dep.* at pp. 5:20-21; 6:9-12, 7:10-12; *Juba Dep.* at p. 17:24-25.

In addition to their unpaid efforts to help GATT, Boyd and Fleischman personally

invested their money in GATT in the form of bridge financing to help GATT turn a profit. *Boyd*

*Dep.* at pp. 19:13-22; 35:6-8; *Juba Dep.* at p. 142:12-14. On May 24, 2001, Boyd extended a

$90,000 line of credit to GATT in exchange for a security interest in 65% of the issued and

outstanding capital stock of Grand Adventures Tour & Travel (UK) Limited ("GATT-UK"), a

wholly owned subsidiary of GATT, subject to a parallel security interest held by Fleischman.

*Affidavit of Timothy Taylor, Esq. ("Taylor Aff.") dated July 27, 2005* attached hereto as **Exhibit**

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

**19** at Exhibit B[1]; *SEC Form 8-K dated June 15, 2001* at p. 2.  GATT and Boyd executed a Promissory Note formalizing this agreement. *Taylor Aff.* at Exhibit B.  The Note was signed by Juba, President and COO of GATT, and Duane Boyd. *Id.*  On May 24, 2001, GATT entered into a similar Promissory Note with Fleischman for a line of credit loan in the amount of $80,000. *Id.*

On July 18, 2001, Boyd and Fleischman each loaned GATT $100,000 in exchange for a security interest in all of GATT's assets or other property including accounts, inventory, equipment, investment property, choses in action, general intangibles, real estate as well as 65% of the issued and outstanding capital stock of GATT-UK. *Id.* at Exhibit A.   The rights of the parties were exercisable under the Texas UCC. *Id.*  On that same day, GATT (through Juba) executed Promissory Notes with Boyd and Fleischman promising to repay these loans. *Id.* at Exhibit B.  The Security Agreement executed that same day secured all debt including the Boyd Line of Credit Note dated May 24, 2001, the Fleischman Line of Credit Note dated May 24, 2001, the July Boyd Note and the July Fleischman Note. *Id.* at Exhibit A.  On August 8, 2001, GATT filed financing statements for Boyd and Fleischman with the Travis County Clerk. *See Financing Statements* attached hereto as **Exhibit 20**.

Efforts by Boyd and Flesichman to help GATT turn a profit, although initially successful, were ultimately not successful. *Boyd Dep.* at p. 52:3-7.  By the summer of 2001, GATT was

---

[1] The original affidavit and accompanying exhibit was filed with the Court on January 4, 2006 with Interline's first Motion for Summary Judgment

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

operating at a loss and had few tangible assets. *Juba Dep.* at pp. 71:7-9, 72:4-7. GATT's financial problems resulted in the layoffs of employees and the elimination of some of their travel publications (*Interline Adventures*). *Yo Dep.* at pp. 28:15-29:8, 104:19-20:4; *Juba Dep.* at p. 118:16-17. GATT's problems were further compounded by the terrorist attacks of September 11, 2001 which triggered further layoffs and a reduction in the number of travelers seeking GATT's services. *Yo Dep.* at p. 62:12-14; *Juba Dep.* at pp. 23:12-18, 26:9-16. By September 27, 2001, GATT-UK's business was shut down and GATT could no longer process credit card transactions. *Juba Dep.* at pp. 80:9-10, 169:16-21. Following the demise of GATT-UK, Boyd and Fleischman resigned as GATT consultants. *Boyd Dep.* at pp. 50-7-8, 190:12-20.

GATT took several steps to avoid foreclosure by its secured creditors. GATT's management attempted to sell the company post-September 11th, but those efforts were not successful. *Juba Dep.* at pp. 80:21-81:2. In addition, Matthew O'Hayer worked to obtain federal airline bail-out money and short-term loans to avert foreclosure on GATT's assets. *Id.* at pp. 81:4-10, 171:6-11.

On October 9, 2001, the law firm of Jackson Walker LLP, representing Boyd and Fleischman, sent GATT, via certified mail, a Notice of Intent to Accelerate and Demand Payment. *Taylor Aff.* at ¶ 2, Exhibits C & D. The letter indicated that GATT had defaulted on the May 2001 $90,000 and $80,000 Line of Credit loans and the July 2001 $100,000 Loans. *Id.*

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

*at Exhibits C & D.*  GATT was given until October 19, 2001 to pay the full amounts due and

owing under the loans, namely the $140,000 that Boyd and Fleischman advanced to GATT

pursuant to the lines of credit and the $200,000 that Boyd and Fleischman advanced to GATT

via term loans, a total of $340,000. *Id.*  On October 19, 2001, Boyd and Fleischman executed a

Transfer and Assignment of Notes and Liens assigning their rights in the May $90,000 and

$80,000 Lines of Credit and their July $100,000 term loans to Interline Travel & Tour, Inc. *Id.* at

¶ 3, Exhibits E and F.

On October 19, 2001, Jackson Walker LLP, representing Interline Travel and Tour, Inc.

as holder of the four promissory notes described above and secured by the July 18, 2001 Security

Agreement, sent GATT a Notice of Intent to Accelerate and Demand Payment via certified mail.

*Id.* at ¶ 4, *Exhibit G.*  GATT was given until October 29, 2001 to pay the full amounts due and

owing under the loans. *Id.*  GATT did not repay its loans from Boyd and Fleischman that were

assigned to Interline. *Boyd Dep.* at pp. 35:6-12; 36:1-3.

On October 19, 2001, Interline, through its attorneys, sent notices via certified mail to

GATT's secured creditors, Wells Fargo Bank Texas, NA (who held a first lien on GATT's

assets), IBM Credit Corp. and Dell Financial Services, LP, and advised of its intent to conduct a

public sale to dispose of GATT's collateral to satisfy GATT's indebtedness to Interline. *Taylor*

*Aff.* at ¶ 7, Exhibits J, K, L.  The sale was scheduled for 11 a.m. on October 30, 2001. *Taylor Aff.*

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

at Exhibits J, K, L. Between October 24, 2001 and October 28, 2001, Interline published a paid

notice in the *Austin American Statesman* advising the public of the scheduled foreclosure sale.

*Id.* at Exhibit H.

On October 30, 2001, GATT's collateral was sold at a public foreclosure sale conducted

at the Travis County Courthouse. *Id.* at ¶11. The purchaser of the assets was Interline Travel and

Tour, Inc. and the bid price was $340,000, the outstanding amount of the liens that Interline

purchased from Boyd and Fleischman. *Id.* at ¶12. There were no other bidders at the sale and

Interline purchased GATT's assets subject to a first lien upon GATT's assets held by Wells

Fargo. *Id. at* ¶8, Exhibit M.

On the day of the sale, Wells Fargo Bank, in accordance with Article 9 of the UCC,

executed a Transfer and Assignment of Debt Claims and Security Interests, and transferred and

assigned its secured debt and liens to Boyd. *Id.* The transfer was made without recourse and

without representations or warranties. *Id.* On November 1, 2001, Boyd executed a similar

Transfer and Assignment of Debt Claims and Security Interests and transferred and assigned the

acquired Wells Fargo lien to DBMK Partners Ltd (50%) and to Fleischmann (50%). *See Transfer*

*and Assignment of Debt, Claims and Security Interests* attached hereto as **Exhibit 21**. By letter

dated November 1, 2001, Jackson Walker LLP sent Wells Fargo two checks in the amount of

$52,500 executed by Boyd on behalf of DBMK Partners Ltd. and Fleischman on behalf of

14

himself. *Id*. These checks represent the purchase of the Wells Fargo lien on GATT's assets at a price of $105,000. *Id*.

### 4.    Interline Travel & Tour, Inc.

Interline Travel & Tour, Inc. d/b/a Interline Vacations is a privately-held company that was incorporated in Texas on October 15, 2001. *Boyd Dep*. at p. 32:12-14; *Texas Secretary of State Records for Interline* attached hereto as **Exhibit 22**. There is no majority shareholder of this business. *Boyd Dep*. at pp. 103:17-25, 104:1. At its inception, Interline's management consisted of Boyd (President) and Lawrence K. Fleischman (Chairman and Chief Executive Officer) who provided the initial capital for the business and owned all of Interline's company stock. *Juba Dep*. at p. 44:16-23; *Boyd Dep*. pp. 124:7-14, 194:17-22.

Interline's management, presently consists of the following officers: Duane Boyd, President; Lawrence K. Fleischman, Chairman and Chief Executive Officer; Joseph Juba, Executive Vice President; Fernando Cruz Silva, Senior Vice President, Patricia Macchi, Vice President. *Interline's Supplemental Responses to Plaintiff's Interrogatories dated May 4, 2005("Interline's May Discovery Responses")* attached hereto as **Exhibit 23** at Interrog. 4; *Boyd Dep*. at pp. 96:16-17; *Affidavit of Duane Boyd dated June 12, 2003* attached hereto as **Exhibit**

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

**24**[2]; *Juba Dep.* at pp. 42:25-43:1.  Juba, Cruz and Silva were not part of Interline's management

until 2002. *Boyd Dep.* at p. 124:10-21.  Interline has approximately 21 shareholders and 52

employees. *Interline's May Discovery Responses* at Interrogs. 4, 24.

Interline is in the business of providing travel services (i.e. discounted cruise/resort/hotel

vacations) to: 1) "interliners" (active and retired airline employees) and their parents, other

family members and friends; 2) active and retired employees of FedEx; 3) active and retired

military employees; 4) business group travelers. *Boyd Dep.* at pp. 83:16-22; 134:9-135:3; *Boyd*

*Aff.* at ¶3; *Yo Dep.* at pp. *54:23-55:2.* The company also promotes its services over the Internet

through its website, www.perx.com, one of several GATT websites that it purchased at the

October 2001 foreclosure sale. *Boyd Dep.* at p. 70:18-24.

Interline is headquartered in Austin, Texas but also has an office in Boca Raton, Florida.

*Interline's May Discovery Responses* at Interrog. 2.   Interline performs all of its business

operations in Texas and in Florida. *Boyd Aff.* at ¶4.  All travel reservations and bookings are

conducted in Texas and/or Florida. *Id.*  Interline has no business offices in Connecticut and has

no employees in Connecticut. *Id.* at ¶5.  Interline does not own, lease or rent real property in

Connecticut. *Id.* at ¶6.  Interline has no agent for the service of process in Connecticut and has

never filed a tax return in Connecticut. *Id.* at ¶7.  Interline presently derives only $33,000 in

---

[2] Mr. Boyd's original Affidavit was previously filed with the Court.

16

annual income (approximately 0.3% of its total annual income) from orders placed from individuals that have a residence address in the State of Connecticut. *Interline's May Discovery Responses* at Interrog. 17. Of the approximately 115,000 persons in its e-mail customer and marketing database, only 680 e-mail addresses indicate that they are from persons who have an address in the State of Connecticut. *See Interline's Supplemental Responses to Plaintiff's Interrogatories dated June 8, 2005 ("Interline's June Discovery Responses")* attached hereto as **Exhibit 25** at Interrog. 16.[3]

Interline acquired the tangible and intangible assets of GATT by virtue of the foreclosure sale. Interline acquired, among other things, GATT's furniture, computers, office equipment, internet domain names, telephone numbers and customer lists. *Boyd Dep.* at p. 70:18-24; *Juba Dep.* at p. 124:21-25. In November 2001, Interline executed a short-term property lease and conducted its business operations at the same street address as GATT, but in a different office suite. *Boyd Dep.* at p. 73:5-6; *Juba Dep.* at pp. 102:24-25; 103:1-16; *Lease Agreement* at **Exhibit 26**. Interline's management offered employment to some former GATT employees. *Boyd Dep. at p. 67:10-13; Juba Dep.* at 35:1-5. The former GATT employees who were offered employment with Interline were required to submit formal employment resignation

---

[3] The documents attached to these discovery responses are not attached to this motion as they are "Confidential" pursuant to the parties Consent Order and Agreement dated June 1, 2005. Upon request, the undersigned can provide these confidential documents to the Court.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

correspondence to GATT and complete new tax forms. *Boyd Dep.* at p. 68:19-24; *Juba Dep.* at p. 35:1-5; *Yo Dep.* at p. 58:3-7.   Following the foreclosure sale, Interline obtained a tax identification number, opened new bank accounts and negotiated new contracts with, among others, customers on GATT customer lists. *Boyd Dep.* at pp. 193:19-22, 199:5.   Interline also opened merchant accounts so that it could process credit card transactions and opened an account with the telephone company providing the telephone numbers purchased at the foreclosure sale. *Juba Dep.* at pp. 42:3-7, 125:22-126:1.   Interline did not assume any of GATT's debts or contracts and notified GATT creditors about this. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at p. 127:9-23, 137:3-6.

## II.    **ARGUMENT**

### A.    **Standard for Summary Judgment**

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *Fed. R. Civ. P. 56(c)*; *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).   The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Cronin*, 46 F.3d at 202.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

The Second Circuit has ruled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985). Instead, *"the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful." Johnson v. Carpenter Technology Corp.,* 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

There are no genuine issues of fact regarding the plaintiff's claims against Interline. As will be discussed herein and as will be demonstrated through the documentary evidence in this case, the plaintiff's theories of recovery are illusory, based on conjecture and, quite frankly, defy common sense. As such, Interline is entitled to judgment as a matter of law on all claims set forth in the plaintiff's Second Amended Complaint.

### B. Plaintiff's Action Is Precluded As A Matter of Law Because The Plaintiff Has Failed To Establish That GATT and GATTInc. Are Related Entities

The gravamen of the plaintiff's claim against Interline is that Interline is a "mere continuation" of GATT. Even if that were the case, which it is not, GATT is not a named party to the Agreement which forms the basis of the plaintiff's claims in this lawsuit. The plaintiff,

19

who has previously alleged in prior pleadings that GATT was a "successor at interest" to

GATTInc., has failed to present any evidence to bridge the gap to show that GATTInc. "did

business as GATT" or that GATT is legally responsible for the debts of GATTInc. The evidence

shows that GATTInc. is <u>not</u> an assumed name of GATT which severely undermines the

plaintiff's claim that GATTInc. "did business as GATT". *See Secretary of State Records for*

*GATT.* Accordingly, even if Interline were found to be liable for the debts of GATT, such a

finding would have no bearing on plaintiff's right of recovery absent some proof that GATT and

GATTInc., the real party to the Agreement, are the same entity. The plaintiff's failure to present

such evidence precludes the plaintiff's claims as a matter of law. Accordingly, this action should

be dismissed.

### C. Even If GATT Is Liable For GATTInc.'s Liabilities, Interline Not Is Liable For GATT's Liabilities

In the unlikely event that the Court determines that GATT is responsible for GATTInc.'s

liabilities, the plaintiff's claims are nonetheless precluded because Interline is not a legal

successor to GATT.

In Connecticut, a corporation which purchases all the assets of another company does not

become liable for the debts and liabilities of its predecessor unless:

1)  the purchase agreement expressly or impliedly so provides;

20

2)  there was a merger or consolidation of the two firms;

3)  the purchaser is a "mere continuation" of the seller; or

4)  the transaction is entered into fraudulently for the purpose of escaping liability.

*Collins v. Olin Corp., 434 F. Supp.2d 97, 102 (D. Conn. 2006); Ricciardello v. J.W. Gant &*

*Company,* et al., 717 F. Supp. 56, 57-58 (1989); *Kloberdanz v. Joy Mfg. Co.,* 288 F. Supp. 817,

820 (D. Colo. 1968) *citing 15 Fletcher, Cyclopedia of Law of Corporations*, §7122 (1961 rev.

vol.).

The plaintiff cannot establish that any one of the above limited exceptions apply that

would warrant the imposition of liability on Interline for the alleged debts of GATT.  The first

exception is clearly inapplicable.  Interline purchased GATT's assets at a public foreclosure sale,

so there is no agreement, express or implied, which obligates Interline to assume any of GATT's

liabilities.

The second exception is similarly inapplicable.  "A merger contemplates the 'absorption

of one corporation by another which retains its name and corporate identity with the added

capital, franchise, and powers of a merged corporation'." *Ricciardello*, 717 F. Supp. at 58;

*Ladjevardian v. Laidlaw-Coggeshall, Inc.,* 431 F. Supp. 834 (S.D.N.Y. 1977).  Here, the merger

exception cannot apply because there is no "corporate identity" - GATT was a publicly-trade

corporation and Interline is a privately-held business.  Moreover, as discussed *infra*, there was no

identity of "capital, franchise, and powers".

21

The consolidation exception similarly does not apply.  "A consolidation envisions the joining together of the two corporations so that a totally new corporation emerges and the two others cease to exist." *Ricciardello*, 717 F. Supp. at 58; *Ladjevardian, supra*, 431 F. Supp. 834 (S.D.N.Y. 1977).  The consolidation exception cannot apply to this case as the plaintiff has not alleged (and the facts do not show) that two corporations joined together to form a third entity separate and apart from GATT and Interline.

### 1.    *The "Mere Continuation" or "De Facto Merger" Exceptions Do Not Apply*

The plaintiff cannot rely upon the "mere continuation" or "defacto merger" exceptions as a basis for imposing liability on Interline.  For the purposes of determining successor liability, analysis of a "mere continuation" and a "*de facto* merger" may be treated together. *See Collins v. Olin Corp.,* 434 F.Supp. 97 (D.Conn. 2006)(Droney, J.)(copy attached hereto as **Exhibit 27**); *Peglar v. Professional Indemnity Underwriters Corporation,* 2002 WL 1610037, at *6-7 (Conn.Super.Ct., June 19, 2002) ("Where a successor corporation is a `mere continuation' of the predecessor corporation, the `mere continuation' exception to the general rule `in effect takes cognizance of what may be called *de facto* merger.'") (citing *Sullivan v. A.W. Flint Co.* 17 Conn. L. Rptr. 331 (Super.Ct., Aug. 5, 1996)).

According to the Connecticut courts, to establish a basis for successor liability based upon the "mere continuation" exception, a plaintiff must establish:

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

1)      continuation of the enterprise of the seller corporation so that there is a
        continuity of management, personnel, physical location, assets and general
        business operations;
2)      continuity of shareholders;
3)      the seller corporation ceases its business operations, liquidates and dissolves as
        soon as legally and practically possible;
4)      the purchasing corporation assumes those liabilities and obligations of the
        seller ordinarily necessary for the uninterrupted continuation of normal
        business operations of the seller corporation.

*Peglar & Associates, Inc. v. Professional Indemnity Underwriters Corp.*, 2002 Conn. Super.

LEXIS 2103 *19-20 (Conn. Super 2002)(Rogers, J.); *Sullivan v. A.W. Fint Co.*, 17 Conn. L.

Rptr. (Conn.Super. August 5, 1996)(Corradino, J.). The focus of this exception "is not whether

there is simply a continuation of the business, but rather the test is whether there is a continuation

of the corporate entity of the seller". *Nat'l Grange Mutual Ins. Co. v. Montgomery Elevator*,

1994 Conn. Super. LEXIS 2429 *11 (Conn. Super. 1994)(Hale, J.); *Travis v. Harris Corp.*, 565

F.2d 443, 447 (7th Cir. 1977). "The key element in determining whether the corporate entity

continues to exist is a determination of whether there is a common identity of the officers,

directors and stockholders in both the selling and purchasing corporations." *Nat'l Grange Mutual*

*Ins. Co.*, supra, 1994 Conn. Super. LEXIS 2429 at *11.

        To find that a *de facto* merger has occurred, there must be: 1) a continuity of the selling

corporation, evidenced by the same management, personnel, assets and physical location; 2) a

continuity of stockholders, accomplished <u>by paying for the acquired corporation with shares of</u>

23

stock; 3) a dissolution of the selling corporation; and 4) the assumption of liabilities by the purchaser." *Ricciardello*, 717 F. Supp. at 58; *Arnold Graphics Indust., Inc. v. Independent Agent Center, Inc.* 775 F.2d 38, 42 (2d Cir. 1985)(emphasis added).

### 2.    *GATT and Interline Are Not A "Common Enterprise"*

The plaintiff's claim is precluded as a matter of law because, among other reasons, Interline and GATT are not a common enterprise. The management structure and officers of GATT, a public company, are <u>completely</u> different from the management structure and officers of Interline, a privately-held company. At the time of the October 30, 2001 foreclosure sale, GATT's management consisted of the following individuals: Matthew O'Hayer, Chairman of the Board; Joseph Juba, President, Chief Operating Officer, Director; and Robert Sandner, Director

*See* SEC *Form 10-QSB Quarterly Report for GATT for the Period Ending Sept. 30, 2000* at p. 10; *SEC Form 8-K dated June 15, 2001* at p. 1. At its inception, Interline's management consisted <u>only</u> of Boyd as President and Lawrence K. Fleischman as Chairman and Chief Executive Officer and all of Interline's company stock belonged to these individuals. *Juba Dep.* at p. 44:16-23; *Boyd Dep.* p. 124:7-14. Clearly, there was no commonality ownership or management at the time of the foreclosure sale.

Although Interline's management presently consists of the following officers:

Duane Boyd - President

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

Lawrence K. Fleischman - Chairman and Chief Executive Officer

Joseph Juba - Executive Vice President

Fernando Cruz Silva, Senior Vice President

Patricia Macchi, Vice President

Juba, Cruz and Silva did not become part of Interline's management until 2002, several months after the foreclosure sale. *Interline's June Discovery Responses* at Interrog. 4; *Boyd Dep.* at pp. 96:16-17, 124:10-21; *Juba Dep.* at p. 42:25-43:1.  The only person that became common in management to both organizations is Joseph Juba.  Juba, however, had differing responsibilities with GATT (President and Chief Operating Officer) and Interline (Executive Vice President):

> Q. Who was in charge of the day-today management of GATT immediately before the foreclosure, the day-to-day operations?
>
> A.   I was.
>
>          *        *        *
>
> Q.   Okay. Did you also play a significant role in the management of the company the next -- when Interline was formed?
>
> A.   No.

*Juba Dep.* at pp. 122:11-14; 122:25:123:3; *see also Boyd Dep.* at p. 124:11-14.  Moreover Juba assumed no managerial responsibilities with Interline until 2002, several months after the foreclosure sale. *Juba Dep.* at p. 42:25-43:1.   As a matter of law, there was no continuity of management between GATT and Interline at the time of the foreclosure sale.

25

3.    *There Is No Commonality Of Shareholders or Personnel*

The shareholders and personnel of GATT and Interline are also different.  GATT was a publicly-traded company on the NASDAQ with over 1000 shareholders. *Juba Dep.* at p. 17:11-20; 46:18-21.  Interline, however, was a private company that, at its inception, had only two stockholders (Boyd, Fleischman). *Boyd Dep.* at p. 124:10-21.  Today, Interline has approximately 21 shareholders, 52 employees and no majority shareholder. *Interline's May Discovery Responses* at Interrogs. 4, 24; *Boyd Dep.* at pp. 103:17-25, 104:1.  Interline purchased GATT's assets, not stock, at a foreclosure sale which, by itself, precludes liability under a successor liability theory as a matter of law. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at pp. 127:9-23, 137:3-6; *see also Ricciardello*, 717 F. Supp. at 58 (summary judgment granted on successor liability claim where no stock was used by defendant to purchase assets of corporation).

There is no commonality of personnel, either.  Interline does not dispute that it hired some of GATT's former employees. *Juba Dep.* at p. 116:18-19.  However, the former GATT employees who were hired by Interline were required to submit formal employment resignation correspondence to GATT and complete new tax forms. *Boyd Dep.* at pp. 67:10-13, 68:19-24; *Juba Dep.* at pp. 35:1-5, 101:18-24; *Yo Dep.* at p. 58:3-7.  Interline also hired new employees such as Boyd and Fleischman who were not previous GATT employees. *Boyd Dep.* at p. 111:1-8; *Juba Dep.* at p. 116:14-15.

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

Indeed Interline's hiring of some previous GATT employees is not sufficient to establish

successor liability. In *Collins v. Olin Corp., 434 F. Supp.2d 97, 102 (D. Conn. 2006)*, a case

strikingly similar to the case at bar, this Court (Droney, J.) granted summary judgment to a

defendant that had merged with a company who had purchased the assets, not the stock, of

another company at a public auction ("Purchasing Company"). The plaintiff attempted to find

the defendant liable under the "mere continuation" or "de facto merger" exceptions to the general

rule that a corporation that acquires the assets of another entity does not assume that entity's

former liabilities. *Collins., 434 F. Supp.2d at 102;*15 Fletcher Cyclopedia of Private Corp. §

7122. In its decision, the Court noted that many of the products manufactured by the Purchasing

Company were the same as those manufactured by the company sold at the public auction. The

Court also noted that the Purchasing Company had "retain[ed] many of the jobs of the plant

workers" from the company sold at the public auction and that there "was some overlap of

directors and officers". *Collins., 434 F. Supp.2d at 104.* The Court noted that the Court's focus

was "not whether there is a continuation of the business but rather the test is whether there is a

continuation of the corporate identity of the seller." *Id.* at p. 104; *Pesce,* 1996 U.S. Dist. LEXIS

22244, at * 12-13. In granting summary judgment to the defendant, the Court found that

"retaining many of the jobs of the plant workers by [the Purchasing Company] and even

manufacturing many of the same pre-acquisition products have little weight in determining

27

corporate identity; to hold otherwise likely would expose most assets purchasers to post-acquisition successor liability." *Collins., 434 F. Supp.2d at 104.* The Court also added that the Purchasing Company's hiring of prior employees of the company sold at the auction "is not unusual in making the transition to new ownership and operations." *Id.* at 105.

Similarly, in *Nat'l Grange Mutual Ins. Co. v. Montgomery Elevator*, 1994 Conn. Super. LEXIS 2429 *11 (Conn. Super. 1994)(Hale, J.); a case in which the plaintiff sought to impose successor liability on an elevator company that had purchased the assets of another elevator company, the court entered judgment in favor of the defendant and dismissed the plaintiff's claim. In *Nat'l Grange Mutual*, the defendant corporation acquired among other things, the elevator service and construction contracts of the other elevator company along with certain equipment, motor vehicles, furniture, trade fixtures, tools and equipment supplies via an asset purchase agreement. *Nat'l Grange Mutual Ins. Co., supra*, 1994 Conn. Super. LEXIS 2429 at *11. In its decision, the court considered the fact that the defendant elevator company had hired 50 employees that had worked for the elevator company that was acquired via the asset purchase agreement. The Court held that the defendant was not a legal successor to the company that it had purchased and noted that the hiring of such personnel was "important in maintaining the relationship which often existed between service employees and the service contracts which they maintained." *Nat'l Grange Mutual Ins. Co., supra*, 1994 Conn. Super. LEXIS 2429 at *11.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

The fact that Interline may hired some of GATT's former employees does not form a basis to establish successor liability. It is clearly within reason and common sense that Interline would have offered employment to some of GATT's employees, particularly since they were familiar with, among other things, the equipment purchased at the foreclosure sale as well as the people whose names appeared on the customer lists acquired via the sale. *See Nat'l Grange Mutual Ins. Co., supra*, 1994 Conn. Super. LEXIS 2429 at *11.

### 4.    *GATT and Interline Do Not Have Common Business Operations*

GATT and Interline have never had identical business operations. It is undisputed that GATT and Interline were/are travel-related businesses. However GATT and Interline offered/offer different products and services to their customers. GATT provided travel services to travel agents, airline employees and newlyweds. *Juba Dep. at* pp. 24:19-25:21; *Yo Dep.* at p. 54:11-17. It also published travel magazines entitled *Interline Adventures*; *Destination Weddings & Honeymoons* and *Interline Update. Yo Dep.* at p. 9:13-20.

Interline, on the other hand, did not, and does not, provide travel services to travel agents or newlyweds. Instead, it provides active and retired airline employees, and their parents, family members and friends, cruise and resort/hotel vacations at discounted prices. *Boyd Aff.* at ¶3; *Yo Dep.* at p. *54:23-55:2.* Interline contracts with vendors other than those contracted with by GATT to provide the travel packages it offers. *Boyd Dep.* at pp. 76:8-13, 85:7-9. Interline also

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

offers travel opportunities to business group travelers and active and retired employees of FedEx

and the military, services that GATT did not provide. *Boyd Dep.* at pp. 83:16-22, 134:9-135:3;

*Yo Dep.* at p. 55:1-2.  Interline did not publish the publications known as *Interline Adventures,*

*Destination Weddings & Honeymoons* or *Interline Update* and did not sell advertisements to

fund such publications. *Yo Dep.* at pp. 12:24-13:1, 101:15-17, 21-23; *Juba Dep.* at p. 118:8-13;

*Boyd Dep.* at p. 125:22-23.  As discussed, *supra*, even if Interline did provide the some of the

same services as GATT, such a finding would "have little weight in determining corporate

identity" and "to hold otherwise likely would expose most assets purchasers to post-acquisition

successor liability." *Collins., 434 F. Supp.2d at 104.*


     **5.**    ***GATT and Interline Did Not Operate From The Same Business Location***

GATT and Interline did not operate from the same business location. *Yo Dep. at pp.*

*65:20-66:8;101:1-7.*  At the time of the foreclosure sale, GATT's business operations were

located at 211 West 7th Street, <u>Suite 1100,</u> in Austin, Texas. *Juba Dep.* at p. 103:3.  Following

Interline's purchase of GATT's assets at the foreclosure sale, Interline entered into a short-term

lease for the premises located at 211 West 7th Street, <u>Suite 1120,</u> in Austin, Texas. *Boyd Dep.* at

p. 74:10-11; *Juba Dep.* at pp. 102:24-25; 103:5-7; *Interline's May Discovery Responses* at

Interrog. 2.  Interline occupied this space for only six months before it moved its business

operations to its present address at 12708 Riata Vista Circle, Suite A-125 in Austin, Texas.

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

*Interline's May Discovery Responses* at Interrog. 2.  Even if the court were to consider the fact

that Interline held a short-term lease for its business at the same street address as GATT, such a

fact would not be sufficient to establish successor liability. *See Nat'l Grange Mutual Ins. Co.,*

*supra,* 1994 Conn. Super. LEXIS 2429 at *12 (court finds no successor liability where defendant

purchaser corporation continued to operate out of seller corporation's building after purchaser

corporation acquired seller corporation's assets); *Chamlink Corp. v. Merritt Extruder Corp., et*

*al.,* 96 Conn. App. 183 (2006)(copy attached as **Exhibit 28**) (no successor liability in case where

company that purchased the assets of a defunct company, used same telephone number and

occupied half of the same office space as the defunct company).

      **6.**    *Interline Did Not Assume Any Liabilities Or Obligations Of* **GATT**

      Although there is no Connecticut state or federal law directly on point, the Second Circuit

has held that in general, a purchaser of assets at a foreclosure sale does not assume the liabilities

of the seller. *Quinn v. Teti*, et al., 2000 U.S. App. LEXIS 27210 at *6 (2d Cir. 2000)(copy

attached as **Exhibit 29**).  Here, Interline did not assume <u>any</u> of GATT's debts or contracts

following the foreclosure sale. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at pp. 99:23-24, 127:9-23;

137:3-6.  Moreover, even if the Court concludes that Interline did assume GATT's liabilities, the

plaintiff's claim against Interline is <u>still</u> precluded as a matter of law.  The plaintiff was not a

secured creditor of GATT and failed to obtain or perfect a security interest on GATT's assets

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

with respect to the equipment that it purportedly sold to GATT. *Interline's Requests for Admission of Statements and Documents dated August 3, 2006* at pp. 3-4, 17, #3-7, 54. As such, even if the Court were to find successor liability in this case, the rights of the plaintiff are, as a matter of law, subordinate to the rights of GATT's secured creditors: Boyd, Fleischman, Wells Fargo Bank Texas, NA, IBM Credit Corp. and Dell Financial Services, LP.

### 7. Plaintiff's Purported "Fraudulent Transaction" Claim Is Precluded As A Matter Of Law

The fourth *Ricciardello* exception also cannot apply. In the plaintiff's Third Amended Complaint, the plaintiff alleges, for the first time, that Interline is liable for the debts of GATT because it conducted an allegedly fraudulent "foreclosure auction". *Third Amended Complaint, Second Count.* The plaintiff's claim is insufficient as a matter of law because: 1) it is barred by the statute of limitations in Conn. Gen. Stat. § 52-577; 2) the plaintiff lacks standing to assert any claims on behalf of GATT's shareholders; and 3) it fails to allege any particular facts to establish that the October 2001 foreclosure sale was fraudulent.

The plaintiff's purported fraud claim is precluded as a matter of law. The foreclosure sale and plaintiff's purported fraud claim were asserted for the first time in the plaintiff's Third Amended Complaint dated February 15, 2006. None of the plaintiff three prior Complaints even mention the foreclosure sale which occurred on October 30, 2001. This eleventh-hour claim, initiated almost four and one-half years after the foreclosure sale, does not arise out of the

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • Tel: (860) 676-3123 •Fax: (860) 606-9797

"conduct, transaction or occurrence set forth or attempted to be set forth in the original complaint." Fed. R. Civ. P. 15(c)(2). Accordingly, the plaintiff's fraud claim is precluded as a matter of law by, among other things, the three year statute of limitations set forth in Conn. Gen. Stat. § 52-577. *See Simonoff v. McPhee & Sons, LTD, et al.,* 1999 Conn. Super LEXIS 3116 (Conn. Super Nov. 16, 1999)(Bishop, J.)(request for leave to amend to add successor liability claim denied because "new allegations relating to successor liability state an additional theory of liability and constitute a new cause of action"). The plaintiff's purported fraud claim is also precluded because the plaintiff, who has never been a GATT shareholder, lacks standing to assert any claims on behalf of GATT's shareholders, has failed to comply with requirements for maintaining a shareholder securities fraud action and has not complied with the statute of limitations for such an action. *See* Priv. Sec. Lit. Reform Act of 1995; 15 U.S.C. §77a-77aa; 15 U.S.C. §78a-77mm.

In the unlikely event that this Court finds that the plaintiff has standing to maintain this untimely claim, it the plaintiff purported fraud claim is still precluded as a matter of law. The essential elements of a cause of action in fraud are: 1) a false representation was made as a statement of fact; 2) it was untrue and known to be true by the party making it; 3) it was made to induce the other party to act upon it; and 4) the other party did so act upon that false representation to his injury. *Infra-Metals, Co. v. Topper & Griggs Group, Inc.,* 2005 U.S. Dist.

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

LEXIS 31385 *13 (U. S. Dist. Ct. 2005)(Hall, J.) *citing Wallenta v. Moscowitz,* 81 Conn. App.

213, 219 (Conn. App.. 2004). A party alleging fraud  misrepresentation "must prove the

existence of the first three of [the] elements by a standard higher than the usual fair

preponderance of the evidence, which higher standard we have described as 'clear and

satisfactory' or 'clear, precise and unequivocal.'" *Wallenta*, 81 Conn. App. at 220 *citing Citino* v.

*Redevelopment Agency*, 51 Conn. App. 276, 276 (1998).

     If a plaintiff purports to rely on fraud to impose successor liability, the plaintiff must

plead with particularity facts from which fraud may be inferred. *Ricciardello,* 717 F. Supp. 59

*citing* Fed. R. Civ. P. 9 (b).  Under Fed. R. Civ. P. 9 (b), "all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity." *See* Fed. R. Civ.

P. 9(b).  The complaint must identify the statement that the plaintiff contends were fraudulent,

identify the speaker, state where and when the statements were made and explain why the

statements were fraudulent. *Infra-Metals, Co.*, 2005 U.S. Dist. LEXIS 31385 at *13 *citing Acito*

*v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995).  In addition, the complaint "should

explain how the misrepresentations were fraudulent and plead those events which give rise to a

strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a

reckless disregard for the truth." *Infra-Metals, Co.*, 2005 U.S. Dist. LEXIS 31385 at *13; *Caputo*

*v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001).

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

There is no admissible evidence from which a jury could clearly, precisely and unequivocally conclude that the October 2001 foreclosure sale was conducted with the specific intent to defraud the plaintiff out of his purported claim for $115,080. The plaintiff has failed to plead <u>any</u> facts (or present any evidence) to show that Interline knew about GATT's alleged debt to the plaintiff and conducted the foreclosure sale with the specific intent to defraud the plaintiff. Instead, the plaintiff has attempted to distract the Court with allegations about purportedly wrongful conduct on the part of <u>GATT</u> that took place long before the foreclosure sale. *See Third Amended Complaint* at ¶¶ 101, 103. Such conduct, in addition to being time-barred and not actionable because the plaintiff lacks standing, is not sufficient to establish fraudulent intent on the part of Interline. *See Ricciardello,* 717 F. Supp. 59 (court grants summary judgment and finds that fraudulent intent of transferee company cannot be established by conduct of transferring company prior to a transfer of assets). Moreover, the instant lawsuit was filed long after the foreclosure sale concluded. As such, Interline did not have notice of the plaintiff's purported claims prior to the sale which severely undermines any claim that the foreclosure sale was conducted with the intent to defraud the plaintiff.

There is simply no evidence upon which a jury could reasonably find for the plaintiff on this claim. The absurdity of the plaintiff's fraud claim is highlighted by the fact that prior to the foreclosure sale, Interline notified GATT's secured creditors, most of whom had secured claims

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

on GATT's assets for more than the amount claimed by the plaintiff in this case, and the general public of the impending sale as evidenced by the written notices sent via certified mail to GATT's creditors and the notice of the sale published in the *Austin American Statesman* newspaper prior to the sale. *Taylor Aff.* at ¶ 7, *Exhibit H*. Certainly, if the foreclosure sale was conducted for the purpose of "escaping liability", GATT's secured creditors (who were owed more than the plaintiff) and the public would not have been notified of the foreclosure sale.

The evidence further shows that Interline purchased GATT's assets for valuable consideration. Interline, who was owed $370,000 from GATT, purchased GATT's assets for $340,000 at the foreclosure sale. *Id.* at ¶12. Interline also purchased the debt of the first lien holder, Wells Fargo Bank for $105,000. *See Transfer and Assignment of Debt, Claims and Security Interests.* Simply stated, Interline, after attempting to recover its own investment ($370,000), paying the bid price ($340,000) and assuming Wells Fargo's first lien ($105,000), spent over **$475,000** to acquire GATT's assets. *Boyd Dep.* at p. 36:1-3.

And finally, the evidence in this case shows that the purported "insiders" that plaintiff claims somehow benefited from the foreclosure sale – Boyd, Juba, O'Hayer, and Fleishman, suffered significant financial losses as a result of the foreclosure sale. Juba, Boyd and O'Hayer were GATT shareholders who lost the value in all of their shares when the company was foreclosed upon. *Juba Dep.* at p. 53:10-25; *Boyd Dep.* at p. 183:6-11. In addition, Boyd and

36

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

Fleischman lost the value of their loans to GATT ($370,000) as a result of the sale and received

no compensation as a result of working for several months as GATT consultants. *Juba Dep.* at p.

54:2-4; *Boyd Dep.* at p. 183:6-11. This evidence further highlights the absurdity of the plaintiff's

claims and these facts clearly establish, as a matter of law, that the plaintiff's "fraudulent

transaction" claim has no merit and should be dismissed.

### D.    Because Interline Is Not A Legal Successor To GATT, CCT Cannot Maintain A Breach Of Contract Case Against Interline

To maintain an action for breach of contract, a plaintiff must plead and prove the

following: 1) formation of an agreement; 2) performance by one party; 3) breach of an

agreement by the other party; and 4) damages. *Ferrone, et al. v. Resnick*, 2002 Conn. Super.

LEXIS 601 *3 (Conn. Super. Feb 20, 2002) (Meadow, JTR), *McHenry v. Lubell*, Sup. Ct., Jud.

Dist. of Fairfield at Bridgeport, Docket No. 346842 (August 2, 2001)(Skolnick, J.). In the

present case, the plaintiff has failed to establish that GATT is liable for the debts of GATTInc.,

the named party to the agreement, and has failed to establish that Interline is a legal successor to

GATT. Consequently, the plaintiff cannot maintain a breach of contract claim against Interline

as a matter of law. Accordingly, Interline seeks summary judgment on the plaintiff's breach of

contract claim.

37

### E.     This Court Lacks Personal Jurisdiction Over Interline

Interline is also entitled to summary judgment because it has presented a compelling case

establishing that that this Court lacks personal jurisdiction over it in this case.  For the reasons set

forth in Interline's Motion to Dismiss dated June 14, 2003 and Memorandum in Further Support

dated September 22, 2003 which are incorporated herein by reference,[4] Interline is entitled to

judgment as a matter of law on the plaintiff's Second Amended Complaint.

Indeed there is plainly no basis for exercising specific or general jurisdiction over

Interline in this case.  The plaintiff has failed to establish that this case arises out of, or in any

way relates to, contact by Interline with the State of Connecticut.  Interline is a Texas corporation

with a principal place of business in Texas. *Boyd Aff.* at ¶2.  Interline performs all of its business

operations in Texas and in Florida. *Id.* at ¶4.  All travel reservations and bookings are conducted

in Texas and/or Florida. *Id.*  Interline has no business offices in Connecticut and has no

employees in Connecticut. *Id.* at ¶5.  Interline does not own, lease or rent real property in

Connecticut. *Id.* at ¶6.  Interline has no agent for the service of process in Connecticut and has

never filed a tax return in Connecticut. *Id.* at ¶7.

---

[4] On November 10, 2003, the Court (Underhill, J.) denied Interline's Motion to Dismiss without prejudice, thereby enabling Interline to raise the issue of personal jurisdiction at a later date. *See Court Order dated November 10, 2003* attached hereto as **Exhibit 30**.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS No. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

Our Supreme Court has held that a defendant can defeat the exercise of a Court's jurisdiction if a defendant makes out a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174 (1985). Interline has presented a compelling case. Interline does not have "continuous and systematic" contacts with Connecticut so as to give this Court general jurisdiction over it under the prevailing constitutional test. It presently derives approximately $33,000 in annual income (approximately **0.3%** of its total annual income) from orders placed from individuals that have a residence address in the State of Connecticut. *Interline's May Discovery Responses* at *Interrog. 17.* Of the approximately 115,000 persons in its e-mail customer and marketing database, only 680 e-mail addresses indicate that they are from persons who have an address in the State of Connecticut. *Interline's June Discovery Responses at Interrog. 16.* Simply stated, Interline could hardly have imagined being haled into court in Connecticut to defend itself in a lawsuit. Interline therefore seeks summary judgment and dismissal of this action because this Court lacks jurisdiction over it under both Connecticut's long arm statute, Conn. Gen. Stat. §33-929 and U.S. Const. Amend. V and XIV.

39

## III.    CONCLUSION

The evidence in this case demonstrates that the plaintiff's theories of recovery against Interline are illusory and based on conjecture. The case law and evidence in this case clearly establish that Interline is not a legal successor to GATT under any legal theory and that it cannot be held liable for any debts or obligations of GATT. Moreover, the evidence shows that this Court lacks jurisdiction over it under both Connecticut's long arm statute, Conn. Gen. Stat. §33-929 and U.S. Const. Amend. V and XIV. Accordingly, for the foregoing reasons, Interline respectfully requests that its Motion for Summary Judgment be granted and that this action be dismissed with prejudice.

Respectfully submitted,

DEFENDANT,
INTERLINE TRAVEL & TOUR, INC.

By: _____
LAURA F. BALDINI, ESQ.
Federal Bar Number ct19887
Law Offices Of Laura Flynn Baldini, LLC
74 Batterson Park Road, 2nd Floor
P.O. Box 887
Farmington, CT 06034-0887
Tel. (860) 676-3123
Fax. (860) 606-9797
LBaldini@FlyBal-Law.com
Juris. No. 421267

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was mailed via U.S. mail, postage prepaid on this 2nd day of November, 2007 to the following counsel of record:

Kevin P. Chamberlin, Esq.
Law Offices of Kevin P. Chamberlin
*Counsel for Plaintiff*
40 Lake Avenue Extension – Suite 4
Danbury, CT 06811

By: _____
LAURA F. BALDINI, ESQ.
Law Offices of Laura Flynn Baldini, LLC

41