**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CALL CENTER TECHNOLOGIES, | : | CIVIL ACTION NO. 3:03CV1036 (DJS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GRAND ADVENTURES TOUR & | : | |
| TRAVEL PUBLISHING CORPORATION, | : | |
| INTERLINE TRAVEL & TOUR, INC., | : | |
| | : | |
| Defendants. | : | NOVEMBER 2, 2007 |
| | : | |

**INTERLINE TRAVEL & TOUR, INC.'S RULE 56(a)(1)**
**STATEMENTS OF UNDISPUTED FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(a)(1),

Interline Travel & Tour, Inc. ("Interline"), a defendant in the above-captioned matter, submits

the following Statements of Undisputed Facts in support of its Motion for Summary Judgment:

1.  On June 16, 1998, CCT and Grand Adventures Tour & Travel, Inc. ("GATTInc.")

    entered into a Customer Agreement ("Agreement") with Grand Adventures Tour &

    Travel, Inc. ("GATTInc.") for the sale and purchase of "certain goods called an

    Aspect Call Center" ("Equipment"). *Third Amended Complaint dated February 16,*

    *2006, ¶¶ 6, 14 at* **Exhibit 5.**; *Customer Agreement at* **Exhibit 8.**

1

2.  The purchase price for the Equipment was $130,090 and any costs to install the Equipment would be in addition to the purchase price. *Customer Agreement* at ¶¶ 1-2.

3.  CCT agreed that it would use its own personnel to install the Equipment and provide training, but reserved the right to subcontract with third parties to complete these tasks. *Id.* at ¶¶ 10-12.

4.  GATTInc. did, however, have the ability to request that the installation and training be provided by a third party of its own choosing, but such request had to be approved by CCT. *Id.* at ¶ 12.

5.  CCT The plaintiff has alleged that "GATT ordered additional parts from plaintiff in February 1999 consisting of two (2) Aspect Teleset Interface Cards, part number 4061, and three (3) Aspect Teleset Interface Cables, which plaintiff supplied to GATT, shipping them from its Brookfield, Connecticut offices." *Third Amended Complaint*, at ¶30.

6.  CCT warranted, among other things, that for a period of 24 months from the date of delivery, that the Equipment would be free from material defects under normal conditions and use. *Agreement* at ¶ 14(a).

2

7. CCT promised to replace any Equipment suspected of defect within 24 hours of being notified of the defect. *Id.*

8. CCT also promised that it would "maintain the Equipment under the Agreement for year 2000 compliance" and agreed to hold GATTInc. harmless of and from any loss incurred as a result of any failure of the Equipment to maintain year 2000 compliance. *Id.* at ¶ 14(b).

9. The Agreement states that it will be governed and enforceable under Connecticut law. *Id.* at ¶ 18.

10. GATT is not a party to the Customer Agreement, but another incorporated entity with a similar name, Grand Adventures Tour & Travel, Inc. ("GATTInc."), is. *Third Amended Complaint,* ¶ 4.

11. At the time the plaintiff entered into the Agreement, the plaintiff was not an authorized distributor of Aspect products. *Deposition of Dean Vlahos dated March 29, 2005 ("Vlahos Dep.")* at **Exhibit 9** at pp. 71:21:24.

12. GATT is not legally responsible for the debts of GATTInc., and the sum and substance of CCT's evidence on this point is its unsworn and unsupported allegation in the Third Amended Complaint that GATT was "doing business" as GATTInc. *Id.*

3

13. Plaintiff did not make any demands on GATT to pay it for the goods it allegedly supplied to GATT and has not produced admissible evidence to establish that it made efforts to repossess the equipment that it allegedly sold to GATT. *Deposition of Dean Vlahos dated March 29, 2005 ("Vlahos Dep.")* attached to Memorandum at **Exhibit 9** at pp. 137:25-140:21.

14. The plaintiff has no admissible evidence to establish that the Aspect Teleset Interface Cards, which it values at $13,990, were ever shipped to GATTInc. or GATT. *Third Amended Complaint*, at ¶30; *Vlahos Dep.* at pp. 86:22-87:7; 90:9-14.

15. The Agreement provides that GATTInc. granted to CCT a security interest in the Equipment to secure payment in the purchase price, installation charges, freight and taxes related to the Equipment. *Customer Agreement* at ¶ 13.

16. GATTInc. agreed to execute "such documents as CCT shall reasonably require protecting its security interest." *Id.*

17. CCT, however, admits that it did not file UCC statements relating to the Equipment or "additional parts". *Vlahos Dep.* at pp. 136:15-20.; *Plaintiff's Responses to Interline's Requests for Admission of Statements and Documents ("Requests to Admit")* at p. 3.

4

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

18. Plaintiff was never a secured creditor of GATT and has never had an enforceable lien on GATT's assets. *Plaintiff's Responses to Interline's Requests for Admission of Statements and Documents ("Requests to Admit") dated August 3, 2006* at pp. 3-4, 17, #3-7, 54 at **Exhibit 10**.

19. Because plaintiff was never a secured creditor of GATT, any claim against GATT would be subordinate to those claims of GATT's secured creditors. *Id.*

20. The plaintiff is not, and never has been, a GATT shareholder. *Plaintiff's Responses to Interline's Interrogatories and Requests for Production dated August 3, 2006 at Interrog. #3* at **Exhibit 6**.

21. GATT, an Oregon corporation, was incorporated on or about April 3, 1987. *Secretary of State Records for GATT* at **Exhibit 11**.

22. GATT was a publicly-traded company on the NASDAQ. *Deposition of Joseph Juba dated April 13, 2005 ("Juba Dep.")* at p. 17:11-20; 46:18-21 at **Exhibit 12**.

23. As of November 21, 2000, GATT's management consisted of the following individuals: Matthew O'Hayer - Chairman of the Board/Chief Executive Officer; Robert Sandner – Director; Robert G. Rader – Director; Duane K. Boyd – Director. *SEC Form 10-QSB Quarterly Report for GATT for the Period Ending Sept. 30, 2000* at **Exhibit 13** at p. 10.

5

24. GATT's business consisted of proving travel services to: 1) "interliners" (active employees and retirees of the airline industry) and their families and friends; 2) travel agents; 3) airline employees; and 4) newlyweds. *Juba Dep.* at pp. 24:19-25:21; *Deposition of In Churl Yo dated April 13, 2005 ("Yo Dep.")* at p. 54:11-17 at **Exhibit 14**.

25. GATT also promoted sales through travel publications entitled *Interline Adventures, Destination Weddings & Honeymoons* and *Interline Update. Yo Dep.* at p. 9:13-20. The company also promoted travel sales over the Internet through its websites, among them, www.perx.com. *Juba Dep.* at p. 22-23:3.

26. GATT also provided wedding planning and consulting to newlyweds and, through a subsidiary (GATT-UK), provided customized safari tours. *Id.* at p. 25:5-8.

27. In April 2001, GATT was experiencing financial difficulty. *Boyd Dep.* at pp. 12:21-25, 13:1.

28. GATT retained Boyd and Lawrence Fleischman ("Fleischman") of Capital Vision Group, Inc. as consultants in the spring of 2001 to work with GATT's management to help GATT with their financial problems. *Deposition of Duane Boyd dated April 14, 2005* ("Boyd Dep.") at **Exhibit 15** at p. 7:4-8; *Boyd and Fleischman Consulting Agreements* at **Exhibits 16 and 17**.

6

29. The above consulting agreements were disclosed to the public and reveal that Boyd and Fleischman were being engaged with no immediate compensation but rather would receive future compensation in the form of cash, or, at GATT's sole option, common stock based upon the price of that common stock. *See GATT SEC Form 8-K dated June 15, 2001* at **Exhibit 18** at p. 1; *Consulting Agreements* at **Exhibits 16 and 17**.

30. As part of their engagement, Boyd and Fleischman worked with GATT's management to raise cash to operate GATT's business. *Juba Dep.* at p. 154:16-155:7.

31. Shortly after Boyd was retained by GATT, he resigned as a director from GATT. *Boyd Dep.* at p. 7:13-20; 8:1-6.

32. Fleischman was never a director of GATT. *Id.* at p. 9:1-2.

33. On June 2, 2001 Joseph Juba ("Juba"), GATT's President and Chief Operating Officer was appointed to GATT's Board of Directors while, at the same time, Boyd and Rader officially resigned from their positions on the Board, Audit Committee and Compensation Committee. *See GATT SEC Form 8-K dated June 15, 2001* at p. 1.

7

34. On the same date, Matthew O'Hayer resigned his position as Chief Executive Officer but remained Chairman of GATT's Board of Directors. *Id.*

35. Although Boyd was a GATT shareholder and, for a time, a GATT director, he was never an officer or employee of GATT. *Boyd Dep.* at pp. 5:20-21; 6:9-12, 7:10-12; *Juba Dep.* at p. 17:24-25.

36. Boyd and Fleischman personally invested their money in GATT in the form of bridge financing to help GATT turn a profit. *Boyd Dep.* at pp. 19:13-22; 35:6-8; *Juba Dep.* at p. 142:12-14.

37. On May 24, 2001, Boyd extended a $90,000 line of credit to GATT in exchange for a security interest in 65% of the issued and outstanding capital stock of Grand Adventures Tour & Travel (UK) Limited ("GATT-UK"), a wholly owned subsidiary of GATT, subject to a parallel security interest held by Fleischman. *Affidavit of Timothy Taylor, Esq. ("Taylor Aff.") dated July 27, 2005* at **Exhibit 19** at Exhibit B[1]; *SEC Form 8-K dated June 15, 2001* at p. 2.

38. GATT and Boyd executed a Promissory Note formalizing this agreement. *Taylor Aff.* at Exhibit B.

---

[1] The original affidavit and accompanying exhibit was filed with the Court on January 4, 2006 with Interline's first Motion for Summary Judgment

8

39. The Promissory Note was signed by Juba, President and COO of GATT, and Duane Boyd. *Id.*

40. On May 24, 2001, GATT entered into a Promissory Note with Fleischman for a line of credit loan in the amount of $80,000. *Id.*

41. On July 18, 2001, Boyd and Fleischman each loaned GATT $100,000 in exchange for a security interest in all of GATT's assets or other property including accounts, inventory, equipment, investment property, choses in action, general intangibles, real estate as well as 65% of the issued and outstanding capital stock of GATT-UK. *Id.* at Exhibit A.

42. The rights of the parties under the above agreements were exercisable under the Texas UCC. *Id.*

43. On that same day, GATT (through Juba) executed Promissory Notes with Boyd and Fleischman promising to repay these loans. *Id.* at Exhibit B.

44. The Security Agreement executed that same day secured all debt including the Boyd Line of Credit Note dated May 24, 2001, the Fleischman Line of Credit Note dated May 24, 2001, the July Boyd Note and the July Fleischman Note. *Id.* at Exhibit A.

45. On August 8, 2001, GATT filed financing statements for Boyd and Fleischman with the Travis County Clerk. *See Financing Statements* at **Exhibit 20**.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

46. Efforts by Boyd and Flesichman to help GATT turn a profit, although initially successful, were ultimately not successful. *Boyd Dep.* at p. 52:3-7.

47. By the summer of 2001, GATT was operating at a loss and had few tangible assets. *Juba Dep.* at pp. 71:7-9, 72:4-7.

48. GATT's financial problems resulted in the layoffs of employees and the elimination of some of their travel publications (*Interline Adventures*). *Yo Dep.* at pp. 28:15-29:8, 104:19-20:4; *Juba Dep.* at p. 118:16-17.

49. GATT's problems were further compounded by the terrorist attacks of September 11, 2001 which triggered further layoffs and a reduction in the number of travelers seeking GATT's services. *Yo Dep.* at p. 62:12-14; *Juba Dep.* at pp. 23:12-18, 26:9-16.

50. By September 27, 2001, GATT-UK's business was shut down and GATT could no longer process credit card transactions. *Juba Dep.* at pp. 80:9-10, 169:16-21.

51. Following the demise of GATT-UK, Boyd and Fleischman resigned as GATT consultants. *Boyd Dep.* at pp. 50-7-8, 190:12-20.

52. GATT's management attempted to sell the company post-September 11th, but those efforts were not successful. *Juba Dep.* at pp. 80:21-81:2.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

53. Matthew O'Hayer worked to obtain federal airline bail-out money and short-term loans to avert foreclosure on GATT's assets. *Id.* at pp. 81:4-10, 171:6-11.

54. On October 9, 2001, the law firm of Jackson Walker LLP, representing Boyd and Fleischman, sent GATT, via certified mail, a Notice of Intent to Accelerate and Demand Payment. *Taylor Aff.* at ¶ 2, Exhibits C & D.

55. The letter indicated that GATT had defaulted on the May 2001 $90,000 and $80,000 Line of Credit loans and the July 2001 $100,000 Loans. *Id.* at Exhibits C & D.

56. GATT was given until October 19, 2001 to pay the full amounts due and owing under the loans, namely the $140,000 that Boyd and Fleischman advanced to GATT pursuant to the lines of credit and the $200,000 that Boyd and Fleischman advanced to GATT via term loans, a total of $340,000. *Id.*

57. On October 19, 2001, Boyd and Fleischman executed a Transfer and Assignment of Notes and Liens assigning their rights in the May $90,000 and $80,000 Lines of Credit and their July $100,000 term loans to Interline Travel & Tour, Inc. *Id.* at ¶ 3, Exhibits E and F.

58. On October 19, 2001, Jackson Walker LLP, representing Interline Travel and Tour, Inc. as holder of the four promissory notes described above and secured by the July

Law Offices of Laura Flynn Baldini, LLC • Juris No. 421267• lbaldini@flybal-law.com
P.O. Box 887 • 74 Batterson Park Road • Farmington, CT • 06034-0887 • tel: (860) 676-3123 •fax: (860) 606-9797

18, 2001 Security Agreement, sent GATT a Notice of Intent to Accelerate and Demand Payment via certified mail. *Id.* at ¶ 4, Exhibit G.

59. GATT was given until October 29, 2001 to pay the full amounts due and owing under the loans. *Id.*

60. GATT did not repay its loans from Boyd and Fleischman that were assigned to Interline. *Boyd Dep.* at pp. 35:6-12; 36:1-3.

61. On October 19, 2001, Interline, through its attorneys, sent notices via certified mail to GATT's secured creditors, Wells Fargo Bank Texas, NA (who held a first lien on GATT's assets), IBM Credit Corp. and Dell Financial Services, LP, and advised of its intent to conduct a public sale to dispose of GATT's collateral to satisfy GATT's indebtedness to Interline. *Taylor Aff.* at ¶ 7, Exhibits J, K, L.

62. The foreclosure sale was scheduled for 11 a.m. on October 30, 2001. *Taylor Aff.* at Exhibits J, K, L.

63. Between October 24, 2001 and October 28, 2001, Interline published a paid notice in the *Austin American Statesman* advising the public of the scheduled foreclosure sale. *Id.* at Exhibit H.

64. On October 30, 2001, GATT's collateral was sold at a public foreclosure sale conducted at the Travis County Courthouse. *Id.* at ¶11.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

65. The purchaser of the assets was Interline Travel and Tour, Inc. and the bid price was $340,000. *Id.* at ¶12.

66. There were no other bidders at the sale and Interline purchased GATT's assets subject to a first lien upon GATT's assets held by Wells Fargo. *Id. at* ¶8, Exhibit M.

67. On the day of the sale, Wells Fargo Bank, in accordance with Article 9 of the UCC, executed a Transfer and Assignment of Debt Claims and Security Interests, and transferred and assigned its secured debt and liens to Boyd. *Id.*

68. The Transfer was made without recourse and without representations or warranties. *Id.*

69. On November 1, 2001, Boyd executed a similar Transfer and Assignment of Debt Claims and Security Interests and transferred and assigned the acquired Wells Fargo lien to DBMK Partners Ltd (50%) and to Fleischmann (50%). *See Transfer and Assignment of Debt, Claims and Security Interests* at **Exhibit 21**.

70. By letter dated November 1, 2001, Jackson Walker LLP sent Wells Fargo two checks in the amount of $52,500 executed by Boyd on behalf of DBMK Partners Ltd. and Fleischman on behalf of himself. *Id.*

71. These checks represent the purchase of the Wells Fargo lien on GATT's assets at a price of $105,000. *Id.*

13

72. Interline Travel & Tour, Inc. d/b/a Interline Vacations is a privately-held company that was incorporated in Texas on October 15, 2001. *Boyd Dep.* at p. 32:12-14; *Texas Secretary of State Records for Interline* at **Exhibit 22**.

73. There is no majority shareholder of Interline. *Boyd Dep.* at pp. 103:17-25, 104:1.

74. At its inception, Interline's management consisted of Boyd (President) and Lawrence K. Fleischman (Chairman and Chief Executive Officer) who provided the initial capital for the business and owned all of Interline's company stock. *Juba Dep.* at p. 44:16-23; *Boyd Dep.* pp. 124:7-14, 194:17-22.

75. Interline's management, presently consists of the following officers: Duane Boyd – President; Lawrence K. Fleischman - Chairman and Chief Executive Officer; Joseph Juba - Executive Vice President; Fernando Cruz Silva, Senior Vice President; Patricia Macchi, Vice President. *Interline's Supplemental Responses to Plaintiff's Interrogatories dated May 4, 2005("Interline's May Discovery Responses")* at **Exhibit 23** at Interrog. 4; *Boyd Dep.* at pp. 96:16-17; *Affidavit of Duane Boyd dated June 12, 2003* at **Exhibit 24**[2]; *Juba Dep.* at pp. 42:25-43:1.

---

[2] Mr. Boyd's original Affidavit was previously filed with the Court.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

76. Juba, Cruz and Silva were not part of Interline's management until 2002. *Boyd Dep.* at p. 124:10-21.

77. Interline has approximately 21 shareholders and 52 employees. *Interline's May Discovery Responses* at Interrogs. 4, 24.

78. Interline is in the business of providing travel services (i.e. discounted cruise/resort/hotel vacations) to: 1) "interliners" (active and retired airline employees) and their parents, other family members and friends; 2) active and retired employees of FedEx; 3) active and retired military employees; 4) business group travelers. *Boyd Dep.* at pp. 83:16-22; 134:9-135:3; *Boyd Aff.* at ¶3; *Yo Dep.* at pp. *54:23-55:2.*

79. The company also promotes its services over the Internet through its website, www.perx.com, one of several GATT websites that it purchased at the October 2001 foreclosure sale. *Boyd Dep.* at p. 70:18-24.

80. Interline is headquartered in Austin, Texas but also has an office in Boca Raton, Florida. *Interline's May Discovery Responses* at Interrog. 2.

81. Interline performs all of its business operations in Texas and in Florida. *Boyd Aff.* at ¶4.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 • FAX: (860) 606-9797

82. All Interline travel reservations and bookings are conducted in Texas and/or Florida.
*Id.*

83. Interline has no business offices in Connecticut and has no employees in
Connecticut. *Id.* at ¶5.

84. Interline does not own, lease or rent real property in Connecticut. *Id.* at ¶6.

85. Interline has no agent for the service of process in Connecticut and has never filed a
tax return in Connecticut. *Id.* at ¶7.

86. Interline presently derives only $33,000 in annual income (approximately 0.3% of its
total annual income) from orders placed from individuals that have a residence
address in the State of Connecticut. *Interline's May Discovery Responses* at
Interrog. 17.

87. Of the approximately 115,000 persons in its e-mail customer and marketing database,
only 680 e-mail addresses indicate that they are from persons who have an address in
the State of Connecticut. *See Interline's Supplemental Responses to Plaintiff's
Interrogatories dated June 8, 2005 ("Interline's June Discovery Responses")* at
**Exhibit 25** at Interrog. 16.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

88. Interline acquired, among other things, GATT's furniture, computers, office
    equipment, internet domain names, telephone numbers and customer lists by way of
    the foreclosure sale. *Boyd Dep.* at p. 70:18-24; *Juba Dep.* at p. 124:21-25.

89. In November 2001, Interline executed a short-term property lease and conducted its
    business operations at the same street address as GATT, but in a different office
    suite. *Boyd Dep.* at p. 73:5-6; *Juba Dep.* at pp. 102:24-25; 103:1-16; *Lease
    Agreement* at **Exhibit 26**.

90. Interline's management offered employment to some former GATT employees. *Boyd
    Dep. at p. 67:10-13; Juba Dep.* at 35:1-5.

91. The former GATT employees who were offered employment with Interline were
    required to submit formal employment resignation correspondence to GATT and
    complete new tax forms. *Boyd Dep.* at p. 68:19-24; *Juba Dep.* at p. 35:1-5; *Yo Dep.*
    at p. 58:3-7.

92. Following the foreclosure sale, Interline obtained a tax identification number, opened
    new bank accounts and negotiated new contracts with, among others, customers on
    GATT customer lists. *Boyd Dep.* at pp. 193:19-22, 199:5.

93. Interline also opened merchant accounts so that it could process credit card
    transactions and opened an account with the telephone company providing the

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS No. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

telephone numbers purchased at the foreclosure sale. *Juba Dep.* at pp. 42:3-7, 125:22-126:1.

94. Interline did not assume any of GATT's debts or contracts and notified GATT creditors after the foreclosure sale that they were not assuming GATT's liabilities. *Boyd Dep.* at p. 128:18-24; *Juba Dep.* at p. 127:9-23, 137:3-6.

95. GATT and Interline did not operate from the same business location. *Yo Dep. at pp. 65:20-66:8;101:1-7.*

96. At the time of the October 2001 foreclosure sale, GATT's business operations were located at 211 West 7th Street, <u>Suite 1100</u>, in Austin, Texas. *Juba Dep.* at p. 103:3.

97. Following Interline's purchase of GATT's assets at the foreclosure sale, Interline entered into a short-term lease for the premises located at 211 West 7th Street, <u>Suite 1120</u>, in Austin, Texas. *Boyd Dep.* at p. 74:10-11; *Juba Dep.* at pp. 102:24-25; 103:5-7; *Interline's May Discovery Responses* at Interrog. 2.

98. Interline occupied this space for only six months before it moved its business operations to its present address at 12708 Riata Vista Circle, Suite A-125 in Austin, Texas. *Interline's May Discovery Responses* at Interrog. 2.

99. GATTInc. is <u>not</u> an assumed name of GATT. *See Secretary of State Records for GATT.*

18

100.   Juba had differing responsibilities with GATT (President and Chief Operating

Officer) and Interline (Executive Vice President): *Juba Dep.* at pp. 122:11-14;

122:25:123:3; *see also Boyd Dep.* at p. 124:11-14.

101.   Juba assumed no managerial responsibilities with Interline until 2002. *Juba Dep.*

at p. 42:25-43:1.

102.   Plaintiff's Third Amended Complaint is the only pleading submitted to the Court

that mentions the October 30, 2001 foreclosure sale. *Complaint dated August 27,*

*2002* at Exhibit 1; *Amended Complaint dated May 12, 2003* at Exhibit 2; *Second*

*Amended Complaint dated July 28, 2003* at Exhibit 3; *Third Amended Complaint*

dated February 15, 2006 at Exhibit 4.

103.   Interline, who was owed $370,000 from GATT, purchased GATT's assets for

$340,000 at the foreclosure sale. *Taylor Aff.* at ¶12.

104.   Interline also purchased the debt of the first lien holder, Wells Fargo Bank for

$105,000. *See Transfer and Assignment of Debt, Claims and Security Interests.*

105.   Interline, after attempting to recover its own investment ($370,000), paying the

bid price ($340,000) and assuming Wells Fargo's first lien ($105,000), spent over

**$475,000** to acquire GATT's assets. *Boyd Dep.* at p. 36:1-3.

19

106.   The plaintiff has failed to allege any facts to show that Interline knew about

GATT's alleged debt to the plaintiff and conducted the foreclosure sale with the

specific intent to defraud the plaintiff.

107.   The plaintiff has failed to present any admissible evidence to show that Interline

knew about GATT's alleged debt to the plaintiff and conducted the foreclosure sale

with the specific intent to defraud the plaintiff.

108.   Juba, Boyd and O'Hayer were GATT shareholders who lost the value in their

shares of GATT when the company was foreclosed upon. *Juba Dep.* at p. 53:10-25;

*Boyd Dep.* at p. 183:6-11.

109.   Boyd and Fleischman lost the value of their loans to GATT ($370,000) as a result

of the foreclosure sale. *Juba Dep.* at p. 54:2-4; *Boyd Dep.* at p. 183:6-11.

110.   Boyd and Fleischman received no compensation as a result of working for several

months as GATT consultants. *Juba Dep.* at p. 54:2-4; *Boyd Dep.* at p. 7:7-8.

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797

Respectfully submitted,
DEFENDANT,
INTERLINE TRAVEL & TOUR, INC.

By: _____

LAURA F. BALDINI, ESQ.
Federal Bar Number ct19887
Law Offices Of Laura Flynn Baldini, LLC
74 Batterson Park Road, 2nd Floor
P.O. Box 887
Farmington, CT 06034-0887
Tel. (860) 676-3123
Fax. (860) 606-9797
LBaldini@FlyBal-Law.com
Juris. No. 421267

21

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was mailed via U.S. mail, postage prepaid on this

2nd day of November, 2007 to the following counsel of record:

Kevin P. Chamberlin, Esq.
Law Offices of Kevin P. Chamberlin
*Counsel for Plaintiff*
40 Lake Avenue Extension – Suite 4
Danbury, CT 06811

By:_____
        LAURA F. BALDINI, ESQ.
        Law Offices of Laura Flynn Baldini, LLC

LAW OFFICES OF LAURA FLYNN BALDINI, LLC • JURIS NO. 421267• LBALDINI@FLYBAL-LAW.COM
P.O. BOX 887 • 74 BATTERSON PARK ROAD • FARMINGTON, CT • 06034-0887 • TEL: (860) 676-3123 •FAX: (860) 606-9797