## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CALL CENTER TECHNOLOGIES, INC., | : | 3:03CV1036 (DJS) |
| Plaintiff, | : | |
| v. | : | |
| GRAND ADVENTURES TOUR & TRAVEL PUBLISHING CORPORATION, & INTERLINE TRAVEL & TOUR, INC., | : | |
| Defendants. | : | December 14, 2007 |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO INTERLINE TRAVEL & TOUR, INC.'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to F.R.C.P. 56 and Local Rule 56, the Plaintiff Call Center Technologies, Inc. ("Plaintiff" or "CCT"), hereby submits its Memorandum of Law in Opposition to Defendant Interline Travel & Tour, Inc.'s ("Interline") Motion for Summary Judgment, and in support hereof states as follows:

## I.    SUMMARY JUDGMENT STANDARD

As this Court explained in *Neary v. Metro. Prop. & Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 72524 (D. Conn. Sept. 27, 2007) (Squatrito, J.), "[a] party seeking summary judgment 'bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law.' *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-1061 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

1

157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). 'The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Id*. (citations omitted). 'If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain [] summary judgment.' *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations, alterations and quotations)."

Only once the moving party satisfies its initial burden of proving that there exists no genuine issue of material fact does the burden then shift to the non-moving party to show that a genuine issue of material fact really does exist. *Hughes v. City of Stamford*, 2004 U.S. Dist. LEXIS 5480 at * 18-19 (D. Conn. 2004) (Squatrito, J.) ("This is not a situation where the movant meets its initial burden of demonstrating no material issue of fact, thereby triggering the non-moving party's burden to produce evidence that there is indeed a material issue of fact."). Only "[i]f the movant demonstrates an absence of material issues of fact, [then] a limited burden of production shifts to the non-movant, which must demonstrate more than some metaphysical doubt as to the material facts, . . . and must come forward with specific facts showing that there is a genuine issue for trial." *B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2nd Cir. 1996) (internal citations and quotations omitted).

Even if the moving party demonstrates an absence of genuine issues of material fact, the moving party must then also prove that it is entitled to judgment as matter of law.

_Hughes v. City of Stamford_, supra, quoting _Celotex Corp. v. Catrett_, 477 U.S. 317, 330-31, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (Brennan, J. dissenting) ("The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment. . . . This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. . . . The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production.").

Where the non-moving party fails to satisfy its initial burden, then "it is not necessary for the non-moving party to present any evidence." _Hughes v. City of Stamford_, supra. This is such a case. The defendant Interline has failed to establish its initial burden of proving the absence of any genuine issue of material fact. Thus, the burden did not fall upon Plaintiff to show that there exists a genuine issue of material fact for trial. However, as discussed below, there are clearly genuine issues of material fact remaining in this case, and as such, Interline's motion for summary judgment should be denied.

## II.   SUCCESSOR LIABILITY STANDARD

### A.   Plaintiff may prevail at trial upon any of the legal theories under which the claim of Successor Liability may be established.

The plaintiff's claim in the present case against Interline is one for successor liability. Although successor liability may be established under a number of legal theories, a complaint alleging successor liability raises but one claim – successor liability – regardless of the number of legal theories relied upon to establish that liability, as Judge Dorsey has recently

explained in *Kuhns Brothers, Inc. et al. v. Fushi International, Inc.*, 2007 U.S. Dist. LEXIS 51461 at * 12 -17 (D. Conn. July 16, 2007), where the defendant who was not a party to the underlying contract alleged that a claim for successor liability had not been adequately pled. *Id* at * 11. In particular, the "[p]laintiffs ha[d] simply pled that [d]efendant 'was formerly known as Dalien Fushi Bimetallic Manufacturing Company, Ltd.,' which is not a party to this action." *Id* at * 12. Judge Dorsey found that the requirements of Rule 8(a), Fed.R.Civ.P., had been met, citing *Sealy Connecticut v. Litton Industries, Inc.*, 989 F. Supp. 120, 122-23 (D. Conn. 1997) (successor liability claim was adequately pled when only a bare allegation was made that the defendants were successors in interest), and *Infra-Metals Co. v. Topper & Griggs Group, Inc.*, 2005 U.S. Dist. LEXIS 31385 at * 6 - 8 (D. Conn. Nov. 30, 2005) (complaint adequately alleged successor liability by stating that the creditor transferred to the defendant "substantially all of its assets" and did not require the plaintiff to establish "factual predicates of successor liability exceptions.").

Judge Dorsey held that "[p]leading a successor liability claim in Connecticut need not contain specific facts or go beyond notice pleading requirements of Rule 8." *Kuhns Bros v. Fushi*, 2007 U.S. Dist. LEXIS at * 12. The Court also made clear that a *claim* for successor liability can involve a "fraud *theory*" requiring the pleading of averments of fraud with particularity, *Id* at * 15 n 7, but that the *claim* for successor liability is sufficiently plead even where a plaintiff does not "use the words 'successor liability'" *Id* at * 14. Thus, where the claim of successor liability is made, the claim is properly plead, and if a fraud theory is involved, a complaint may be amended to aver the fraudulent conduct with particularity, but this does not constitute bringing a separate *claim*. *See also Infra-Metals, supra*, 2005 U.S. Dist. LEXIS at * 8 n4 (providing that party may amend claim to plead a "fraud *theory*" with particularity).

4

1.    Plaintiff's Fraud Theory of Successor Liability Is Not Precluded

Interline argues in its Memorandum of Law In Support of Defendant Interline

Travel & Tour, Inc.'s Motion for Summary Judgment (the "Interline Brief"), that because

Plaintiff amended its complaint to add averments of fraud in its successor liability claim, that the

statute of limitations, Conn Gen. Stat. § 52-577, bars recovery (Interline Brief at 32 § 7).

Interline is clearly mistaken for several reasons. First, Interline confuses a legal theory of

recovery from a "claim." Plaintiff has not brought a "claim" of fraud or fraudulent conveyance,

but has rather brought but a single claim – that of successor liability. _Kuhns_, _supra_; _Infra-_

_Metals_, _supra_. Interline's reliance on _Infra-Metals_ (Interline Brief at page 34) is misplaced

because Interline relies upon the court's discussion of _fraudulent conveyance_ and _common law_

_fraud_ claims which were also made in that complaint, rather than the successor liability claim.

_See Infra-Metals_, supra at * 9 – 13. And even failure of a fraudulent conveyance claim does not

preclude recovery for successor liability. _See Miller v. Forge Mensch P'ship._, 2005 U.S. Dist.

LEXIS 1524 at * 37 (S.D.N.Y. 2005), discussed _infra_ at page 10. However, CCT did not bring a

new claim. Thus, the amendment to the complaint averring "fraud" relates back to the original

complaint and was not barred by the statute of limitations.

Second, even if such were a separate "claim," Interline did not raise the statute of

limitations as an affirmative defense in its answer (docket entry 131), notwithstanding making

fifteen affirmative defenses, and thus Interline has waived any reliance on the statute of

limitations. "The statute of limitations is an affirmative defense that is waived if not raised."

_Kropelnicki v. Siegel_, 290 F.3d 118, 130 n7 (2nd Cir. 2002), citing Fed. R. Civ. P. 8(c); _Santos v._

_District Council_, 619 F.2d 963, 967 n.5 (2d Cir. 1980).

**B.**    **Interline Has Failed To Show The Absence Of Any Genuine Issues as to Material Facts**

1.    Interline's Argument as to "GATTInc." is Without Merit

Interline makes much to do about the fact that the Customer Agreement's preamble recited that "This agreement . . . is made . . . by and between Call Center Technologies, Inc. . . . and Grand Adventures Tour & Travel, Inc." rather than stating "Grand Adventures Tour & Travel Publishing Corporation." *See* Interline Brief at 2, 3, 5, 6, 7, 8, 20 and 37.

As set forth in the Affidavit of Dean Vlahos in Opposition to Interline Travel & Tour, Inc.'s Statement of Undisputed Facts (the "Vlahos Affidavit"), the reference to "Grand Adventures Tour & Travel, Inc." in the preamble was a typographical error. Vlahos Affidavit at ¶ 8. However, the agreement *was* signed and ratified by Grand Adventures Tour & Travel Publishing Corporation, as the real party in interest, and thus the error is immaterial. *See Page v. United States*, 49 Fed. Cl. 521, 524 (2001), where the Court of Claims explained that "[t]he United States Supreme Court has observed that 'a contract is not avoided by misnaming the corporation with which it is made.' *County of Moultrie v. Fairfield*, 105 U.S. 370, 377, 26 L. Ed. 945 (1881). It is well understood that a mere misnomer of a corporation in a written instrument or other business transaction is not material in its consequences 'if the identity of the corporation intended is clear or can be ascertained by proof.' 6 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 2444 (1996). 'As long as the identity of the corporation can be reasonably established from the evidence[,] . . . error in the use of the corporate name will not be permitted to frustrate the intent which the name was meant to convey.' *Id.*

Specifically, the Customer Agreement was signed by Grand Adventures Tour & Travel Publishing Corporation indicating itself as "GATT," by and through its Chief Executive Officer Matthew O'Hayer (Customer Agreement attached as Exhibit A to Third Amended Complaint (the "Agreement") at 6). As established by the default entered in this action against Grand Adventures Tour & Travel Publishing Corporation ("GATT") (docket entry 188), pursuant to the Agreement, GATT purchased from Plaintiff certain telecommunications goods called an Aspect Call Center and additional Aspect parts (Third Amended Complaint ¶¶ 14 & 30) which GATT used for approximately one year (Id at ¶ 34). GATT ratified the Agreement by returning the original to Plaintiff's Connecticut offices executed by its C.E.O. Matthew O'Hayer (Id at ¶ 25; Vlahos Affidavit at ¶ 9) remitting therewith an initial deposit called for under the Agreement in the form of a check drawn upon a bank account of Grand Adventures Tour & Travel Publishing Corporation, in the amount of $35,000.00 (Third Amended Complaint ¶ 26 & exhibit B; Interline Exhibit 5 at exhibit B; Vlahos Affidavit ¶ 9). GATT further ratified the Agreement by accepting delivery and using the Equipment purchased under the Customer Agreement, and by enforcing its rights under the Agreement by making demands for performance through its attorney (Vlahos Affidavit ¶¶ 11 - 14).

Because Grand Adventures Tour & Travel Publishing Corporation did in fact sign the contract and ratified it notwithstanding the error in the preamble, there is absolutely no merit whatsoever in Interline's form over substance argument as to the misnomer.

2.    The Entry of Default of Grand Adventures Tour & Travel Publishing
Corporation establishes the fact of its liability to Plaintiff.

Interline's Brief makes innumerable references to the underlying facts which form

the basis of Plaintiff's claim against Grand Adventures Tour & Travel Publishing Corporation

("GATT"), however the default entered against GATT (docket entry 188) admits all well-pleaded

allegations of the complaint and establishes the fact that GATT was liable to the Plaintiff under

the Customer Agreement. *D.H. Blair & Co. v. Gottdiener*, 462 F.2d 95, 108 (2nd Cir. 2006); *Vt.*

*Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2nd Cir. 2004). Thus, no genuine

issue of material fact exists as to the underlying liability of GATT to CCT, and to the extent that

Interline's motion for summary judgment attacks GATT's judicial admissions or that liability,

Interline's motion must fail.

3.    Under the "Continuation of Enterprise" or "Mere Continuation" theories,
there exist genuine issues of material fact as to Interline's liability to
Plaintiff as successor of GATT.

Several recent decisions of this Court on the subject of successor liability illustrate

that Interline cannot prevail on its motion for summary judgment. First, in *Kuhns Brothers, Inc.*

*et al. v. Fushi International, Inc.*, *supra*, 2007 U.S. Dist. LEXIS 51461 at * 12 -17 (D. Conn. July

16, 2007), Judge Dorsey held that "[t]he question of whether [d]efendant is actually a successor

in interest to [predecessor] is a question of fact . . ." *Id* at * 14 n 6, and the Court relied upon

facts set forth in an S.E.C. Form 8-K for evidence of successor liability. *Id* at * 17 n8. Interline

has failed to show how there are ***no*** genuine issues as to this factual inquiry.

8

In *Mavel v. Scan-Optics, Inc.*, 509 F. Supp. 183 (D. Conn. Sept. 14, 2007), a pre-judgment remedy was granted in a successor liability case, where the successor argued that the predecessor "was not acquired directly by it pursuant to a traditional purchase agreement, but by a Foreclosure Agreement which specifically excludes liability. . ." *Id* at 188 n3. In analyzing a successor liability claim, "factors relevant to the mere continuation exception include continuity of management; continuity of personnel; continuity of physical location, assets and general business operations; and cessation of the prior business shortly after the new entity is formed. . . . Also relevant is the extent to which the successor intended to incorporate the predecessor into its system with as much the same structure and operation as possible. . . . Thus the court should determine whether the purchaser holds itself out to the world as the effective continuation of the seller." *Id* at 188. Moreover, the Court noted that "the proponent of successor liability need not establish all of these factors, [but] the balance must tip in its favor." *Id*.

Additionally, the Court noted that "[u]nder the continuity of enterprise theory, a finding of successor liability is not dependent on an exchange of shares. *See Miller v. Forge Mench P'ship*, 2005 U.S. Dist. LEXIS 1524, 2005 WL 267551 *8 (S.D.N.Y. Feb. 2, 2005) (mere continuation found when the individual shareholders of the creditor company acquired a debtor company through foreclosure sale after default)." *Mavel, supra*, 509 F. Supp at 189.

The circumstances of *Mavel* and *Miller v. Forge Mench* are both quite similar to the present case as both involved an attempt to avoid successor liability through conducting of a "foreclosure."

9

In *Mavel*, the successor "continued to operate without interruption the same general business formerly operated by [the predecessor and] hired approximately 75 employees of SOI who reported to the same business location . . . the day after the acquisition," *Id* at 189, although there had been some substantial downsizing. *Id* at n5.  The successor hired two of the predecessors managers, and "[t]hose managers and employees continued to work at the same job, performing the same functions at the same computers, at the same desks they used when they worked for [the predecessor]." *Id* at 189.  Although the successor discontinued operations of certain divisions, the successor "has continued to operate a business focused on" the same business as the predecessor. *Id*.

*Mavel*'s facts are very similar to the present case, where the day of the alleged "foreclosure auction," Duane K. Boyd arrived at the offices of GATT where everyone had shown up for work that day as usual, notwithstanding the apparent futility, given that the scheduled "foreclosure auction" of all of the company's assets was to happen that day.  Joseph Juba, who was at the time of the "foreclosure" the only officer of GATT, did not attend the "foreclosure" and was not surprised to see Mr. Boyd arrive at GATT's offices shortly after the "foreclosure" and to hear that nobody else had been at the "auction." (Juba Deposition, Interline Exhibit 12, 159:5-24).  The next day, everyone reported to work as usual (Yo Deposition, 39:6 – 41:24), and in fact, Juba immediately became an employee of Interline, was given a raise, and "hired" the GATT employees (Yo Deposition at 56:8 – 12; Juba Deposition at 130:15 – 20).

In *Miller v. Forge Mench P'ship*, *supra*, an actual U.C..C. foreclosure auction was held in compliance with the terms of the U.C.C., but successor liability was found notwithstanding.  As the Court held, "courts have rejected the view that a foreclosure sale

conducted under section 9-504 of the UCC precludes the imposition of successor liability.  As

the First Circuit stated in *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252 (1st Cir.

1997), existing case law overwhelmingly confirms that an intervening foreclosure sale affords an

acquiring corporation no automatic exemption from successor liability." *Id.* at 267.  . . . . Nor

does this court's rejection above of plaintiff's fraudulent conveyance claims in any way preclude a

finding of successor liability here. *See Glynwed*, 869 F. Supp. at 276-78 (dismissing fraudulent

conveyance claim even while imposing successor liability under de facto merger/mere

continuation doctrine); *Ed Peters Jewelry Co.*, 124 F.3d at 267 ("True, [the foreclosing bank]

might have sold the [debtor's] assets to an entity with no ties to [the [*38] debtor], but that is

beside the point, since [plaintiff's] successor liability claim alleges that [defendant] is [the debtor]

in disguise."). *Miller v. Forge Mensch, supra*, 2005 U.S. Dist. LEXIS 1524 at * 36 – 37.

      Thus, *Miller v. Forge Mensch* illustrates that whether or not Interline "purchased"

or otherwise acquired the assets of GATT through a "foreclosure auction," legitimate or not, is

not material to Plaintiff's claim of successor liability.


        4.    <u>Interline Has Failed To Show The Absence Of Any Genuine Issue of</u>
              <u>Material Fact as to Personal Jurisdiction</u>

      Interline attacks, as it had throughout this case, the personal jurisdiction of this

Court notwithstanding that Interline invoked this Court's jurisdiction by removing this case from

state court.  Interline Brief at 38.  Because specific personal jurisdiction over GATT obtained

under the Customer Agreement, this Court has personal jurisdiction over Interline. *LiButti v.*

*United States*, 178 F.3d 114, 123 (2nd Cir. 1999) ("when a person is found to be a successor in

interest, the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contacts with the state."); *see also Tex. Int.'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. Appx. 738, 739-40 (2nd Cir. 2002); *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653-54 (7th Cir. 2002) ("federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. . . Similarly, imputing a predecessor corporation's waiver of personal jurisdiction to its successor corporation when the successor is a "mere continuation" of the predecessor is also consistent with the principles underlying this exception to the general rule against successor liability.")

## IV.  CONCLUSION

For all the foregoing reasons, Interline's motion for summary judgment should be denied.

PLAINTIFF,
CALL CENTER TECHNOLOGIES, INC.

By _____/h_____

Kevin P. Chamberlin
Federal Bar No. ct26843
40 Lake Avenue Extension – Suite 4
Danbury, CT 06811
Phone: 203-792-0011
Fax: 203-792-3370
Chamberlinlaw@comcast.net

Dated: December 14, 2007

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CALL CENTER TECHNOLOGIES,    :    CIVIL ACTION NO. 3:03CV1036
(DJS)

        Plaintiff,

v.

GRAND ADVENTURES TOUR &
TRAVEL PUBLISHING CORPORATION,
INTERLINE TRAVEL & TOUR, INC.

        Defendants.    :    DECEMBER 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2007, a copy of foregoing, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Kevin P. Chamberlin
Kevin P. Chamberlin
Federal Bar No. ct26843
40 Lake Avenue Extension – Suite 4
Danbury, CT  06811
Phone: 203-792-0011
Fax:  203-792-3370
Chamberlinlaw@comcast.net

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CALL CENTER TECHNOLOGIES, INC., | : | 3:03CV1036 (DJS) |
| Plaintiff, | : | |
| v. | : | |
| GRAND ADVENTURES TOUR & TRAVEL PUBLISHING CORPORATION, & INTERLINE TRAVEL & TOUR, INC., | : | |
| Defendants. | : | December 14, 2007 |

## PLAINTIFF'S RULE 56(a)(2) STATEMENT IN OPPOSITION TO INTERLINE TRAVEL & TOUR, INC.'S STATEMENT OF UNDISPUTED FACTS

Pursuant to F.R.C.P. 56 and Local Rule 56(a)(2), the Plaintiff Call Center Technologies, Inc. ("Plaintiff" or "CCT"), responding with respect to each numbered paragraph of the Defendant Interline Travel & Tour, Inc.'s ("Interline") Statement of Undisputed Facts, that the allegations are hereby:

1.  Denied.  The Customer Agreement was signed by Grand Adventures Tour & Travel Publishing Corporation indicating itself as "GATT," by and through its Chief Executive Officer Matthew O'Hayer (Customer Agreement attached as Exhibit A to Third Amended Complaint (the "Agreement") at 6).  As established by the default entered in this action against Grand Adventures Tour & Travel Publishing Corporation ("GATT") (docket entry 188), pursuant to the Agreement, GATT purchased from Plaintiff certain telecommunications goods called an Aspect Call Center and additional Aspect parts

1

(Third Amended Complaint ¶¶ 14 & 30) which GATT used for approximately one year (Id at ¶ 34). GATT ratified the Agreement by returning the original to Plaintiff's Connecticut offices executed by its C.E.O. Matthew O'Hayer [Id at ¶ 25; Affidavit of Dean Vlahos In Opposition To Interline Travel & Tour, Inc.'s Statement Of Undisputed Facts ("Vlahos Affidavit") at ¶ 9] remitting therewith an initial deposit called for under the Agreement in the form of a check drawn upon a bank account of Grand Adventures Tour & Travel Publishing Corporation, in the amount of $35,000.00 (Third Amended Complaint ¶ 26 & exhibit B; Interline Exhibit 5 at exhibit B; Vlahos Affidavit ¶ 9). GATT further ratified the Agreement by accepting delivery and using the Equipment purchased under the Customer Agreement, and by enforcing its rights under the Agreement by making demands for performance through its attorney (Vlahos Affidavit ¶¶ 11 - 14).

2.   Denied. The Purchase Price was $130,090.00 plus installation charges of $6,000.00 as stated on the Order Schedule attached as exhibit A to the Agreement for a total Purchase Price of $136,090.00 (Agreement ¶¶ 1(a) & 2 and exhibit A at 2; Third Amended Complaint ¶ 31; Vlahos Affidavit ¶ 18).

3.   Admitted that no genuine issue exists as to the facts alleged, but denied that the facts alleged are material to Plaintiff's claim against Interline Travel & Tour, Inc. ("Interline") for successor liability. The Plaintiff's performance under the Agreement and the liability of GATT to Plaintiff are established by GATT's default in this action (docket entry 188), and are not material to whether Interline is liable to the Plaintiff as the successor of GATT.

2

4.     Denied.  The entity which entered into, ratified, and exercised its legal rights under the Agreement was Grand Adventures Tour & Travel Publishing Corporation as set forth in ¶ 1 above, not Grand Adventures Tour & Travel, Inc. ("GATTInc."), as such was a mere typographical error (Vlahos Affidavit ¶ 8) and no additional entity existed apart from GATT.  The Plaintiff's performance under the Agreement and the liability of GATT to Plaintiff are established by GATT's default in this action (docket entry 188), and are not material to whether Interline is liable to the Plaintiff as the successor of GATT.

5.     Admitted.

6.     Admitted that no genuine issue exists as to the facts alleged, but denied that the facts alleged are material to Plaintiff's claim against Interline for successor liability.  The Plaintiff's performance under the Agreement and the liability of GATT to Plaintiff are established by GATT's default in this action (docket entry 188), and are not material to whether Interline is liable to the Plaintiff as the successor of GATT.

7.     Admitted in part.  Plaintiff hereby incorporates by reference its response to ¶ 6 above as if fully set forth herein.

8.     Denied.   Plaintiff hereby incorporates by reference its responses in ¶¶ 1 & 4 above as if fully set forth herein.

9.     Admitted.

10.    Denied.  Plaintiff hereby incorporates by reference its response in ¶¶ 1 & 4 above as if fully set forth herein.

11.    Denied.  The Plaintiff's performance under the Agreement and the liability of GATT to Plaintiff are established by GATT's default in this action (docket entry 188), and are not

3

material to whether Interline is liable to Plaintiff as successor of GATT. Further, Plaintiff advertised and distributed refurbished Aspect equipment with knowledge and consent of Aspect but had no formal relationship with Aspect [Vlahos Affidavit ¶ 15; Deposition of Dean Vlahos ("Vlahos Deposition") at 71:23-24, attached as Exhibit 9 to Defendant Interline Travel & Tour Inc.'s Exhibits to Memorandum of Law in Support of Motion for Summary Judgment ("Interline Exhibits")].

12. Denied. Plaintiff hereby incorporates by reference its responses in ¶¶ 1 & 4 above as if fully set forth herein.

13. Admitted that Plaintiff has not produced admissible evidence to establish that it made efforts to repossess the equipment it sold to GATT, but denied that same is material to either GATT's liability to Plaintiff or Interline's liability to Plaintiff as successor of GATT. Plaintiff had no duty to repossess and did not want to rescind the Agreement but rather sought performance (Vlahos Deposition, Interline Exhibit 9, at 140:24-141:1). Denied that Plaintiff did not make any demands on GATT to pay for the goods supplied to GATT. CCT made demands by telephone and in writing through a collection agency (Vlahos Deposition 137:25 - 140:17). The Plaintiff's performance under the Agreement and the liability of GATT to Plaintiff are established by GATT's default in this action (docket entry 188), and are not material to Plaintiff's claim against Interline for successor liability.

14. Denied. CCT's shipping record is attached as Exhibit B to the Vlahos Affidavit (Vlahos Affidavit ¶ 17).

15.     Denied.  Plaintiff hereby incorporates by reference its responses in ¶¶ 1 - 4 above as if

        fully set forth herein. Admitted that there are no genuine issues as to the facts alleged as

        related to Grand Adventures Tour & Travel Publishing Corporation.

16.     Denied.  Plaintiff hereby incorporates by reference its responses in ¶¶ 1 - 4 above as if

        fully set forth herein. Admitted that there are no genuine issues as to the facts alleged as

        related to Grand Adventures Tour & Travel Publishing Corporation.


17.     Admitted that there are no genuine issues as to the facts alleged, but denied that the facts

        alleged are material to Plaintiff's claim against Interline for successor liability.

18.     Denied.  The Agreement granted Plaintiff a security interest in the Equipment

        (Agreement ¶ 13 at 4), and the facts alleged are not material to Plaintiff's claim against

        Interline for successor liability.

19.     Denied.  The statement is a conclusion of law and not an allegation of fact, and in any

        event, the allegations made are not material to Plaintiff's claim against Interline for

        successor liability.

20.     Admitted that there are no genuine issues as to the facts alleged, but denied that the facts

        alleged are material to Plaintiff's claim against Interline for successor liability.

21.     Admitted.

22.     Admitted.

23.     Denied that GATT's management as of November 21, 2000 "consisted of" the individuals

        identified, but admitted that such individuals were included among GATT's management

        as of such date.  The SEC Form 10-QSB cited by Interline does not purport to list the

entire management of GATT but merely states that the individuals identified were elected to serve on the Board of Directors until the next annual meeting.

24. Denied that GATT's business "consisted of" travel services alleged, but admitted that GATT's business included such travel services.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted that GATT retained Boyd and Capital Vision Group, Inc. as consultants in the Spring of 2001, and admitted that Fleischman was of Capital Vision Group, Inc. Denied as to remaining allegations. Plaintiff objects to the admissibility of the exhibits relied upon as hearsay.

29. Admitted that existence of consulting agreements entered into by GATT was disclosed to the public. Denied as to whether consulting agreements attached as Interline Exhibits 16 & 17 constitute such disclosed consulting agreements. Plaintiff objects to the admissibility of the Interline Exhibits 16 & 17 consulting agreements as hearsay.

30. Admitted.

31. Admitted that after Boyd was retained by GATT, he resigned as a director of GATT. Denied as to characterization of period of time being "shortly" after Boyd was retained as consultant. Boyd did not resign as a director of GATT until June 2, 2001 (SEC Form 8-K dated June 15, 2001 attached as Interline Exhibit 18 at 1).

32.    Denied.  Fleischman sat in on board of directors meetings [Deposition of Joseph "Jay"
       Juba attached as Interline Exhibit 15 ("Juba Deposition") at 11:6 - 13:17, 19:13 - 21:2]
       and may have therefore been a de facto director. *See Colby v. Klune*, 178 F.2d 872, 873-
       74 (2nd Cir. 1949).

33.    Admitted.

34.    Admitted.

35.    Denied.  Boyd's role may have rendered him a de facto officer. *See Colby v. Klune*, 178
       F.2d 872, 873-74 (2nd Cir. 1949).

36.    Denied.  Interline has produced no proof of actual payments made by Boyd or
       Fleischman.  The deposition testimony cited does not allege any payments by Fleischman.

37.    Admitted except as to "on May 24, 2001."  Although the date of May 24, 2001 appears in
       the upper right hand corner of the line of credit document [attached as "Loan Document
       B" to Exhibit B to the Timothy Taylor Affidavit attached as Interline Exhibit 19 (the
       "Taylor Affidavit") and bearing bates number ITT00436], does not state its effective date
       or indicate the date it was signed.

38.    Denied that the Promissory Note attached as Exhibit B to the Taylor Affidavit attached as
       Interline Exhibit 19 (and bearing the date of July 18, 2001 and bates number ITT00429)
       "formalized" the line of credit referenced in ¶ 37 above.

39.    Admitted.

40.     Admitted except as to "on May 24, 2001." Although the date of May 24, 2001 appears in the upper right hand corner of the line of credit document (attached as part of Exhibit B to the Taylor Affidavit attached as Interline Exhibit 19 and bearing bates number ITT00547), does not state its effective date or indicate the date it was signed.

41.     Denied. The document referenced by Interline, Exhibit A to the Taylor Affidavit attached as Interline Exhibit 19 (entitled "Security Agreement" and bearing bates number ITT00457 – ITT00472) does not purport to reflect any actual "loan" but merely references various agreements to loan.

42.     Denied that the allegation is one of fact.

43.     Denied. The documents referenced in Exhibit B to the Taylor Affidavit bearing the date of July 18, 2001 (i.e., "Promissory Note" bearing bates number ITT00429 - ITT00435, "Promissory Note/Line of Credit" bearing bates number ITT00436 - ITT00442, "Promissory Note/Line of Credit" bearing bates number ITT00547 - ITT00553, and "Promissory Note" bearing bates number ITT00554 - 00560), as well as the document referenced in Exhibit A to the Taylor Affidavit bearing the same date (bearing bates number ITT00457 - 00472) do not purport to show any actual "loans," but rather purport only to be agreements regarding making of loans. The documents referenced state the dates they would be deemed effective but do not indicate when they were actually signed.

44.     Denied. The documents referenced do not purport to show any actual "loan," but rather purport only to be agreements regarding the making of loans. The documents referenced state the dates they would be deemed effective but do not indicate when they were actually executed.

8

45.   Admitted that the financing statements were filed with the Travis County Clerk. Denied that "GATT filed" same or that GATT filed same "for Boyd and Fleischman."

46.   Admitted.

47.   Admitted that by Summer of 2001, GATT was operating at a loss. Denied that GATT then had few tangible assets. The SEC Form 10-QSB for the quarter ended September 30, 2000 attached as Interline Exhibit 13 at page 2 shows GATT had as of September 20, 2000 total assets of $12,683,090.00 of which $1,724,114.00 is identified as Property and Equipment, at cost, net of accumulated depreciation.

48.   Admitted.

49.   Admitted.

50.   Admitted.

51.   Admitted.

52.   Denied. Joseph Juba testified that after he received the October 9, 2001 notice letter from Jackson Walker that GATT only sought to obtain loans and did not take any other actions to forestall the foreclosure. Juba Deposition at 171:2 - 23.

53.   Admitted.

54.   Admitted.

55.   Admitted that the letters attached as Taylor Affidavit Exhibits C & D ("Notices of Intent to Accelerate") state that GATT had defaulted on certain agreements. Denied that the Notices of Intent to Accelerate or the documents referenced therein prove or indicate any actual "loans" or defaults. Defendant has produced no evidence of any actual loan(s) made by either Boyd or Fleischman to GATT.

9

56.    Admitted that the Notices of Intent to Accelerate purported to give GATT until October 19, 2001 to pay certain amounts. Denied that there were any amounts actually due and owing or advanced to GATT. Defendant has produced no evidence of any actual loan(s) made by either Boyd or Fleischman to GATT.

57.    Admitted except as to "executed" "on" October 19, 2001. The documents referenced state the dates they were to be deemed effective but do not indicate when they were actually executed.

58.    Admitted that on October 19, 2001, Jackson Walker LLP representing Interline Travel & Tour, Inc. sent GATT a notice. Denied as to the remaining allegations. The document referenced does not purport to be a "notice of intent to accelerate."

59.    Admitted that the document referenced purports to give GATT until October 29, 2001 to pay certain amounts. Denied that there were any amounts actually due and owing as alleged. Defendant has produced no evidence of any actual loan(s) made by either Boyd or Fleischman to GATT.

60.    Denied. Juba and Boyd testified that GATT made payments [Juba Deposition 129:16 - 130:1; Deposition of Duane K. Boyd attached as Interline Exhibit 15 ("Boyd Deposition") at 35:1 - 4, 21-25], and Defendant has produced no evidence of any actual loan(s) made by either Boyd or Fleischman to GATT.

61.    Admitted except as to existence of "GATT's indebtedness to Interline." Defendant has produced no evidence of any actual loan payments made by either Boyd or Fleischman to GATT.

62.    Admitted.

63.    Admitted except as to the characterization of the notice as "advising the public." The notice was insufficient to "advise" or to place "the public"on notice and reached only the local community in the vicinity of GATT's corporate offices rather than the public at large to whom GATT solicited its stock and conducted its affairs on a national and international basis.

64.    Denied. Interline as an alleged lien holder did not purport to purchase GATT's assets but rather to have accepted its alleged collateral in full satisfaction of GATT's alleged obligation(s). Additionally, there is a genuine issue of material fact as to whether any actual foreclosure sale occurred; Defendant Interline initially plead that "Interline . . . admits that it acquired some of GATT's assets through a public foreclosure sale." (docket entry 29 ¶ 19), but then amended its answer to the second amended complaint to remove such allegation (docket entry 30 ¶ 19) and then moved (docket entry 33) to again amend its answer to the ¶ 19 of the Second Amended Complaint to re-plead that Interline "acquired assets of GATT through a lawful public foreclosure sale" (docket entry 35 at ¶ 19), thereby creating a genuine issue of material fact as to whether any foreclosure sale did or did not occur.

65.    Denied that Interline Travel & Tour, Inc. was a "purchaser" or that it "bid." Interline as an alleged lien holder did not purport to purchase GATT's assets but rather to have accepted its alleged collateral in full satisfaction of GATT's alleged obligation(s).

66.    Admitted that there were no bidders and that Wells Fargo held a first lien upon GATT's assets. Denied that Interline "bid" or that Interline "purchased" GATT's assets at the sale. See response to ¶ 65 above.

11

67.   Admitted.

68.   Admitted that there are no genuine issues as to the facts alleged, but denied that the facts
      alleged are material to Plaintiff's claim against Interline for successor liability.

69.   Admitted.

70.   Admitted.

71.   Admitted.

72.   Admitted except as to "privately held."  Synergy Brands, Inc., a publically traded
      company, owns approximately 21% of Interline (Boyd Deposition at 161:8 - 17).

73.   Admitted.

74.   Admitted.

75.   Denied.  Plaintiff objects to Interline's reliance upon its own responses to discovery
      requests to support its own motion for summary judgment as self-serving and hearsay.
      *Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A.
      Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).

76.   Denied.  Boyd's testimony was that Juba, Cruz & Silva became officers or directors in
      2002 "just to execute documents and stuff" and thereby gained management duties (Boyd
      Deposition at 124:15-21).  Whether their roles either before or after becoming officers
      and directors were managerial in nature is a conclusion and matter of opinion.  Juba had
      managerial duties immediately following the alleged foreclosure sale as Juba offered In
      Churl Yo continued employment by Interline (Yo Deposition at 56:8 – 12) and Juba
      received a raise indicating his role as a key employee (Juba Deposition at 130:15 – 20).

12

77.     Denied.  Plaintiff objects to Interline's reliance upon its own responses to discovery

requests to support its own motion for summary judgment as self-serving and hearsay.

*Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A.

Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).

78.     Denied.  "Interline is engaged in the business of providing discounted rates on cruises,

hotels and resorts to active and retired airline employees, their parents, family members

and friends." (Boyd Affidavit, attached as Interline Exhibit 24, at ¶ 3).

79.     Admitted except as to allegations that Interline "purchased" web site (see Response to ¶

65 above) and that foreclosure sale actually occurred (see Response to ¶ 64 above).

80.     Denied.  Plaintiff objects to Interline's reliance upon its own responses to discovery

requests to support its own motion for summary judgment as self-serving and hearsay.

*Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A.

Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).

81.     Denied.  Interline also performs its operations on the internet through its interactive web

site (see ¶ 79 above; Vlahos Affidavit at ¶¶ 19 - 24) and thus performs its operations

nationally including in the State of Connecticut.

82.     Admitted.

83.     Admitted.

84.     Admitted.

85.     Admitted.

86.     Denied.  Plaintiff objects to Interline's reliance upon its own responses to discovery requests to support its own motion for summary judgment as self-serving and hearsay. *Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).

87.     Denied.  Defendant may not rely upon its own responses to discovery requests to support its own motion for summary judgment as self-serving and hearsay.  *Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).  Moreover, email addresses by definition do not indicate geography.

88.     Admitted except as to allegation that Interline "acquired" the listed assets by way of a "sale."  See response to ¶ 65 above.

89.     Denied.  In Churl Yo testified that Interline initially operated out of the identical offices as GATT using the same computers, furniture, software, and toll free telephone number as GATT, and eventually reduced its office space in the same building and finally relocated to new offices in May of 2002, approximately six months after taking over operations of GATT.  (Yo Deposition at 39:15 – 43:2)

90.     Denied as to "some."  The majority of GATT employees as of the date of the alleged foreclosure sale showed up for work the next day as Interline employees. (Boyd Deposition at 67:22 - 25)

91.     Admitted as to tax forms.  Denied as to resignation correspondence.

92.    Denied.  Boyd's testimony was as to the period from the day Interline was incorporated

on October 15th, '01 and not following the foreclosure sale (Boyd Deposition at 192:19 -

22).

93.    Admitted that Interline opened merchant accounts, but denied as to the point in time, and

denied that Interline "opened an account with the telephone company." The testimony of

Juba was only that Interline "gave them deposits in lieu of future service." (Juba

Deposition at 125:22 - 126:1).

94.    Denied.  Interline recognized certain pre-paid expenses and unearned income of GATT.

Interline honored and/or recognized certain accumulated vacation time of GATT

employees ($15, 292.07), accrued payroll taxes ($1,169.84), deferred cruise revenue

($83,675.68), and deferred hotel revenue ($108,358.30) (Interline Net Assets Acquired,

Plaintiff's Deposition Exhibit 24, attached to Vlahos Affidavit as Exhibit F; Boyd

Deposition at 86:4 – 25).  Interline also honored pre-paid travel of GATT's customers

who had not yet traveled as of the date of the alleged foreclosure auction by giving

equivalent discounts against future purchases or equivalent value as free giveaways (Id at

89:10 – 90:16).  Boyd and Fleischman's security agreements which were subsequently

transferred to Interline granted a security interest in, among other things, all of GATT's

contract rights under any contracts of GATT and all of GATT's rights in all litigation

then or thereafter pending for any cause or claim and all judgments then or thereafter

arising therefrom (Interline Exhibit 19 at exhibit A at II (f)), bates number ITT00459)

95.     Denied.  In Churl Yo testified that Interline initially operated out of the identical offices as GATT using the same computers, furniture, software, and toll free telephone number as GATT, and eventually reduced its office space in the same building and finally relocated to new offices in May of 2002, approximately six months after taking over operations of GATT.  (Yo Deposition at 39:15 – 43:2)

96.     Admitted that GATT had business operations located at Suite 1100.  Denied that such location is where all of GATT's business operations were located.  In Churl Yo testified that before the alleged foreclosure sale GATT operated from two floors, being the 9th and 11th floors of the office building it occupied (Yo Deposition at 65:20 – 66:15).

97.     Denied.  In Churl Yo testified that Interline initially operated out of the identical offices as GATT using the same computers, furniture, software, and toll free telephone number as GATT, and eventually reduced its office space in the same building and finally relocated to new offices in May of 2002, approximately six months after taking over operations of GATT. (Yo Deposition at 39:15 – 43:2).  Plaintiff further objects to Interline's reliance upon its own responses to discovery requests to support its own motion for summary judgment as self-serving and hearsay.  *Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).

98.     Admitted that Interline occupied space at 211 West 7th Street in Austin, Texas for six months before it moved to its present address.  Denied as to suite number at 211 West 7th Street.  In Churl Yo testified that Interline initially operated out of the identical offices as GATT using the same computers, furniture, software, and toll free telephone number as

16

GATT, and eventually reduced its office space in the same building and finally relocated to new offices in May of 2002, approximately six months after taking over operations of GATT. (Yo Deposition at 39:15 – 43:2). Plaintiff further objects to Interline's reliance upon its own responses to discovery requests to support its own motion for summary judgment as self-serving and hearsay. *Jorgensen v. Sony/Epic Records*, 351 F.3d.46, 54 n7 (2nd Cir. 2003); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*: Civil 2d § 2180 at 340-41 (1994).

99.    Admitted that there are no genuine issues as to the facts alleged, but denied that the facts alleged are material to Plaintiff's claim against Interline for successor liability.

100.   Admitted that Juba's titles were initially not the same but denied that responsibilities were "differing."

101.   Denied. Juba's testimony was merely that he did not become an officer until 2002 (Juba Deposition 42:24 – 43:1).

102.   Admitted that there are no genuine issues as to the facts alleged, but denied that the facts alleged are material to Plaintiff's claim against Interline for successor liability.

103.   Denied. Plaintiff objects to Interline's reliance upon the Taylor Affidavit as hearsay as to what, if anything, GATT "owed" Interline. Plaintiff further incorporates its response in ¶ 64 above as if fully set forth herein.

104.   Denied.

105.   Denied. Interline did not purport to "pay" any amount at the alleged foreclosure sale, and Interline has produced no evidence of any actual investment in GATT or actual loans made by Boyd, Fleischman, or Interline to GATT.

106. Denied. Boyd and Fleischman knew of the Customer Agreement as they Boyd and Fleischman's security agreement which was subsequently transferred to Interline granted a security interest in, among other things, all of GATT's contract rights under any contracts of GATT, including the Customer Agreement, and all of GATT's rights in all litigation then or thereafter pending for any cause or claim and all judgments then or thereafter arising therefrom (Interline Exhibit 19 at exhibit A at II (f)), bates number ITT00459). Whether Plaintiff alleged that Interline conducted a foreclosure sale with the intent to defraud Plaintiff specifically as opposed to GATT's creditors generally, is not material to whether Interline is liable to Plaintiff as the successor of GATT. Successor Liability does not depend upon a specific intent to defraud a specific party or the existence of "intent to defraud" but rather may, as one legal theory, challenge whether the alleged successor's transactions were made fraudulently or to escape liability.

107. Plaintiff hereby incorporates its response in ¶ 106 above as it fully set forth herein.

108. Denied. GATT had been de-listed before the scheduled foreclosure sale (SEC Form 8-K filed April 9, 2001 attached as Exhibit G to Vlahos Affidavit) thus any loss in value of shares in GATT occurred before the foreclosure sale as no market existed.

109. Denied. Boyd and Fleischman sought to protect and recover the value of their alleged loans to GATT by taking a security interest in all of GATT's assets (Interline Exhibit 19 at exhibit A) and in allegedly foreclosing on such assets and continuing the operations of GATT, as evidenced by their additional purchase of the Wells Fargo lien.

110.    Denied.  The SEC Form 8-K filed June 15, 2001 states that Boyd and "another

individual" entered into consulting agreements with GATT and "will receive future

compensation." (Interline Exhibit 18 at page 2).

PLAINTIFF,
CALL CENTER TECHNOLOGIES, INC.

By _____/s/ /1/_____

Kevin P. Chamberlin
Federal Bar No. ct26843
40 Lake Avenue Extension – Suite 4
Danbury, CT 06811
Phone: 203-792-0011
Fax: 203-792-3370
Chamberlinlaw@comcast.net

Dated: December 14, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2007, a copy of foregoing, was filed
electronically and served by mail on anyone unable to accept electronic filing.  Notice of
this filing will be sent by email to all parties by operation of the court's electronic filing
as indicated on the Notice of Electronic Filing.  Parties may access this filing through the
court's CM/ECF System.

/s/ Kevin P. Chamberlin
Kevin P. Chamberlin
Federal Bar No. ct26843
40 Lake Avenue Extension – Suite 4
Danbury, CT  06811
Phone: 203-792-0011
Fax:  203-792-3370
Chamberlinlaw@comcast.net

Executed: December 14, 2007